TURNER BOYD LLP
Karen I. Boyd (State Bar No. 189808)
boyd@turnerboyd.com
Jennifer Seraphine (State Bar No. 245463)
seraphine@turnerboyd.com
Keeley I. Vega (State Bar No. 259928)
vega@turnerboyd.com
Marc David Peters (State Bar No. 211725)
mdpeters@turnerboyd.com
Louis L. Wai (State Bar No. 295089)
wai@turnerboyd.com
TURNER BOYD LLP
702 Marshall Street, Suite 640
Redwood City, California 94063
Telephone: (650) 521-5930
Facsimile: (650) 521-5931
IRELL & MANELLA LLP
Morgan Chu (State Bar No. 70446)
mchu@irell.com
Alan J. Heinrich (State Bar No. 212782)
aheinrich@irell.com
Keith A. Orso (State Bar No. 217490)
korso@irell.com
Elizabeth C. Tuan (State Bar No. 295020)
etuan@irell.com
Dennis Courtney (State Bar No. 307646)
dcourtney@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

*Attorneys for Defendant Berkeley Lights, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABCELLERA BIOLOGICS INC. and THE UNIVERSITY OF BRITISH COLUMBIA, <br><br> Plaintiffs, <br><br> vs. <br><br> BERKELEY LIGHTS, INC., <br><br> Defendant. | Case No. 5:20-cv-8624, -8626, -8627-LHK <br><br> **BERKELEY LIGHTS, INC.'S NOTICE OF MOTION AND MOTION TO STAY CASE PENDING *INTER PARTES* REVIEW** <br><br> Date:   December 2, 2021 <br> Time:   1:30 p.m. <br> Place:   Courtroom 8, 4th Floor <br> Judge:   Hon. Lucy H. Koh |

# **TABLE OF CONTENTS**

NOTICE OF MOTION ..................................................................................................................1

I.    INTRODUCTION ...............................................................................................................2

II.   BACKGROUND .................................................................................................................3

   A.  Nature And Stage of the Proceedings ........................................................................3

   B.  The Asserted Patents ..................................................................................................5

   C.  The IPR Petitions .......................................................................................................5

III.  LEGAL STANDARD ..........................................................................................................5

IV.   ARGUMENT .......................................................................................................................6

   A.  The Early Stage of This Case Favors a Stay ..............................................................6

   B.  A Stay Will Simplify the Case ...................................................................................7

   C.  Plaintiffs Will Suffer No Undue Prejudice or Tactical Disadvantage from A Stay ...........9

     1.  The timing of the IPR petitions .........................................................................9

     2.  The timing of the request for the stay ..............................................................10

     3.  The status of the review proceedings ...............................................................11

     4.  The relationship of the parties .........................................................................11

V.    CONCLUSION ..................................................................................................................14

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3 *Asetek Holdings, Inc. v. Cooler Master Co., Ltd.,*
4   No. 13–cv–00457–JST, 2014 WL 1350813 (N.D. Cal. Apr. 3, 2014) ....................................9

*AT&T Intellectual Prop. I v. Tivo, Inc.*,
5   774 F. Supp. 2d 1049 (N.D. Cal. 2011) ...............................................................................7

6 *Aylus Networks, Inc. v. Apple Inc.,*
   856 F.3d 1353 (Fed. Cir. 2017).............................................................................................8
7

8 *Cypress Semiconductor Corp. v. GSI Tech. Inc.*,
   No. 13-cv-02013-JST, 2014 WL 5021100 (N.D. Cal. Oct. 7, 2014)................................9, 10

9 *directPacket Research, Inc. v. Polycom, Inc.*,
   No. 19-CV-03918-LHK (N.D. Cal. Jan. 16, 2020).................................................................7
10

11 *DSS Tech. Mgmt., Inc. v. Apple, Inc.*,
   No. 14-cv-05330-HSG, 2015 WL 1967878 (N.D. Cal. May 1, 2015) ..................................11

12 *Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988).............................................................................................5
13

14 *Evolutionary Intelligence LLC v. Apple, Inc.*,
   No. 13-cv-04201, 2014 WL 93954 (N.D. Cal. Jan. 9, 2014).................................................7

15 *Finjan, Inc. v. FireEye, Inc.*,
   No. 13-cv-03133-SBA, 2017 U.S. Dist. LEXIS 222339 (N.D. Cal. Mar. 28, 2017) ...............6
16

17 *Finjan, Inc. v. Symantec Corp.*,
   139 F. Supp. 3d 1032 (N.D. Cal. 2015) .......................................................................5, 11, 14

18 *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.* et al,
   No. 14-cv-00876-RS, 2015 WL 13727876 (N.D. Cal. Mar. 03, 2015) ...........................10, 14
19

20 *Microsoft Corp. v. TiVo Inc.*,
   No. 10-CV-00240-LHK, 2011 WL 1748428 (N.D. Cal. May 6, 2011) ...................................7

21 *PersonalWeb Techs., LLC v. Apple Inc.*,
   69 F. Supp. 3d 1022 (N.D. Cal. 2014) ...............................................................................6, 11
22

23 *Software Rights Archive, LLC v. Facebook, Inc.*,
   No. 12–cv-03970–RMW, 2013 WL 5225522 (N.D. Cal. Sept. 17, 2013) .............................9

24 *Symantec Corp. v. Zscaler, Inc.*,
   No. 17-CV-04426-JST, 2018 WL 3539267 (N.D. Cal. July 23, 2018) ..................................14
25

26 *Twilio, Inc. v. TeleSign Corp.*,
   No. 16-CV-06925-LHK, 2018 WL 1609630 (N.D. Cal. Apr. 3, 2018) ................................7, 8

27 *Uniloc USA, Inc., et al. v. Apple, Inc.*
   No. 18-CV-00357-LHK, Dkt. No. 144 (N.D. Cal. Apr. 30, 2018)......................................7, 11

28

**<u>Statutes</u>**

35 U.S.C. § 315(b) ............................................................................................5, 10

37 C.F.R. § 42.100(c)..........................................................................................11

**NOTICE OF MOTION**

Please take notice that on December 2, 2021 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Lucy H. Koh located in the United States District Court for the Northern District of California, San Jose Courthouse, Courtroom 8, 4th Floor, 280 South First Street, San Jose, CA 95113, Defendant Berkeley Lights, Inc. ("Berkeley Lights") will and hereby does move for an order staying all proceedings in this action pending final resolution of the pending *inter partes* review (IPR) proceedings relating to U.S. Patent Nos. 10,087,408 ("the '408 patent"), 10,421,936 ("the '936 patent"), and 10,738,270 ("the '270 patent")[1] before the Patent Trial and Appeal Board ("PTAB"), including any appeals therefrom.

**STATEMENT OF RELIEF SOUGHT**

Berkeley Lights respectfully requests that the Court order this case stayed pending *inter partes* review of the '408, '936, and '270 patents.

---

[1] Berkeley Lights intends to file a petition for IPR of the '270 patent before the deadline for filing a reply in support of this motion, and before the statutory deadline of August 25, 2021.

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.   INTRODUCTION

3

4

5

6

7

8

9

10

11

12

Berkeley Lights respectfully requests that the Court stay this case pending *inter partes* review ("IPR") proceedings.  Plaintiffs currently assert infringement of seven patents from two patent families, the '408 patent family and the '812 patent family.  Plaintiffs direct their claims on all asserted patents from both families against the same Berkeley Lights products, and allege that all asserted patents are embodied by the same services offered by Plaintiffs.  All asserted patents relate to the same technology of microfluidic cell culture, have several overlapping inventors, and implicate the same discovery.  Last week, Berkeley Lights petitioned for *inter partes* review of two of the three asserted patents in the '408 patent family, and will soon petition for *inter partes* review of the third patent in that family.  In view of the overlapping issues across Plaintiffs' infringement assertions, the results of the IPR proceedings will significantly simplify the issues in this case.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In these circumstances, each of the relevant factors justifies a stay of the entire case.  <u>First</u>, this case is still at an early stage.  The pleadings are not yet final, and though the parties have exchanged some discovery, there has been no email discovery, no depositions, no expert discovery, no *Markman* hearing, and no dispositive motions.  Indeed, Plaintiffs have barely begun their document production (producing only 159 documents to date).  <u>Second</u>, a stay would simplify the issues in this case.  A stay will save the Court and the parties from spending significant resources on issues that PTAB review will narrow or potentially foreclose.  Berkeley Lights submits that the IPR proceedings will likely invalidate nearly all of Plaintiffs' asserted claims under the '408 patent family, and will also likely clarify at least some issues in the '812 patent family given the related nature of the technology and overlapping inventors.  Efficiency warrants that the stay should include the asserted patents that are not subject to IPR to avoid duplicative discovery, pretrial proceedings and motions, and trials.  <u>Third</u>, a stay will not cause any undue prejudice or tactical disadvantage to Plaintiffs.  Berkeley Lights promptly filed its IPR petitions after receiving Plaintiffs' infringement contentions, and filed this motion immediately following its petitions.  Further, Berkeley Lights and Plaintiff AbCellera are not direct competitors but instead have very

different business models—Berkeley Lights sells products, whereas AbCellera sells antibody discovery services—which further reduces any risk of prejudice.

Accordingly, Berkeley Lights respectfully requests that the Court stay this case pending resolution of the IPR petitions.

## II.      BACKGROUND

### A.      Nature And Stage of the Proceedings

This case arises from a series of complaints filed by Plaintiff AbCellera in the District of Delaware.  AbCellera filed a first complaint on July 9, 2020, alleging infringement of eight patents. AbCellera filed a second complaint on August 25, 2020, alleging infringement of four additional patents.  Berkeley Lights responded by moving to dismiss both actions under Rule 12(b)(1) for lack of prudential standing given that AbCellera filed suit without joining the patent owner, UBC. Plaintiffs responded by filing amended complaints to add UBC as a plaintiff.  Plaintiffs AbCellera and UBC then filed a third complaint on September 16, 2020, alleging infringement of three additional patents.  In total, Plaintiffs asserted fifteen patents from two patent families.

On December 7, 2020, the Delaware court granted Berkeley Lights's motions to transfer all three actions to the Northern District of California.  This Court then related and consolidated the three actions.  (Dkt. No. 70.)

In October 2020, Berkeley Lights filed amended answers and counterclaims to all three complaints, including claims for declaratory judgment of non-infringement, declaratory judgment of invalidity, and declaratory judgment of unenforceability based on inequitable conduct during prosecution.  (20-cv-8624 Dkt. No. 18; 20-cv-8626 Dkt. No. 27; 20-cv-8627 Dkt. No. 27.) Plaintiffs moved to dismiss Berkeley Lights's affirmative defense and counterclaims of unenforceability.  The Court granted Berkeley Lights's motion for leave to amend its counterclaims and denied Plaintiffs' motion as moot.  (Dkt. No. 98.)  The stay sought by Berkeley Lights in this motion includes a stay of its own counterclaims.

On March 11, 2021 and July 1, 2021, the Court issued Case Management Orders requiring the consolidated case to be successively narrowed.  (Dkt. Nos. 70, 99.)  In May 2021, in accordance

with those Orders, Plaintiffs completed a first round of narrowing by reducing the number of asserted patents to 7 and the number of asserted claims to 51[2], and Berkeley Lights limited the number of asserted prior art reference combinations to 10 per asserted claim.  The Court's Orders also require further narrowing at four future stages of this case:

1. <u>After claim construction</u>: no more than 8 patents and 32 total asserted claims, and no more than 8 prior art reference combinations per asserted claim.

2. <u>After the close of fact discovery and before opening expert reports</u>: no more than 6 patents and 24 total asserted claims, and no more than 6 prior art reference combinations per asserted claim.

3. <u>After dispositive motions and before the pretrial conference</u>: no more than 4 patents and 16 total asserted claims, and no more than 4 prior art reference combinations per asserted claim.

4. <u>After the pretrial conference and before trial</u>: no more than 2 patents and 4 asserted claims per patent, and no more than 2 prior art reference combinations per asserted claim.

(Dkt. Nos. 70, 99.)

To date, the parties have exchanged initial disclosures, served initial sets of interrogatories and document requests, served infringement and invalidity contentions, and produced some documents.  There has been no email discovery, no expert discovery, no depositions, no *Markman* briefing or hearing, and no dispositive motions.  To date, Plaintiffs have produced a total of only 159 documents.  (*See* Declaration of Keeley I. Vega ("Vega Decl.") at ¶ 3.)

The schedule currently calls for claim construction briefing to begin on August 30, 2021, with the *Markman* hearing set for October 7, 2021.  Fact discovery is set to close in or around February 2022 and expert discovery is set to close in or around June 2022, both dates depending on the date of the claim construction order.  A jury trial is scheduled to start on December 12, 2022.

---

[2] The Court's Order required Plaintiffs to reduce the number of asserted claims to 50, and explained that "[a]ny dependent claim that is asserted without a separate assertion of the claim(s) from which it depends shall count as the total number of claims in the dependency chain."  (Dkt. No. 70 at 2.) Based on this counting method, Plaintiffs currently assert 51 claims.

1

2

**B.      The Asserted Patents**

Plaintiffs currently assert seven patents from two patent families.  From the first patent

3  family, referred to herein as "the '408 patent family," Plaintiffs assert: U.S. Patent Nos. 10,087,408

4  ("the '408 patent"), 10,421,936 ("the '936 patent"), and 10,738,270 ("the '270 patent").  From the

5  second patent family, referred to as "the '812 patent family," based on the patent number of the

6  earliest originally asserted patent in the family, Plaintiffs assert: U.S. Patent Nos. 10,697,962 ("the

7  '962 patent"), 10,753,933 ("the '933 patent"), 10,775,376 ("the '376 patent"), and 10,775,378 ("the

8  '378 patent").  The '408 and '812 patent families began with provisional patent applications filed

9  only nine days apart, and both are addressed to the same technology of microfluidic cell culture, are

10 asserted against the same Berkeley Lights technology, and are alleged by Plaintiffs to be embodied

11 by the same services offered by Plaintiffs.  (*See* Vega Decl. at ¶ 2.)  The two families of asserted

12 patents also have several overlapping inventors and, thus overall, implicate the same general

13 discovery.  (*Id*.)

14

**C.      The IPR Petitions**

15

Berkeley Lights filed petitions for IPR of the '408 and '936 patents on July 9, 2021.  (Vega

16 Decl. Ex. A (IPR2021-1249, Paper No. 1) and Ex. B (IPR2021-1250, Paper No. 1).)  For the '408

17 patent, Berkeley Lights's petition challenges the patentability of all but three of the twelve claims

18 asserted in this case, including the sole independent claim.  For the '936 patent, Berkeley Lights's

19 petition challenges the patentability of all fourteen claims asserted in this case.  Berkeley Lights

20 intends to file a petition for IPR of the asserted claims of the '270 patent before the deadline for

21 filing a reply in support of this motion, and before the statutory deadline of August 25, 2021 per 35

22 U.S.C. § 315(b).

23 **III.   LEGAL STANDARD**

24

"Courts have inherent power to manage their dockets and stay proceedings, including the

25 authority to order a stay pending conclusion of a PTO reexamination."  *Finjan, Inc. v. Symantec*

26 *Corp.*, 139 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (quoting *Ethicon, Inc. v. Quigg*, 849 F.2d 1422,

27 1426-27 (Fed. Cir. 1988)).  Courts have recognized "a liberal policy in favor of granting motions to

28

stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *Id*. (citation omitted).  In determining whether to grant a stay pending *inter partes* review, courts consider: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party."  *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1025 (N.D. Cal. 2014) (citations and quotations omitted).

## IV.    ARGUMENT

### A.    The Early Stage of This Case Favors a Stay

The early stage of this case favors a stay.  In weighing this factor, "courts examine the posture and circumstances of each case on an individual basis."  *PersonalWeb*, 69 F. Supp. 3d at 1025.  Courts in this District typically look to "(1) whether parties have engaged in costly expert discovery and dispositive motion practice; (2) whether the court has issued its claim construction order, and (3) whether the court has set a trial date."  *Finjan, Inc. v. FireEye, Inc.*, No. 4:13-cv-03133-SBA, 2017 U.S. Dist. LEXIS 222339, at *4 (N.D. Cal. Mar. 28, 2017) (citing *PersonalWeb*, 69 F. Supp. 3d at 1025-26).

Here, the pleadings have not yet closed.  Plaintiffs have not responded to Berkeley Lights's counterclaims for inequitable conduct, which will again be asserted in its second amended complaint due to be filed by July 22, 2021.  (*See* Dkt. No. 98.)  Plaintiffs may file another motion to dismiss those claims.

Discovery is also far from complete, with fact and expert discovery not set to close until February and June 2022, respectively.  (*See* Dkt. No. 70.)  As noted above, Plaintiffs have not expended significant resources producing documents, as they have only produced 159 documents to date.  (Vega Decl. at ¶ 3.)  While the parties have exchanged some written discovery and served infringement and invalidity contentions, the resources spent on that work are a fraction of those that would be required for the still-to-come document production by Plaintiffs, e-mail discovery, fact depositions, and expert discovery and reports.  Moreover, there has been no *Markman*-related

1   discovery, briefing, or hearing, and no summary judgment motions.  While the Court has set a trial

2   date, it is nearly eighteen months away.

3         In similar circumstances, this Court has found this stage-of-case factor to favor a stay.  *See*

4   *directPacket Research, Inc. v. Polycom, Inc.*, No. 19-CV-03918-LHK (N.D. Cal. Jan. 16, 2020)

5   (Dkt. No. 233) (granting stay pending IPR where "the Court has not held a claim construction

6   hearing, and the parties have not filed dispositive motions, both of which demonstrate that the case

7   is still in its early stages."); *Twilio, Inc. v. TeleSign Corp.*, No. 16-CV-06925-LHK, 2018 WL

8   1609630, at *1 (N.D. Cal. Apr. 3, 2018) (finding that the stage of the litigation weighed in favor of

9   a stay where the parties had engaged in some written discovery, but had not taken fact depositions,

10  exchanged expert reports, or produced email discovery, finding that "although the parties have

11  incurred some costs related to discovery, significant discovery-related costs still remain that might

12  be avoided by a stay."); *see also AT&T Intellectual Prop. I v. Tivo, Inc.*, 774 F. Supp. 2d 1049, 1052

13  (N.D. Cal. 2011) (granting stay where parties had not exchanged expert reports and court had not

14  held claim construction hearing); *Microsoft Corp. v. TiVo Inc.*, No. 10-CV-00240-LHK, 2011 WL

15  1748428, at *6 (N.D. Cal. May 6, 2011) (finding that the stage of the litigation weighed in favor of

16  a stay where the parties had exchanged initial disclosures, interrogatory responses, and document

17  discovery, but no depositions had been taken and no expert reports had been exchanged).

18        Because a substantial portion of the work still remains for this case—both for the parties and

19  the Court—this factor weighs in favor of a stay.

20        **B.      A Stay Will Simplify the Case**

21        As reflected by the iterative case narrowing required by the Court, this action requires

22  simplification before trial.  A stay of the entire case pending the IPR proceedings will serve that

23  goal, as well as conserve judicial resources and avoid inconsistent results.  *See Uniloc USA, Inc., et*

24  *al. v. Apple, Inc.* No. 18-CV-00357-LHK, Dkt. No. 144, at 4 (N.D. Cal. Apr. 30, 2018) ("If the

25  Patent Office invalidates any of the claims at issue, that would narrow the scope of the litigation in

26  this case.") (citations omitted); *Evolutionary Intelligence LLC v. Apple, Inc.*, No. 13-cv-04201, 2014

27  WL 93954, at *2 (N.D. Cal. Jan. 9, 2014) ("A stay may also be granted in order to avoid

28

inconsistent results, obtain guidance from the PTAB, or avoid needless waste of judicial resources.").

Berkeley Lights's IPR petitions will challenge claims in all of the asserted patents in the '408 patent family.  Berkeley Lights's pending IPR petitions challenge nine of the twelve asserted claims of the '408 patent and all fourteen asserted claims of the '936 patent, and Berkeley Lights intends to soon also challenge the three asserted claims of the '270 patent (the other asserted patent in the '408 patent family).  Berkeley Lights submits that these twenty-six asserted claims will all likely be invalidated in the IPR proceedings.  Notably, the already-filed petitions challenge the '408 and '936 patents on multiple grounds not previously considered by the USPTO, including grounds based solely on prior art references that were not cited or disclosed by Plaintiffs during prosecution. (*See* Vega Decl. Exs. A and B at Section VI.)  The IPR petitions will also simplify the issues in this case by clarifying the scope and interpretation of any surviving claims.  For example, Plaintiffs may take positions that impact the interpretation of the asserted claims.  These statements, such as characterizing a patent or distinguishing prior art, can inform this Court in determining the proper construction of any surviving claims after the IPRs have concluded.  *See, e.g.*, *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) ("statements made by a patent owner during an IPR proceeding can be relied on to support a finding of prosecution disclaimer during claim construction").

The pending IPR petitions will also simplify this case for the issues related to the '812 patent family.  This is because all seven patents are asserted against the same Berkeley Lights products, are alleged by Plaintiffs to have the same embodying products, have overlapping inventors, and implicate the same discovery.  As this Court has observed in similar circumstances, "it would make little sense to proceed only on the [patent not subject to IPR], thereby risking a second trial on the other two patents if they survive IPR, nor would it make sense to proceed on all three patents when two of them may later be invalidated."  *Twilio*, 2018 WL 1609630 at *2 ("[T]he Court finds that the potential simplification of issues related to the [patents subject to IPR] outweighs the delay that will result in the adjudication of the [patent not subject to IPR].").  A stay

will also serve the interests of judicial and litigant economy by assuring that, under the Court's case narrowing orders, whichever two patents remain in the case at trial are not also concurrently under review by the PTAB or thereafter on appeal from a PTAB ruling before the Court of Appeals for the Federal Circuit.

Thus, a stay of the entire case will simplify the issues in the litigation and reduce the burden on the Court and parties.  This prospect of simplification strongly favors a stay.

**C.      Plaintiffs Will Suffer No Undue Prejudice or Tactical Disadvantage from A Stay**

The lack of undue prejudice or tactical disadvantage to Plaintiffs also favors a stay.  When evaluating this factor, courts in this District evaluate four subfactors: "(1) the timing of the petition for review; (2) the timing of the request for the stay; (3) the status of the review proceedings; and (4) the relationship of the parties."  *Cypress Semiconductor Corp. v. GSI Tech. Inc*., No. 13-cv-02013-JST, 2014 WL 5021100, at *3 (N.D. Cal. Oct. 7, 2014).  Each of these subfactors justifies a stay.

**1.      The timing of the IPR petitions**

Two of the IPR petitions were filed on July 9, 2021, and the third will be filed before the statutory deadline of August 25, 2021 and before Berkeley Lights's deadline for filing a reply in support of this motion.  (*See* Vega Decl. at ¶¶ 4-6).  These dates are within the one-year statutory deadline from service of the respective complaints.  35 U.S.C. § 315(b) (providing defendants one year from the date of service of the complaint to submit a petition for IPR).  This timing does not constitute delay nor prejudice Plaintiffs.  *See Asetek Holdings, Inc. v. Cooler Master Co., Ltd.,* No. 13–cv–00457–JST, 2014 WL 1350813, at * 4 (N.D. Cal. Apr. 3, 2014) ("Delay alone [within the statutory deadline] does not usually constitute undue prejudice because parties having protection under the patent statutory framework may not complain of the rights afforded to others by that same statutory framework."); *Software Rights Archive, LLC v. Facebook, Inc.,* No. 12–cv–03970–RMW, 2013 WL 5225522, at *6 (N.D. Cal. Sept. 17, 2013) ("Although defendants did wait nearly a year to file the IPR petitions, they properly filed the petitions within the statutory time frame, and the delay was not unreasonable under the facts here.").

Here, Berkeley Lights filed the IPR petitions only two months after Plaintiffs narrowed the asserted patents from fifteen and the asserted patent claims from a staggering 428 claims, and only approximately three months after Plaintiffs first served their infringement contentions on the 428 claims of the fifteen originally-asserted patents.  Plaintiffs still have not provided amended contentions following the narrowing to seven patents and 51 claims, despite agreeing to do so months ago.[3]  Courts in this District have found that such "waiting until after receiving infringement contentions to analyze the claims alleged and then filing petitions for review does not constitute undue prejudice." *Cypress Semiconductor Corp.*, 2014 WL 5021100, at *4; *see also Karl Storz Endoscopy-Am., Inc. v. Stryker Corp. et al*, No. 14-cv-00876-RS, 2015 WL 13727876, at *3 (N.D. Cal. Mar. 03, 2015) (noting that "[t]he proper frame of reference for evaluating undue prejudice is the interval between [defendant's] receipt of [plaintiff's] infringement contentions and its filing of IPR petitions" and finding a period of three and half to six months reasonable even when outside of the one year statutory deadline under 35 U.S.C. § 315(b)).  Here, considering the breadth and volume of Plaintiffs' original asserted claims, the timing of Berkeley Lights's IPR petitions is even more reasonable.

Thus, the timing of the filing of the IPR petitions, which is both within the statutory deadline and within an eminently reasonable time period after receipt of Plaintiffs' narrowed claims and infringement contentions, shows an absence of any undue prejudice to Plaintiffs.  This subfactor weighs in favor of a stay.

### 2.    The timing of the request for the stay

Berkeley Lights brings this motion expeditiously after filing its IPR petitions just last week. Plaintiffs cannot credibly argue that such timing constitutes prejudicial delay.  Moreover, as discussed above, this case is in the early stages of fact discovery.  And while the parties have exchanged proposed terms for claim construction, briefing does not begin for nearly two months,

---

[3] Plaintiffs served infringement contentions on March 31, 2021, then later informed Berkeley Lights they would be serving amended infringement contentions on May 6, 2021.  Plaintiffs did not serve amended contentions on May 6, and instead indicated they would provide them "as soon as possible."  As of the date of this filing, Plaintiffs still have not served amended contentions.

with the *Markman* hearing scheduled for October 7, 2021.  Given the early stage of proceedings, with trial in this matter currently scheduled for December 2022, a stay will not result in undue prejudice to Plaintiffs.  *See PersonalWeb Tech., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1029 (N.D. Cal. 2014) (collecting cases for the proposition that the delay inherent in a stay is not sufficient to show undue prejudice).

### 3.     The status of the review proceedings

Berkeley Lights filed its IPR petitions on July 9, 2021.  In accordance with a statutory deadline, the PTAB is expected to decide whether to institute proceedings by no later than about January 2022.  By statute, the IPRs will be complete no more than a year later, around January 2023.  37 C.F.R. § 42.100(c).  This date nearly coincides with the presently scheduled trial date of December 2022.  Thus, this subfactor also indicates a lack of undue prejudice or tactical disadvantage and thus weighs in favor of a stay.

### 4.     The relationship of the parties

Plaintiff UBC admits that it does not offer products or services that practice any claim of the asserted patents.  (Vega Decl., Ex. C (4/29/2021 UBC response to rog 3) at 8 (responding to interrogatory regarding UBC products or services that practice the asserted patents with "UBC is not aware of any information responsive to this Interrogatory.").)  Thus, there can be no dispute that Plaintiff UBC and Berkeley Lights are not in direct competition and that UBC will suffer no prejudice if the case is stayed.  *See Uniloc,* No. 18-CV-00357-LHK, Dkt. No. 144, at 5 (finding lack of undue prejudice and granting a motion to stay where the plaintiff was "a 'non-practicing entity that licenses its intellectual property' and therefore 'does not compete directly with [defendant]'"); *see also Finjan, Inc. v. Symantec Corp.*, 139 F. Supp. 3d 1032 (N.D. Cal. 2015) (quoting *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-cv-05330-HSG, 2015 WL 1967878, at * 4 (N.D. Cal. May 1, 2015) ("[C]ourts generally find that a plaintiff 'does not risk irreparable harm by the defendant's continued use of the accused technology and can be fully restored to the *status quo ante* with monetary relief'" if there is no indication that the parties "are direct competitors and that the plaintiff's competitive position would be prejudiced by a stay.").

1    Plaintiff AbCellera claims that it offers a service that practices the claimed invention.

2    However, AbCellera does not offer any service that is in direct competition with the accused

3    Berkeley Lights products.  AbCellera and Berkeley Lights have fundamentally different business

4    models and generally target different customer needs.  Unlike AbCellera, Berkeley Lights primarily

5    sells instruments (e.g., the Beacon® System).  (*See* Vega Decl., Ex. D (Beacon System Brochure)

6    (advertising the Beacon System and supporting instruments and components).)  Berkeley Lights's

7    revenue, therefore, is primarily derived from sales of the commercial instruments, related chips and

8    reagents, and services provided to maintain the instruments.  (*See* Vega Decl., Ex. E (Berkeley

9    Lights's 2020 SEC Form 10-K) at pp. 55, 80 (explaining that Berkeley Lights derives revenue from

10   product sales and services related to those sales, with platform and consumable sales accounting for

11   more than 80% of total revenue in 2020).)  Because the Beacon® System represents a substantial

12   investment for potential customers, it is primarily targeted to companies and institutions that have

13   the desire and the resources to develop a potential clinical candidate internally, from the earliest

14   discovery stages to clinical trials.  In other words, Berkeley Lights's customers choose their own

15   targets and develop their own clinical candidates, and Berkeley Lights provides the instrumentation

16   and support for that research.

17       AbCellera, in contrast, only provides services.  AbCellera's revenue model is built around

18   receiving royalties and milestones that are built into their service contracts with customers.  (*See*

19   Vega Decl., Ex. F (AbCellera's 2020 SEC Form 10-K) at p. 4 ("Our partnership agreements

20   include: (i) payments for technology access and performance of research, (ii) downstream payments

21   in the form of clinical and commercial milestones and (iii) royalties on net sales of any approved

22   therapeutics.").)  For example, AbCellera's customers may seek out AbCellera's services because

23   they are unable or unwilling to expend the resources to purchase an instrument and carry out

24   discovery research on a specific target; those customers instead outsource that discovery research to

25   AbCellera.  (*Id*. at 4 ("by accessing [AbCellera's] teams, technologies and facilities, partners can

26   eliminate the extended delays and costs associated with setting up antibody discovery

27   capabilities.").)  AbCellera receives royalties and milestone payments at various stages of

28

development for any potential candidates it identifies, but bears the risk of failure in the event that its discovery services do not bear fruit.  (*Id*. at 9 ("Our partnership business allows us to participate in the future antibody therapeutic market through royalties and milestones on drugs that have been discovered using our platform.").)  AbCellera's revenues are thus dependent on the success of its own discovery research—success that is highly uncertain and unpredictable, given the pharmaceutical industry's well-publicized drug development failure rates.

These differences in business models, and resulting differences in how the companies address customer needs, were succinctly highlighted by Amgen's former Director of Preclinical Research in a recent interview conducted by the investment research firm the Third Bridge Group:

> AbCellera provide[s] everything, so they run your immunisation campaign in whatever species you want. . . . So they deliver the sequence to you ready to go into cell line development. ***AbCellera does everything, kind of sits in that, so is perfect for small start-up partners who don't have that internal capability, but what Berkeley Lights caters to is larger partners who are independent*** or who have, perhaps, the proprietary nous or a proprietary system to run their campaigns and get their candidates in themselves, and it reduces their workflow time and speeds everything up, so it's really catering to different markets.
>
> \* \* \*
>
> ***In terms of business models, it's really catering for different types of clients***. Of course you would love to kick your payments downstream with AbCellera if you don't have a lot of cash in the bank, so young start-ups who don't have the internal capability, don't want the overhead of FTE to be able to run a system, to do much work themselves, who just really don't have the throughput to justify that type of a system, honestly, that'd keep it busy pretty much every week and booked up to justify the cost, and so are specific for them. They plant it downstream with the expectation that they're going to sell their assets and it's going to be somebody else's problem to pay AbCellera that royalty stream, and that's pretty fair, but if you're a larger organisation where you already have invested, you already have this FTE, you already have this entire capability and you need to streamline, you need to get faster to stay competitive, and you need to trim your cost as much as possible, Berkeley Lights is a no-brainer.
>
> \* \* \*
>
> [If] you are a small start-up and you don't have that capability [to do an in-house immunization campaign], again AbCellera is just a much better fit, because they have expertise and they absorb the loss if something fails.

(Vega Decl., Ex. G (Third Bridge Forum: *Berkeley Lights – Platform Analysis & Demand*) at pp. 5-7.)

The lack of direct competition between Berkeley Lights and both Plaintiffs is further evidenced by the fact that Plaintiffs, unsurprisingly, did not seek a preliminary injunction. Moreover, even if the parties competed to some extent, this would not alone preclude a stay. Indeed, "[t]he parties' competitive relationship, however, [] is not the only factor relevant to the propriety of a stay and does not necessarily mandate that these proceedings must continue. The question is whether the prejudice [plaintiff] may suffer from a delay is so substantial that it outweighs other factors favoring a stay." *Karl Storz*, 2015 WL 13727876, at *4 (finding that parties were direct competitors, and granting a stay). *See also Finjan, Inc. v. Symantec Corp.*, 139 F. Supp. 3d 1032 at 1036 (finding no undue prejudice and granting stay despite plaintiff's argument that parties were direct competitors); *Symantec Corp. v. Zscaler, Inc.*, No. 17-CV-04426-JST, 2018 WL 3539267, at *2 (N.D. Cal. July 23, 2018) (finding that the "evidence shows the two companies compete in a general sense," and granting a stay).

For these reasons, this subfactor weighs in favor of a stay.

## V.    CONCLUSION

Because all the relevant factors support a stay of this action pending resolution of Berkeley Lights's IPR petitions, Berkeley Lights respectfully requests that the Court grant its motion to stay this case pending final resolution of the IPR proceedings.

Dated: July 15, 2021

Respectfully submitted,

TURNER BOYD LLP

*/s/ Keeley I. Vega*

Karen I. Boyd (State Bar No. 189808)
boyd@turnerboyd.com
Jennifer Seraphine (State Bar No. 245463)
seraphine@turnerboyd.com
Keeley I. Vega (State Bar No. 259928)
vega@turnerboyd.com
Marc David Peters (State Bar No. 211725)
mdpeters@turnerboyd.com
Louis L. Wai (State Bar No. 295089)
wai@turnerboyd.com
TURNER BOYD LLP
702 Marshall Street, Suite 640
Redwood City, California 9063
Telephone: (650) 521-5930


IRELL & MANELLA LLP
Morgan Chu (State Bar No. 70446)
mchu@irell.com
Alan J. Heinrich (State Bar No. 212782)
aheinrich@irell.com
Keith A. Orso (State Bar No. 217490)
korso@irell.com
Elizabeth C. Tuan (State Bar No. 295020)
etuan@irell.com
Dennis Courtney (State Bar No. 307646)
dcourtney@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199


*Attorneys for Defendant Berkeley Lights, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2021, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which will send notification of such filings to all parties who have appeared in this matter.

*/s/ Amanda Wiseman*
Amanda Wiseman