QUINN EMANUEL URQUHART & SULLIVAN, LLP
Brian C. Cannon (Cal. Bar No. 193071)
briancannon@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2129
(650) 801-5000

F. Dominic Cerrito (admitted *pro hac vice*)
nickcerrito@quinnemanuel.com
Eric C. Stops (admitted *pro hac vice*)
ericstops@quinnemanuel.com
Angus Chen, Ph.D. (admitted *pro hac vice*)
anguschen@quinnemanuel.com
Brian P. Biddinger (Cal. Bar No. 224604)
brianbiddinger@quinnemanuel.com
Catherine T. Mattes (admitted *pro hac vice*)
catherinemattes@quinnemanuel.com
Krista M. Rycroft (admitted *pro hac vice*)
kristarycroft@quinnemanuel.com
Brian J. Forsatz, Ph.D. (admitted *pro hac vice*)
brianforsatz@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Nathan Sun (Cal. Bar No. 284782)
nathansun@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

*Attorneys for Plaintiffs AbCellera Biologics Inc.*
*and The University of British Columbia*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| ABCELLERA BIOLOGICS INC. AND THE UNIVERSITY OF BRITISH COLUMBIA, <br><br> Plaintiffs, <br><br> v. <br><br> BRUKER CELLULAR ANALYSIS, INC. F/K/A BERKELEY LIGHTS, INC., <br><br> Defendant. | Case No. 4:20-cv-08624-JST (consolidated) <br><br> AMENDED AND CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT |

Plaintiffs AbCellera Biologics Inc. ("AbCellera") and The University of British Columbia ("UBC") (collectively, "Plaintiffs"), hereby demand a jury trial and allege the following against Defendant Bruker Cellular Analysis, Inc., formerly known as Berkeley Lights, Inc. and PhenomeX Inc. (collectively, "Defendant")[1]:

## NATURE OF ACTION

1.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

2.     Plaintiffs have filed this lawsuit to stop Defendant's unlawful infringement of Plaintiffs' patented inventions and to obtain damages, an injunction, and other relief.

## THE PARTIES

3.     AbCellera Biologics Inc. is a corporation organized and existing under the laws of British Columbia, Canada with its principal place of business located 2215 Yukon Street Vancouver, BC V5Y 0A1.

4.     The University of British Columbia is a corporation continued under the *University Act* of British Columbia with offices at #103-6190 Agronomy Road, Vancouver, British Columbia, V6T 123.

5.     On information and belief, Bruker Cellular Analysis, Inc. is incorporated under the laws of the State of Delaware, and has a place of business at 5980 Horton Street, Second Floor, Emeryville, CA 94608.

6.     On information and belief, Bruker Cellular Analysis, Inc. is formerly known as Berkeley Lights, Inc. and PhenomeX Inc.

---

[1]  Berkeley Lights, Inc., PhenomeX Inc., and Bruker Cellular Analysis, Inc. are collectively referred to as "Defendant" herein.

7.      On information and belief, Berkeley Lights, Inc. was a corporation incorporated under the laws of the State of Delaware, and had a principal place of business at 5858 Horton Street, Emeryville, CA 94608.

8.      On information and belief, in or around March 2023, Berkeley Lights, Inc. merged with IsoPlexis, Inc. and became PhenomeX Inc.  On information and belief, on March 21, 2023, pursuant to an Amended and Restated Certificate of Incorporation, Berkeley Lights, Inc. changed its corporate name from Berkeley Lights, Inc. to PhenomeX Inc.  *See* D.I. 161.

9.      On information and belief, on October 2, 2023, Bruker Corporation acquired PhenomeX Inc., which then changed its corporate name to Bruker Cellular Analysis, Inc., pursuant to an Amended and Restated Certificate of Incorporation.  *See* D.I. 161.

## JURISDICTION AND VENUE

10.     This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. § 271.  This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has personal jurisdiction over Defendant for at least the following reasons.

12.     Defendant has consented to personal jurisdiction in this Court, at least because Defendant sought, and succeeded in, transferring this litigation from the District of Delaware to the Northern District of California.  *See, e.g.*, *AbCellera Biologics Inc. v. Berkeley Lights, Inc.*, No. 20-cv-00931, D.I. 13 (D. Del. Sept. 15, 2020) (Defendant's motion to transfer); *AbCellera Biologics Inc. v. Berkeley Lights, Inc.*, No. 20-cv-00931, D.I. 35 (D. Del. Dec. 7, 2020) (order transferring case); *AbCellera Biologics Inc. v. Berkeley Lights, Inc.*, No. 20-cv-01116, D.I. 12 (D. Del. Sept. 15, 2020) (Defendant's motion to transfer); *AbCellera Biologics Inc. v. Berkeley Lights, Inc.*, No. 20-cv-01116, D.I. 34 (D. Del. Dec. 7, 2020) (order transferring case); *AbCellera*

1   *Biologics Inc. v. Berkeley Lights, Inc.*, No. 20-cv-01230, D.I. 9 (D. Del. Sept. 29, 2020)

2   (Stipulation and Order re motion to transfer); *AbCellera Biologics Inc. v. Berkeley Lights, Inc.*,

3   No. 20-cv-01230, D.I. 26 (D. Del. Dec. 7, 2020) (order transferring case).

4          13.     Defendant has asserted counterclaims in this litigation.  *See, e.g.*, *AbCellera*

5   *Biologics Inc. v. Berkeley Lights, Inc.*, No. 20-cv-00931, D.I. 17 (D. Del. Sept. 15, 2020);

6   *AbCellera Biologics Inc. v. Berkeley Lights, Inc.*, No. 20-cv-01116, D.I. 16 (D. Del. Sept. 18,

7   2020); *AbCellera Biologics Inc. v. Berkeley Lights, Inc.*, No. 20-cv-01230, D.I. 10 (D. Del. Oct. 8,

8   2020).  Since the transfer of this litigation to the Northern District of California in December

9   2020, Defendant litigated its counterclaims in this Court.

10         14.     With its successful motions to transfer and its assertion of counterclaims in this

11  Court, Defendant has waived any argument to contest this Court's personal jurisdiction over

12  Defendant.  Defendant has purposefully availed itself of the rights, benefits, and privileges of

13  California, including by successfully transferring the litigation to this Court and asserting

14  counterclaims in this Court.

15         15.     In addition, on information and belief, Defendant maintains headquarters at 5980

16  Horton Street, Second Floor, Emeryville, CA 94608.  For example, on Defendant's company

17  website, https://brukercellularanalysis.com/contact-us/, Defendant lists 5980 Horton Street,

18  Second Floor, Emeryville, CA 94608, as the address for "Bruker Cellular Analysis HQ."

19         16.     Venue is proper in this Court, at least because Defendant sought, and succeeded in,

20  transferring this litigation from the District of Delaware to the Northern District of California.

21  *See, e.g.*, *AbCellera Biologics Inc. v. Berkeley Lights, Inc.*, No. 20-cv-00931, D.I. 13 (D. Del.

22  Sept. 15, 2020) (Defendant's motion to transfer); *AbCellera Biologics Inc. v. Berkeley Lights, Inc.*,

23  No. 20-cv-00931, D.I. 35 (D. Del. Dec. 7, 2020) (order transferring case); *AbCellera Biologics*

24  *Inc. v. Berkeley Lights, Inc.*, No. 20-cv-01116, D.I. 12 (D. Del. Sept. 15, 2020) (Defendant's

motion to transfer); *AbCellera Biologics Inc. v. Berkeley Lights, Inc.*, No. 20-cv-01116, D.I. 34 (D. Del. Dec. 7, 2020) (order transferring case); *AbCellera Biologics Inc. v. Berkeley Lights, Inc.*, No. 20-cv-01230, D.I. 9 (D. Del. Sept. 29, 2020) (Stipulation and Order re motion to transfer); *AbCellera Biologics Inc. v. Berkeley Lights, Inc.*, No. 20-cv-01230, D.I. 26 (D. Del. Dec. 7, 2020) (order transferring case). Defendant has waived any argument to contest venue in this District.

17.     Venue is also proper in this Court under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement in this District and has a regular and established place of business at 5980 Horton Street, Second Floor, Emeryville, CA 94608.

## **FACTUAL BACKGROUND**

### **AbCellera's Technology**

18.     AbCellera is a biotechnology company with a pioneering and proprietary drug discovery platform that searches and analyzes natural immune systems to find antibodies that can be used to prevent and treat disease. AbCellera's technology, which combines high-throughput microfluidics, hyper-scale data science, machine learning, bioinformatics, and genomics, identifies new first-in-class drugs and significantly reduces the time it takes to bring treatments to the clinic.

19.     Plaintiffs developed and patented the use of microfluidic devices for high-throughput single-cell secretion assays that can be applied to antibody discovery and cell clone selection. These include assays such as live-cell binding, specificity, cross-reactivity, affinity, receptor blocking and function. Plaintiffs have also developed and patented methods for isolating the sequences of an antibody that reacts with a disease related antigen and to identify an antigen that mediates a disease state. This groundbreaking technology allows for the screening and analysis of millions of B cells on an individual, cell-by-cell, basis to identify antibodies with rare therapeutic properties. AbCellera recently demonstrated its market leading efforts by discovering the first antibody against COVID-19 that was the first antibody to enter human clinical trials

anywhere in the world.  AbCellera's technology enabled the discovery and first dose of a therapeutic antibody in less than ninety days.

**The Patents-in-Suit**

20.     On October 23, 2018, the United States Patent and Trademark Office ("the USPTO") duly and legally issued U.S. Patent No. 10,107,812 ("the '812 patent"), titled "Methods for assaying cellular binding interactions."  The inventors of the '812 patent are Anupam Singhal, Carl L. G. Hansen, John W. Schrader, Charles A. Haynes, and Daniel J. Da Costa.  UBC is the assignee of the '812 patent.  AbCellera is the exclusive licensee of the '812 patent with the right to sue for past and present infringement and to collect damages.  A true and accurate copy of the '812 patent is attached hereto as Exhibit 1.

21.     On April 30, 2019, the USPTO duly and legally issued U.S. Patent No. 10,274,494 ("the '494 patent"), titled "Methods for assaying cellular binding interactions."  The inventors of the '494 patent are Anupam Singhal, Carl L. G. Hansen, John W. Schrader, Charles A. Haynes, and Daniel J. Da Costa.  UBC is the assignee of the '494 patent.  AbCellera is the exclusive licensee of the '494 patent with the right to sue for past and present infringement and to collect damages.  A true and accurate copy of the '494 patent is attached hereto as Exhibit 2.

22.     On November 5, 2019, the USPTO duly and legally issued U.S. Patent No. 10,466,241 ("the '241 patent"), titled "Methods for assaying cellular binding interactions."  The inventors of the '241 patent are Anupam Singhal, Carl L. G. Hansen, John W. Schrader, Charles A. Haynes, and Daniel J. Da Costa.  UBC is the assignee of the '241 patent.  AbCellera is the exclusive licensee of the '241 patent with the right to sue for past and present infringement and to collect damages.  A true and accurate copy of the '241 patent is attached hereto as Exhibit 3.

23.     On March 3, 2020, the USPTO duly and legally issued U.S. Patent No. 10,578,618 ("the '618 patent"), titled "Methods for assaying cellular binding interactions."  The inventors of

the '618 patent are Anupam Singhal, Carl L. G. Hansen, John W. Schrader, Charles A. Haynes, and Daniel J. Da Costa.  UBC is the assignee of the '618 patent.  AbCellera is the exclusive licensee of the '618 patent with the right to sue for past and present infringement and to collect damages.  A true and accurate copy of the '618 patent is attached hereto as Exhibit 4.

24.     On June 30, 2020, the USPTO duly and legally issued U.S. Patent No. 10,697,962 ("the '962 patent"), titled "Methods for assaying cellular binding interactions."  The inventors of the '962 patent are Anupam Singhal, Carl L. G. Hansen, John W. Schrader, Charles A. Haynes, and Daniel J. Da Costa.  UBC is the assignee of the '962 patent.  AbCellera is the exclusive licensee of the '962 patent with the right to sue for past and present infringement and to collect damages.  A true and accurate copy of the '962 patent is attached hereto as Exhibit 5.

25.     On October 2, 2018, the USPTO duly and legally issued U.S. Patent No. 10,087,408 ("the '408 patent"), titled "System and method for microfluidic cell culture."  The inventors of the '408 patent are Carl L. G. Hansen, Veronique Lecault, James M. Piret, and Anupam Singhal.  UBC is the assignee of the '408 patent.  AbCellera is the exclusive licensee of the '408 patent with the right to sue for past and present infringement and to collect damages.  A true and accurate copy of the '408 patent is attached hereto as Exhibit 6.

26.     On September 24, 2019, the USPTO duly and legally issued U.S. Patent No. 10,421,936 ("the '936 patent"), titled "System and method for microfluidic cell culture."  The inventors of the '936 patent are Carl L. G. Hansen, Veronique Lecault, James M. Piret, and Anupam Singhal.  UBC is the assignee of the '936 patent.  AbCellera is the exclusive licensee of the '936 patent with the right to sue for past and present infringement and to collect damages.  A true and accurate copy of the '936 patent is attached hereto as Exhibit 7.

27.     On July 7, 2020, the USPTO duly and legally issued U.S. Patent No. 10,704,018 ("the '018 patent"), titled "System and method for microfluidic cell culture."  The inventors of the

'018 patent are Carl L. G. Hansen, Veronique Lecault, James M. Piret, and Anupam Singhal.

UBC is the assignee of the '018 patent. AbCellera is the exclusive licensee of the '018 patent with

the right to sue for past and present infringement and to collect damages. A true and accurate

copy of the '018 patent is attached hereto as Exhibit 8.

28.     On September 15, 2020, the USPTO duly and legally issued U.S. Patent No.

10,775,376 ("the '376 patent"), titled "Methods for assaying cellular binding interactions." The

inventors of the '376 patent are Anupam Singhal, Carl L. G. Hansen, John W. Schrader, Charles

A. Haynes, and Daniel J. Da Costa. UBC is the assignee of the '376 patent. AbCellera is the

exclusive licensee of the '376 patent with the right to sue for past and present infringement and to

collect damages. A true and accurate copy of the '376 patent is attached hereto as Exhibit 9.

29.     On September 15, 2020, the USPTO duly and legally issued U.S. Patent No.

10,775,377 ("the '377 patent"), titled "Methods for assaying cellular binding interactions." The

inventors of the '377 patent are Anupam Singhal, Carl L. G. Hansen, John W. Schrader, Charles

A. Haynes, and Daniel J. Da Costa. UBC is the assignee of the '377 patent. AbCellera is the

exclusive licensee of the '377 patent with the right to sue for past and present infringement and to

collect damages. A true and accurate copy of the '377 patent is attached hereto as Exhibit 10.

30.     On September 15, 2020, the USPTO duly and legally issued U.S. Patent No.

10,775,378 ("the '378 patent"), titled "Methods for assaying cellular binding interactions." The

inventors of the '378 patent are Anupam Singhal, Carl L. G. Hansen, John W. Schrader, Charles

A. Haynes, and Daniel J. Da Costa. UBC is the assignee of the '378 patent. AbCellera is the

exclusive licensee of the '378 patent with the right to sue for past and present infringement and to

collect damages. A true and accurate copy of the '378 patent is attached hereto as Exhibit 11.

31.     On July 21, 2020, the USPTO duly and legally issued U.S. Patent No. 10,718,768 ("the

'768 patent"), titled "Methods for assaying cellular binding interactions." The inventors of the '768

patent are Anupam Singhal, Carl L. G. Hansen, John W. Schrader, Charles A. Haynes, and Daniel J. Da Costa. UBC is the assignee of the '768 patent. AbCellera is the exclusive licensee of the '768 patent with the right to sue for past and present infringement and to collect damages. A true and accurate copy of the '768 patent is attached hereto as Exhibit 12.

32.     On August 11, 2020, the USPTO duly and legally issued U.S. Patent No. 10,738,270 ("the '270 patent"), titled "System and method for microfluidic cell culture." The inventors of the '270 patent are Carl L. G. Hansen, Veronique Lecault, James M. Piret, and Anupam Singhal. UBC is the assignee of the '270 patent. AbCellera is the exclusive licensee of the '270 patent with the right to sue for past and present infringement and to collect damages. A true and accurate copy of the '270 patent is attached hereto as Exhibit 13.

33.     On August 18, 2020, the USPTO duly and legally issued U.S. Patent No. 10,746,737 ("the '737 patent"), titled "Methods for assaying cellular binding interactions." The inventors of the '737 patent are Anupam Singhal, Carl L. G. Hansen, John W. Schrader, Charles A. Haynes, and Daniel J. Da Costa. UBC is the assignee of the '737 patent. AbCellera is the exclusive licensee of the '737 patent with the right to sue for past and present infringement and to collect damages. A true and accurate copy of the '737 patent is attached hereto as Exhibit 14.

34.     On August 25, 2020, the USPTO duly and legally issued U.S. Patent No. 10,753,933 ("the '933 patent"), titled "Methods for assaying cellular binding interactions." The inventors of the '933 patent are Anupam Singhal, Carl L. G. Hansen, John W. Schrader, Charles A. Haynes, and Daniel J. Da Costa. UBC is the assignee of the '933 patent. AbCellera is the exclusive licensee of the '933 patent with the right to sue for past and present infringement and to collect damages. A true and accurate copy of the '933 patent is attached hereto as Exhibit 15.

35.     The '812 patent, the '494 patent, the '241 patent, the '618 patent, the '962 patent, the '408 patent, the '936 patent, the '018 patent, the '376 patent, the '377 patent, the '378 patent,

8
Case No. 4:20-cv-08624-JST (consolidated)
AMENDED COMPLAINT FOR PATENT INFRINGEMENT

the '768 patent, the '270 patent, the '737 patent, and the '933 patent are collectively referred to as the "Patents-in-Suit."

### Defendant's Accused Products and Services

36.   On information and belief, Defendant sells and manufactures products, and provides services, related to the "[d]iscovery of cellular therapies, biopharmaceuticals, and other cell-based products." (https://www.berkeleylights.com/ (last visited October 18, 2023), a true and correct copy is attached as <u>Exhibit 16</u>.)  On its website, Defendant states that its technology allows for individual cells to be:

> isolated, cultured, assayed and exported.  Each cell or clone is imaged and monitored in real-time in a NanoPen™ chamber on our OptoSelect™ chips to provide rich visual data early and often.  Our full platform and software suite deliver cell processing and deep profiling with more information about cell function than any other technology.

(https://www.berkeleylights.com/technology/ (last visited October 18, 2023), a true and correct copy is attached as <u>Exhibit 17</u>.)

37.   On information and belief, Defendant sells the Beacon® Optofluidic System along with associated technology and provides services utilizing the Beacon® Optofluidic System (collectively "the Beacon®").  The Beacon® is an automated system that can be used for antibody discovery, cell line development, synthetic biology, and cell therapy development workflows. (https://www.berkeleylights.com/systems/beacon/ (last visited October 18, 2023), a true and correct copy is attached as <u>Exhibit 18</u>.)  Defendant has also referred to the Beacon® products and services as "the Berkeley Lights Platform," which "is comprised of OptoSelect chips and reagent kits, advanced automation systems and advanced application and workflow software."  *See, e.g.*, Berkeley Lights, Inc. 10-k for year ending Dec. 31, 2022 at 2, 4-7 (https://www.sec.gov/ix?doc=/Archives/edgar/data/1689657/000168965723000009/bli-20221231.htm (last visited October 18, 2023), a true and correct copy is attached as Exhibit 19). On information and belief, the image below illustrates the Beacon®.



38.     On information and belief, beginning in 2023, Defendant launched and has begun to sell two additional Beacon devices—the Beacon Select and the Beacon Quest.  (*See, e.g.*, https://www.prnewswire.com/news-releases/berkeley-lights-launches-beacon-select-a-new-optofluidic-system-for-cell-line-development-301716821.html (last visited October 18, 2023), a true and correct copy is attached as Exhibit 20; https://www.prnewswire.com/news-releases/phenomex-launches-beacon-quest-optofluidic-system-with-opto-t-cell-profiling-workflows-301842270.html (last visited October 18, 2023), a true and correct copy is attached as Exhibit 21.)

39.     On information and belief, the Beacon Select is a "2-chip single-cell optofluidic instrument for antibody discovery." (https://brukercellularanalysis.com/products/instruments/beacon-select-optofluidic-system-for-antibody-discovery/ (last visited October 18, 2023), a true and correct copy is attached as Exhibit

22.)  On its website, Defendant represents that the Beacon Select device has "the same capabilities" as the Beacon® Optofluidic System.

(https://brukercellularanalysis.com/products/instruments/beacon-select-optofluidic-system/ (last visited October 18, 2023), a true and correct copy is attached as Exhibit 23  ("The Beacon Select™ is a 2-chip single-cell optofluidic system . . . with the same capabilities as the 4-chip Beacon® optofluidic system, which provides well-established workflows that have been adopted by ~130 customers."); *see also*  Ex. 20 ("The Beacon Select builds upon the same cutting-edge technology offered by the original Beacon system launched in 2017 that currently has an installed base of more than 130 systems globally." (emphasis added)).

40.     On information and belief, the Beacon Quest is an "automated 2-chip optofluidic system that allows you to run thousands of miniaturized single-cell assays in parallel and then recover cells of interest."  (https://brukercellularanalysis.com/products/instruments/beacon-quest-optofluidic-system/ (last visited October 18, 2023), a true and correct copy is attached as Exhibit 24.)  On information and belief the Beacon Quest has the same capabilities as the Beacon® Optofluidic System.

41.     On information and belief, Defendant sells the Beacon®, Beacon Select™, and Beacon Quest™ for use in its antibody discovery workflow, "The Opto Plasma B Discovery Workflow."  (https://www.berkeleylights.com/workflows/antibody-discovery/ (last visited September 16, 2020), a true and correct copy is attached as Exhibit 25; *see also* Exs. 20-24.)

42.     Defendant states that using its workflow, "Plasma B cells are screened using binding and functional assays to select only the most qualified antibody lead candidates."  (*Id.*)

43.     Defendant states that "Opto Plasma B Discovery Workflow enables down-selection of lead candidates through multiple assays for antigen specificity and function."  (*Id.*)  The assays are illustrated in the image below:



(*Id.*)

44.     On information and belief, Defendant sells the Beacon®, Beacon Select™, and Beacon Quest™ for use in additional antibody discovery workflows including "Opto Viral Neutralization" workflow, "Opto Memory B Discovery Rabbit" workflow, and "Opto Memory B Discovery Human" workflow.  (Ex. 19 at 7.)

45.     Defendant also sells the Beacon®, Beacon Select™, and Beacon Quest™ for use in cell line development and cell therapy workflows including through the use of "Opto Cell Line Development" and "Opto Cell Therapy Development" workflows.  (*Id.*)

46.     On information and belief, the assays are run in NanoPen™ chambers that have a volume of 250 picoliters.  Defendant states the size of the NanoPen™ chambers "means a single cell can be isolated and assayed in its own discrete chamber." (https://www.berkeleylights.com/systems/beacon/ (last visited October 18, 2023), a true and correct copy is attached as Exhibit 18.)

47.     Defendant includes the following visual representation of a NanoPen™ chamber on its website:



48.     On information and belief, the NanoPen™ chambers are contained on Defendant's OptoSelect chips.  Defendant states that "each OptoSelect chip contains thousands of NanoPen chambers."  Defendant states that the NanoPen chambers are "where cells are deposited, where they grow and where they are characterized using a myriad of proprietary Berkeley Lights assay." (*Id.*)

49.     On information and belief, Defendant sells several types of OptoSelect chips, including the OptoSelect 1750 Chip, OptoSelect 3500 Chip, OptoSelect 1500 Chip, OptoSelect 11k Chip, OptoSelect 14k Chip, and OptoSelect 20k Chip for use in the Beacon®, Beacon Select™, and Beacon Quest™.  (*Id.*; *see also* Ex. 19 at 5.)  On information and belief, Defendant also sells reagents and software for use with the Beacon®, Beacon Select™, and Beacon Quest™. (*Id.*)

50.     On information and belief, "each nanofluidic chip contains 1758 NanoPen chambers arrayed along four continuous channels.  The NanoPens have a narrow opening to the channel for nutrients and cellular waste diffusion."  (Exhibit 26 --Amgen White Paper) Representative images of the NanoPens on the nanofluidic chips are presented below:



(*Id.*)

51.     On information and belief, the following are representative of the commercial

OptoSelect chips available for use with the Beacon®, Beacon Select™, and Beacon Quest™:

(Ex. 19 at 5.)

52.     On information and belief, the Beacon® provides for "bead and diffusion-based

fluorescent assays can be adapted for scoring secreted antibody on chip.  Thus, relative protein

productivity can be established on the instrument and only clones with acceptable productivity can

be selected for export to microtiter plates and scaled-up for further studies.  Captured data can then

[be] combined to document cell growth measurements, proof of clonal origin, single-cell

secretion, and overall population compositions."  (Exhibit 27 – 2019 Biotech. Paper.)

53.     On information and belief, antibody-secreting cells ("ASCs") can be

microfluidically imported into the chip and sequestered into individual NanoPens for screening via

gravity.  On information and belief, ASCs that secrete antigen-specific IgG can be detected using a bead-based, two-color fluorescent binding assay that produces a characteristic fluorescent bloom. On information and belief, individual cells of interest can then either be lysed in the NanoPens with nucleic acids being captured for further analysis and sequencing or can be removed from the NanoPens and exported from the chip directly into 96-well plates containing cell lysis buffer. (Exhibit 28- 2019 Winters et al.)  On information and belief, the below is a schematic of the Beacon workflow for antibody-discovery:



**Figure 2.** NanOBlast on-chip screening.  (a). Cartoon schematic and representative brightfield image of the channel and nanopen space depicting the homogenous bead-based assay design for detection of IgG secretion and antigen specificity in the channel of the OS3500 chip. 3.2-micron polystyrene beads precoated with goat anti-murine IgG, Fc-specific polyclonal antibodies were mixed with AF 568–labelled, goat, anti-murine IgG H+L–specific, polyclonal antibodies; biotin-labelled therapeutic human IgG; streptavidin AF 647; and 10% human serum were imported into the channel space of the chip via onboard fluidics. (b). 45-min (final in the assay series) images of all 21 FOV stitched together depicting the blooms generated for the IgG secretion AF 568 signal as captured in the TRED filter cube of the Beacon. Magnification view of 60 individual nanopens on the chip demonstrating fluorescent bloom formation at the mouth of the nanopen. Time course of bloom formation for nanopen 928 (clone 1A3) demonstrating the change in intensity and size over the duration of the screen. (c). 45-min (final in the assay series) images of all 21 FOV stitched together depicting the blooms generated for the antigen-specific secretion AF 647 signal as captured in the CyS filter cube of the Beacon. Magnification view of 60 individual nanopens on the chip demonstrating fluorescent "bloom" formation at the mouth of the nanopen. Time course of bloom formation for nanopen 928 (clone 1A3) demonstrating the change in intensity and size over the duration of the screen. (d). 45-min timepoint images for antigen specificity and IgG secretion of the 13 nanopens from recovered mouse IgGs after constraining the panel to only single exported ASCs.

(*Id.*)

54.   On information and belief, Defendant also sells the Culture Station™ System for use with the Beacon®, Beacon Select™, and Beacon Quest™.  Defendant states that:

> The Culture Station lets you transfer up to 4 OptoSelect™ chips to a culture module with independent media, fluidics and software, and can be seamlessly integrated into Beacon [ ] workflows.  Run media optimization or free up your Beacon [ ] system to run other experiments during culture stages of an experiment. Once culture has completed, the OptoSelect chips can be moved back to the Beacon [ ] instruments for further analysis.  This creates a seamless interface between systems and increases throughput when cell culture becomes a constraint. Parallel processing of culture while simultaneously running assays on Beacon [] reduces the product development cycle time and lowers cost, maximizing benefits to the system user. Expand your Culture Station to include capacity for up to 8 chips by linking 2 instruments together on the same computer.

(https://www.berkeleylights.com/systems/culture-station/ (last visited October 18, 2023), a true and correct copy is attached as Exhibit 29.)

55.     On information and belief, Defendant provides instruction and support to customers on how to use the Beacon®, Beacon Select™, and Beacon Quest™, and related reagents, software, and Culture Station™ System.  (https://techsupport.berkeleylights.com/ (last visited October 18, 2023), a true and correct copy is attached as Exhibit 30.)

56.     On information and belief, Defendant advertises and promotes the use of the Beacon®, Beacon Select™, and Beacon Quest™ in conjunction with the reagents, software, and Culture Station™ System it also sells.  (*Id.*; *see also* Exs. 20-24.)

57.     On information and belief, in addition to selling the Beacon®, Beacon Select™, and Beacon Quest™ that embody the technology claimed in the Patents-in-Suit, and related reagents, software, and culture systems directly to consumers, Defendant also provides services to customers and partners using the Beacon®, Beacon Select™, and Beacon Quest™.

58.     Defendant makes, uses, offers for sale, sells, and/or imports the Beacon®, Beacon Select™, and Beacon Quest™ into the United States.  (*See e.g.,* https://www.berkeleylights.com/systems/beacon/ (last visited October 18, 2023), a true and correct copy is attached as Exhibit 18; *see also* Exs. 20-24.)  The Beacon®, Beacon Select™, and Beacon Quest™, and related technologies including the culture systems, chips, kits, and workflows, together, will be referred to herein as "the Accused Products and Services" going forward.

59.     Defendant's activities outlined above, and identified further below, directly and indirectly infringe the Patents-in-Suit.

### Correspondence Between AbCellera and Defendant

60.     On October 3, 2019, AbCellera wrote to Defendant putting it on notice of AbCellera's patent estate concerning microfluidic single cell workflows for antibody discovery

and clone selection, including the '812 patent, the '494 patent, the '408 patent, and the '936 patent.

61.     On December 30, 2019, Defendant responded to AbCellera's October 3 letter, but did not dispute that AbCellera's patent estate, including the aforementioned patents, covered Defendant's activities or the use of the Beacon®.

62.     On January 28, 2020, AbCellera wrote to Defendant, reiterating the scope of AbCellera's patent estate and pointing out that Defendant's then-employee Dr. Singhal had publicly discussed the attributes of Defendant's microfluidic devices, and did not dispute that AbCellera's patent estate, including the aforementioned patents, covered Defendant's activities or the use of the Beacon®.  AbCellera pointed out that Dr. Singhal is intimately familiar with AbCellera and AbCellera's patent estate as a named inventor on the Patents-in-Suit and former graduate student of AbCellera's CEO, Dr. Carl Hansen.  Dr. Singhal has assigned all of his rights in the Patents-in-Suit which are exclusively licensed to AbCellera.  On information and belief, Dr. Singhal also signed a declaration and assignment attesting to the patentability of the Patents-in-Suit and received compensation for his assignment of the Patents-in-Suit.  Given his prior role in the development of AbCellera's inventions and his roles in developing the Beacon® and as the Product Manager for the Beacon®, his knowledge is attributable to Defendant.  AbCellera further invited Defendant to discuss the content of its letters.

63.     On February 25, 2020, Defendant responded to AbCellera's January 28 letter stating that it did not see any freedom to operate issues, but failed to provide any substantiating details.

64.     On April 28, 2020, AbCellera again put Defendant on notice of AbCellera's patent estate concerning microfluidic single cell workflows for antibody discovery and clone selection, including the '812 patent, the '494 patent, the '241 patent, the '618 patent, the '408 patent, and the

'936 patent. AbCellera also explained that Defendant's marketed single-cell workflows are covered by AbCellera's patent estate. AbCellera again invited Defendant to discuss the content of its letters.

65.     Defendant never responded to AbCellera's April 28 letter.

66.     On information and belief, Defendant had actual and/or constructive notice of AbCellera's patent estate, including the '812 patent, the '494 patent, the '408 patent, and the '936 patent, prior to October 3, 2019 based on Dr. Singhal's knowledge of the prosecution and/or issuance of the aforementioned patents as a direct result of his role as an inventor of the Patents-in-Suit.

## COUNT I
## INFRINGEMENT OF THE '812 PATENT

67.     The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

68.     Defendant has directly infringed, and continues to directly infringe, at least claim 1 of the '812 patent by making, using, offering for sale, selling, and/or importing the Beacon® into the United States.

69.     The use of the Accused Products and Services meets every limitation of at least claim 1 and Defendant directly infringes at least claim 1 when using the Accused Products and Services in violation of 35 U.S.C. § 271(a).

70.     Claim 1 of the '812 patent recites:

1. A method of assaying for a binding interaction between a protein secreted by a cell and a biomolecule, the method comprising:

(a) retaining the cell secreting the protein within a chamber having an inlet, an outlet, and a solid wall defining the chamber, wherein the volume of the chamber is from 100 pL to 100 nL;

(b) exposing the protein secreted by the cell to a capture substrate, wherein the capture substrate is in fluid communication with the protein secreted by the cell and wherein the capture substrate is operable to bind the protein secreted by the cell to produce a bound protein;

(c) flowing a first fluid volume comprising the biomolecule through the inlet into the chamber and out the outlet, wherein the first fluid volume is in fluid communication with the capture substrate and the bound protein; and

(d) measuring a binding interaction between the protein secreted by the cell and the biomolecule.

71.    On information and belief, the use of the Accused Products and Services includes assaying for a binding interaction between a protein secreted by a cell and a biomolecule.  (*See e.g.*, ¶¶ 36-59.)

72.    On information and belief, the use of the Accused Products and Services includes retaining the cell secreting the protein within a chamber having an inlet, an outlet, and a solid wall defining the chamber, wherein the volume of the chamber is from 100 pL to 100 nL, or an equivalent thereof.  (*See e.g.*, ¶¶ 36-59.)

73.    On information and belief, the use of the Accused Products and Services includes exposing the protein secreted by the cell to a capture substrate, wherein the capture substrate is in fluid communication with the protein secreted by the cell and wherein the capture substrate is operable to bind the protein secreted by the cell to produce a bound protein, or an equivalent thereof.  (*See e.g.*, ¶¶ 36-59.)

74.    On information and belief, the use of the Accused Products and Services includes flowing a first fluid volume comprising the biomolecule through the inlet into the chamber and out the outlet, wherein the first fluid volume is in fluid communication with the capture substrate and the bound protein, or an equivalent thereof.  (*See e.g.*, ¶¶ 36-59.)

75.    On information and belief, the use of the Accused Products and Services includes measuring a binding interaction between the protein secreted by the cell and the biomolecule.  (*See e.g.*, ¶¶ 36-59.)

76.     Defendant also has indirectly infringed and continues to indirectly infringe the claims of the '812 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

77.     On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intended to induce infringement of the '812 patent by its customers and users of the Accused Products and Services and had knowledge that its acts would cause infringement or was willfully blind to the possibility that their inducing acts would cause infringement.

78.     Defendant knew of the '812 patent at least as of its date of its issuance or earlier by virtue of inventor Singhal.  Further, Defendant knew of the '812 patent since at least as early as October 3, 2019, when it was identified by AbCellera to Defendant and no later than the  original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020)(.  On information and belief, Defendant's customers directly infringe the '812 patent.

79.     On information and belief, Defendant specifically intends for customers to infringe the '812 patent.  Defendant encourages infringement by customers at least by offering to sell and selling the Beacon® and providing instructions to users on how to use the Accused Products and Services, which directly infringe the '812 patent.

80.     On information and belief, despite Defendant's knowledge of the '812 patent and knowledge that customers will necessarily infringe the '812 patent when the Accused Products and Services are used as instructed, Defendant continues to encourage infringement.

81.     Defendant also contributes to infringement of the '812 patent by Defendant's customers in violation of 35 U.S.C. § 271(c).  On information and belief, Defendant offers to sell and sells the Accused Products and Services within the United States knowing that they constitute a material part of the claimed inventions, knowing that the Accused Products and Services are especially made or especially adapted for use in infringing the '812 patent, and knowing that the

Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

82.     Defendant has committed and continues to commit all the above acts of infringement without license or authorization.

83.     Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by, *inter alia*, AbCellera's letters and the original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020)).

84.     Defendant has had knowledge of the '812 patent and the application from which it issued, including the published application with substantially identical claims.

85.     As a result of Defendant's infringement of the '812 patent, Plaintiffs have suffered damages and will continue to suffer damages.

86.     On information and belief, the infringement of the '812 Patent by Defendant has been and continues to be willful. Defendant has had knowledge that the Accused Products and Services are covered by the '812 patent. On information and belief, Defendant, with assistance from inventor Singhal, copied the '812 patent despite knowing that the Accused Products and Services are covered by the '812 patent. Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant. Despite this risk, Defendant has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights. Thus, Defendant's infringing actions have been and continue to be consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

87.     Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct has caused and will continue to cause

Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiffs' patented inventions.  On information and belief, Defendant will continue to infringe the '812 patent unless permanently enjoined by the Court.

**COUNT II**
**INFRINGEMENT OF THE '494 PATENT**

88.     The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

89.     Defendant has directly infringed, and continues to directly infringe, at least claim 1 of the '494 patent by making, using, offering for sale, selling, and/or importing the Accused Products and Services into the United States.

90.     The use of the Accused Products and Services meets every limitation of at least claim 1 and Defendant directly infringes at least claim 1 when using the Accused Products and Services in violation of 35 U.S.C. § 271(a).

91.     Claim 1 of the '494 patent recites:

1. A method of assaying for a binding interaction between an antibody produced by a single antibody producing cell (APC) and a biomolecule, the method comprising:

(a) retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber;

(b) exposing the antibody produced by the APC to a capture substrate, wherein the capture substrate is in fluid communication with the antibody produced by the APC and wherein the capture substrate is operable to bind the antibody produced by the APC to produce a bound antibody;

(c) flowing a first fluid volume comprising the biomolecule into the chamber via the aperture, wherein the first fluid volume is in fluid communication with the capture substrate and the bound antibody; and

(d) measuring a binding interaction between the antibody produced by the APC and the biomolecule.

92.     On information and belief, the use of the Accused Products and Services includes assaying for a binding interaction between an antibody produced by a single antibody producing cell (APC) and a biomolecule.  (*See e.g.,* ¶¶ 36-59.)

93.     On information and belief, the use of the Accused Products and Services includes retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

94.     On information and belief, the use of the Accused Products and Services includes exposing the antibody produced by the APC to a capture substrate, wherein the capture substrate is in fluid communication with the antibody produced by the APC and wherein the capture substrate is operable to bind the antibody produced by the APC to produce a bound antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

95.     On information and belief, the use of the Accused Products and Services includes flowing a first fluid volume comprising the biomolecule into the chamber via the aperture, wherein the first fluid volume is in fluid communication with the capture substrate and the bound antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

96.     On information and belief, the use of the Accused Products and Services includes measuring a binding interaction between the antibody produced by the APC and the biomolecule, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

97.     Defendant also has indirectly infringed and continues to indirectly infringe the claims of the '494 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

98.     On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intended to induce infringement of the '494 patent by its customers and users of the

Accused Products and Services and had knowledge that its acts would cause infringement or was willfully blind to the possibility that its acts would cause infringement.

99.     Defendant knew of the '494 patent at least as of its date of its issuance by virtue of inventor Singhal.  Defendant also knew of the '494 patent since at least as early as October 3, 2019, when it was identified by AbCellera to Defendant and no later than the original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020).  On information and belief, Defendant's customers directly infringe the '494 patent.

100.     On information and belief, Defendant specifically intends for its customers to infringe the '494 patent.  Defendant encourages infringement by its customers at least by offering to sell and selling the Accused Products and Services and providing instructions to users on how to use the Accused Products and Services, which directly infringes the '494 patent.

101.     On information and belief, despite Defendant's knowledge of the '494 patent and knowledge that its customers will necessarily infringe the '494 patent when the Accused Products and Services are used as instructed, Defendant continues to encourage infringement.

102.     Defendant also contributes to infringement of the '494 patent by its customers in violation of 35 U.S.C. § 271(c).  On information and belief, Defendant offers to sell and sells the Accused Products and Services within the United States knowing that it constitutes a material part of the claimed inventions, knowing that the Accused Products and Services are especially made or especially adapted for use in infringing the '494 patent, and knowing that the Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

103.     Defendant has committed and continues to commit all the above acts of infringement without license or authorization.

104. Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by, *inter alia*, AbCellera's letters and the original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020).

105. Defendant has had knowledge of the '494 patent and the application from which it issued, including the published application with substantially identical claims.

106. As a result of Defendant's infringement of the '494 patent, Plaintiffs have suffered damages and will continue to suffer damages.

107. On information and belief, the infringement of the '494 Patent by Defendant has been and continues to be willful. Defendant has had knowledge that the Accused Products and Services are covered by the '494 patent. On information and belief, Defendant, with assistance from inventor Singhal, copied the '494 patent despite knowing that the Accused Products and Services are covered by the '494 patent. Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant. Despite this risk, Defendant has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights. Thus, Defendant's infringing actions have been and continue to be consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

108. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct has caused and will continue to cause Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiffs' patented inventions. On information and belief, Defendant will continue to infringe the '494 patent unless permanently enjoined by the Court.

## COUNT III
## INFRINGEMENT OF THE '241 PATENT

109.    The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

110.    Defendant has directly infringed, and continues to directly infringe, at least claim 1 of the '241 patent by making, using, offering for sale, selling, and/or importing the Accused Products and Services into the United States.

111.    The use of the Accused Products and Services meets every limitation of at least claim 1 and Defendant directly infringes at least claim 1 when using the Accused Products and Services in violation of 35 U.S.C. § 271(a).

112.    Claim 1 of the '241 patent recites:

> 1. A method of assaying for a binding interaction between an antibody produced by a single antibody producing cell (APC) and a biomolecule, the method comprising:
>
> retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber;
>
> exposing the antibody produced by the APC to a capture substrate, wherein the capture substrate is in fluid communication with the antibody produced by the APC and wherein the capture substrate is operable to bind the antibody produced by the APC to produce a bound antibody;
>
> bringing a fluid volume comprising the biomolecule in fluid communication with the capture substrate and the bound antibody; and
>
> measuring a binding interaction between the antibody produced by the APC and the biomolecule.

113.    On information and belief, the use of the Accused Products and Services includes assaying for a binding interaction between an antibody produced by a single antibody producing cell (APC) and a biomolecule.  (*See e.g.,* ¶¶ 36-59.)

114.    On information and belief, the use of the Accused Products and Services includes retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid

wall, and an aperture that defines an opening of the chamber, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

115.     On information and belief, the use of the Accused Products and Services includes exposing the antibody produced by the APC to a capture substrate, wherein the capture substrate is in fluid communication with the antibody produced by the APC and wherein the capture substrate is operable to bind the antibody produced by the APC to produce a bound antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

116.     On information and belief, the use of the Accused Products and Services includes bringing a fluid volume comprising the biomolecule in fluid communication with the capture substrate and the bound antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

117.     On information and belief, the use of the Accused Products and Services includes measuring a binding interaction between the antibody produced by the APC and the biomolecule, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

118.     Defendant also has indirectly infringed and continues to indirectly infringe the claims of the '241 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

119.     On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intended to induce infringement of the '241 patent by its customers and users of the Accused Products and Services and had knowledge that its acts would cause infringement or was willfully blind to the possibility that its acts would cause infringement.

120.     Defendant knew of the '241 patent at least as of its date of its issuance by virtue of inventor Singhal.  Defendant also knew of the '241 patent since at least as early as October 3, 2019, when it was identified by AbCellera to Defendant and no later than the original Complaint

filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020). On information and belief, Defendant's customers directly infringe the '241 patent.

121. On information and belief, Defendant specifically intends for its customers to infringe the '241 patent. Defendant encourages infringement by its customers at least by offering to sell and selling the Accused Products and Services and providing instructions to users on how to use the Accused Products and Services, which directly infringes the '241 patent.

122. On information and belief, despite Defendant's knowledge of the '241 patent and knowledge that its customers will necessarily infringe the '241 patent when the Accused Products and Services are used as instructed, Defendant continues to encourage infringement.

123. Defendant also contributes to infringement of the '241 patent by its customers in violation of 35 U.S.C. § 271(c). On information and belief, Defendant offers to sell and sells the Accused Products and Services within the United States knowing that it constitutes a material part of the claimed inventions, knowing that the Accused Products and Services is especially made or especially adapted for use in infringing the '241 patent, and knowing that the Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

124. Defendant has committed and continues to commit all the above acts of infringement without license or authorization.

125. Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by, *inter alia*, AbCellera's letters and the original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020).

126. Defendant has had knowledge of the '241 patent and the application from which it issued, including the published application with substantially identical claims.

127.    As a result of Defendant's infringement of the '241 patent, Plaintiffs have suffered damages and will continue to suffer damages.

128.    On information and belief, the infringement of the '241 Patent by Defendant has been and continues to be willful.  Defendant has had knowledge that the Accused Products and Services are covered by the '241 patent.  On information and belief, Defendant, with assistance from inventor Singhal, copied the '241 patent despite knowing that the Accused Products and Services are covered by the '241 patent.  Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant.  Despite this risk, Defendant has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights.  Thus, Defendant's infringing actions have been and continue to be consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

129.    Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct has caused and will continue to cause Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiffs' patented inventions.  On information and belief, Defendant will continue to infringe the '241 patent unless permanently enjoined by the Court.

## COUNT IV
## INFRINGEMENT OF THE '618 PATENT

130.    The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

131.   Defendant has directly infringed, and continues to directly infringe, at least claim 1 of the '618 patent by making, using, offering for sale, selling, and/or importing the Accused Products and Services into the United States.

132.   The use of the Accused Products and Services meets every limitation of at least claim 1 and Defendant directly infringes at least claim 1 when using the Accused Products and Services in violation of 35 U.S.C. § 271(a).

133.   Claim 1 of the '618 patent recites:

> 1. A method of assaying for a binding interaction between an antibody secreted by a single antibody secreting cell (ASC) and an antigen, the method comprising:
>
> retaining the single ASC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber;
>
> incubating the single ASC within the chamber to produce a secreted antibody;
>
> bringing a first fluid volume comprising the antigen in fluid communication with the secreted antibody;
>
> exposing the secreted antibody to a removeable capture substrate, wherein the removeable capture substrate is in fluid communication with the secreted antibody and wherein the removeable capture substrate is operable to bind the secreted antibody;
>
> incubating the secreted antibody with the removeable capture substrate to produce a bound antibody; and
>
> measuring a binding interaction between the secreted antibody and the antigen.

134.   On information and belief, the use of the Accused Products and Services includes assaying for a binding interaction between an antibody secreted by a single antibody secreting cell (ASC) and an antigen.  (*See e.g.,* ¶¶ 36-59.)

135.   On information and belief, the use of the Accused Products and Services includes retaining the single ASC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

136.     On information and belief, the use of the Accused Products and Services includes incubating the single ASC within the chamber to produce a secreted antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

137.     On information and belief, the use of the Accused Products and Services includes bringing a first fluid volume comprising the antigen in fluid communication with the secreted antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

138.     On information and belief, the use of the Accused Products and Services includes exposing the secreted antibody to a removeable capture substrate, wherein the removeable capture substrate is in fluid communication with the secreted antibody and wherein the removeable capture substrate is operable to bind the secreted antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

139.     On information and belief, the use of the Accused Products and Services includes incubating the secreted antibody with the removeable capture substrate to produce a bound antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

140.     On information and belief, the use of the Accused Products and Services includes measuring a binding interaction between the secreted antibody and the antigen, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

141.     Defendant also has indirectly infringed and continues to indirectly infringe the claims of the '618 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

142.     On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intended to induce infringement of the '618 patent by its customers and users of the Accused Products and Services and had knowledge that its acts would cause infringement or was willfully blind to the possibility that its acts would cause infringement.

143.    Defendant knew of the '618 patent at least as of its date of its issuance by virtue of inventor Singhal.  Defendant also knew of the '618 patent since at least as early as April 28, 2020, when it was identified by AbCellera to Defendant and no later than the  original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020).  On information and belief, Defendant's customers directly infringe the '618 patent.

144.    On information and belief, Defendant specifically intends for its customers to infringe the '618 patent.  Defendant encourages infringement by its customers at least by offering to sell and selling the Accused Products and Services and providing instructions to users on how to use the Accused Products and Services, which directly infringes the '618 patent.

145.    On information and belief, despite Defendant's knowledge of the '618 patent and knowledge that its customers will necessarily infringe the '618 patent when the Accused Products and Services are used as instructed, Defendant continues to encourage infringement.

146.    Defendant also contributes to infringement of the '618 patent by its customers in violation of 35 U.S.C. § 271(c).  On information and belief, Defendant offers to sell and sells the Accused Products and Services within the United States knowing that it constitutes a material part of the claimed inventions, knowing that the Accused Products and Services is especially made or especially adapted for use in infringing the '618 patent, and knowing that the Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

147.    Defendant has committed and continues to commit all the above acts of infringement without license or authorization.

148.    Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by, *inter alia*, AbCellera's letters and the original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020).

149.   Defendant has had knowledge of the '618 patent and the application from which it issued, including the published application with substantially identical claims.

150.   As a result of Defendant's infringement of the '618 patent, Plaintiffs have suffered damages and will continue to suffer damages.

151.   On information and belief, the infringement of the '618 Patent by Defendant has been and continues to be willful.   Defendant has had knowledge that the Accused Products and Services are covered by the '618 patent.  On information and belief, Defendant, with assistance from inventor Singhal, copied the '618 patent despite knowing that the Accused Products and Services are covered by the '618 patent.  Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant.  Despite this risk, Defendant has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights.  Thus, Defendant's infringing actions have been and continue to be consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

152.   Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct has caused and will continue to cause Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiffs' patented inventions.  On information and belief, Defendant will continue to infringe the '618 patent unless permanently enjoined by the Court.

## COUNT V
## INFRINGEMENT OF THE '962 PATENT

153.   The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

154.     Defendant has directly infringed, and continues to directly infringe, at least claim 1 of the '962 patent by making, using, offering for sale, selling, and/or importing the Accused Products and Services into the United States.

155.     The use of the Accused Products and Services meets every limitation of at least claim 1 and Defendant directly infringes at least claim 1 when using the Accused Products and Services in violation of 35 U.S.C. § 271(a).

156.     Claim 1 of the '962 patent recites:

1. A method of assaying for a binding interaction between a secreted monoclonal antibody produced by a single antibody producing cell (APC) and an antigen, the method comprising:

retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber;

incubating the single APC within the chamber to produce a secreted monoclonal antibody;

exposing the secreted monoclonal antibody to a removeable capture substrate, wherein the removeable capture substrate is in fluid communication with the secreted monoclonal antibody and wherein the removeable capture substrate is capable of binding the secreted monoclonal antibody and nucleic acids of the single APC; incubating the secreted monoclonal antibody with the removeable capture substrate to produce a bound antibody;

bringing a first fluid volume comprising the antigen in fluid communication with the bound antibody;

measuring a binding interaction between the bound antibody and the antigen; and

lysing the single APC and capturing the nucleic acids of the single APC on the removeable capture substrate.

157.     On information and belief, the use of the Accused Products and Services includes assaying for a binding interaction between a secreted monoclonal antibody produced by a single antibody producing cell (APC) and an antigen.  (*See e.g.,* ¶¶ 36-59.)

158.     On information and belief, the use of the Accused Products and Services includes retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

159.     On information and belief, the use of the Accused Products and Services includes incubating the single APC within the chamber to produce a secreted monoclonal antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

160.     On information and belief, the use of the Accused Products and Services includes exposing the secreted monoclonal antibody to a removeable capture substrate, wherein the removeable capture substrate is in fluid communication with the secreted monoclonal antibody and wherein the removeable capture substrate is capable of binding the secreted monoclonal antibody and nucleic acids of the single APC, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

161.     On information and belief, the use of the Accused Products and Services includes incubating the secreted monoclonal antibody with the removeable capture substrate to produce a bound antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

162.     On information and belief, the use of the Accused Products and Services includes bringing a first fluid volume comprising the antigen in fluid communication with the bound antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

163.     On information and belief, the use of the Accused Products and Services includes measuring a binding interaction between the bound antibody and the antigen, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

164.     On information and belief, the use of the Accused Products and Services includes lysing the single APC and captures the nucleic acids of the single APC on the removeable capture substrate, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

165.     Defendant also has indirectly infringed and continues to indirectly infringe the claims of the '962 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

166.     On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intended to induce infringement of the '962 patent by its customers and users of the Accused Products and Services and had knowledge that its acts would cause infringement or was willfully blind to the possibility that its acts would cause infringement.

167.     Defendant knew of the '962 patent at least as of its date of its issuance by virtue of inventor Singhal.  Defendant also knew of the '962 patent since at least as early as April 28, 2020, when it was identified by AbCellera to Defendant and no later than the original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020).  On information and belief, Defendant's customers directly infringe the '962 patent.

168.     On information and belief, Defendant specifically intends for its customers to infringe the '962 patent.  Defendant encourages infringement by its customers at least by offering to sell and selling the Accused Products and Services and providing instructions to users on how to use the Accused Products and Services, which directly infringes the '962 patent.

169.     On information and belief, despite Defendant's knowledge of the '962 patent and knowledge that its customers will necessarily infringe the '962 patent when the Accused Products and Services are used as instructed, Defendant continues to encourage infringement.

170.     Defendant also contributes to infringement of the '962 patent by its customers in violation of 35 U.S.C. § 271(c).  On information and belief, Defendant offers to sell and sells the Accused Products and Services within the United States knowing that it constitutes a material part of the claimed inventions, knowing that the Accused Products and Services is especially made or especially adapted for use in infringing the '962 patent, and knowing that the Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

171.   Defendant has committed and continues to commit all the above acts of infringement without license or authorization.

172.   Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by, *inter alia*, AbCellera's letters and the original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020).

173.   Defendant has had knowledge of the '962 patent and the application from which it issued, including the published application with substantially identical claims.

174.   As a result of Defendant's infringement of the '962 patent, Plaintiffs have suffered damages and will continue to suffer damages.

175.   On information and belief, the infringement of the '962 Patent by Defendant has been and continues to be willful.  Defendant has had knowledge that the Accused Products and Services are covered by the '962 patent.  On information and belief, Defendant, with assistance from inventor Singhal, copied the '962 patent despite knowing that the Accused Products and Services are covered by the '962 patent.  Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant.  Despite this risk, Defendant has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights.  Thus, Defendant's infringing actions have been and continue to be consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

176.   Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct has caused and will continue to cause Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiffs' patented

inventions.  On information and belief, Defendant will continue to infringe the '962 patent unless permanently enjoined by the Court.

**COUNT VI**
**INFRINGEMENT OF THE '408 PATENT**

177.    The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

178.    Defendant has directly infringed, and continues to directly infringe, at least claim 1 of the '408 patent by making, using, offering for sale, selling, and/or importing the Accused Products and Services into the United States.

179.    The use of the Accused Products and Services meets every limitation of at least claim 1 of the '408 patent.  Accordingly, Defendant's use of the Accused Products and Services directly infringes the '408 patent in violation of 35 U.S.C. § 271(a).

180.    Claim 1 of the '408 patent recites:

1. A method of culturing a cell, the method comprising:

retaining the cell at a retaining position within an individual chamber of a microfabricated device;

perfusing the cell with a perfusion fluid by flowing the perfusion fluid into the individual chamber through an inlet and out of the chamber through an outlet, wherein the outlet is positioned such that gravitational forces acting on the cell to keep it at or near the retaining position exceed hydrodynamic forces acting on the cell to move it toward the outlet;

culturing the cell within the chamber and monitoring a response in the chamber; and

selectively recovering the cell or a clonal population thereof from the individual chamber based on the response in the monitoring step.

181.    On information and belief, the use of the Accused Products and Services includes culturing a cell.  (*See e.g.,* ¶¶ 36-59.)

182.    On information and belief, the use of the Accused Products and Services includes retaining the cell at a position within an individual chamber of a microfabricated device, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

183. On information and belief, the use of the Accused Products and Services includes perfusing the cell with a perfusion fluid by flowing the perfusion fluid into the chamber through an inlet and out of the chamber through an outlet, wherein the outlet is positioned such that gravitational forces acting on the cell to keep it at or near the retaining position exceed hydrodynamic forces acting on the cell to move it towards the outlet, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

184. On information and belief, the use of the Accused Products and Services includes culturing a cell within the chamber and monitoring a response in the chamber, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

185. On information and belief, the use of the Accused Products and Services includes selectively recovering the cell or a clonal population thereof from the individual chamber based on the response in the monitoring step, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

186. Defendant also has indirectly infringed and continues to indirectly infringe the claims of the '408 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

187. On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intended to induce infringement of the '408 patent by its customers and users of the Accused Products and Services and had knowledge that its acts would cause infringement or was willfully blind to the possibility that its acts would cause infringement.

188. Defendant knew of the '408 patent at least as of its date of its issuance by virtue of inventor Singhal.  Defendant also knew of the '408 patent since at least as early as October 3, 2019, when it was identified by AbCellera to Defendant and no later than the original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020).

189.   On information and belief, Defendant specifically intends for its customers to infringe the '408 patent.  Defendant encourages infringement by its customers at least by offering to sell and selling the Accused Products and Services and providing instructions on how to use the Accused Products and Services, which directly infringes the '408 patent.

190.   On information and belief, despite Defendant's knowledge of the '408 patent and knowledge that its customers will necessarily infringe the '408 patent when the Accused Products and Services are used as instructed, Defendant continues to encourage infringement.

191.   Defendant also contributes to infringement of the '408 patent by its customers in violation of 35 U.S.C. § 271(c).  On information and belief, Defendant offers to sell and sells the Accused Products and Services within the United States knowing that it constitutes a material part of the claimed inventions, knowing that the Accused Products and Services are especially made or especially adapted for use in infringing the '408 patent, and knowing that the Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

192.   Defendant has committed and continues to commit all the above acts of infringement without license or authorization.

193.   Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by, *inter alia*, AbCellera's letters as well as the original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020).

194.   Defendant has had knowledge of the '408 patent and the application from which it issued, including the published application with substantially identical claims.

195.   As a result of Defendant's infringement of the '408 patent, Plaintiffs have suffered damages and will continue to suffer damages.

196. On information and belief, the infringement of the '408 Patent by Defendant has been and continues to be willful. Defendant has had knowledge that the use of the Accused Products and Services are covered by the '408 patent. On information and belief, Defendant, with assistance from inventor Singhal, copied the '408 patent despite knowing that the Accused Products and Services are covered by the '408 patent. Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant. Despite this risk, Defendant has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights. Thus, Defendant's infringing actions have been and continue to be consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

197. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct has caused and will continue to cause Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiffs' patented inventions. On information and belief, Defendant will continue to infringe the '408 patent unless permanently enjoined by the Court.

**COUNT VII**
**INFRINGEMENT OF THE '936 PATENT**

198. The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

199. Defendant has directly infringed, and continues to directly infringe, at least claim 1 of the '936 patent by making, using, offering for sale, selling, and/or importing the Accused Products and Services into the United States.

200.     The use of the Accused Products and Services meets every limitation of at least claim 1 of the '936 patent.  Accordingly, Defendant's use of the Accused Products and Services directly infringes the '936 patent in violation of 35 U.S.C. § 271(a).

201.     Claim 1 of the '936 patent recites:

> 1. A method for selecting a cell, or a clone thereof, from a population of cells, comprising:
>
> introducing the population of cells into 1,600 to 20,000 microfluidic chambers of a microfluidic device via a single introduction port, wherein each microfluidic chamber comprises an inlet, the single introduction port is in fluid communication with a flow channel that is in fluid communication with the inlets of the microfluidic chambers, and wherein individual cells of the population are retained in unique microfluidic chambers of the microfluidic device, and the cells are transported via the introduction port and flow channel into the unique microfluidic chambers;
>
> providing a cell culture medium to the plurality of microfluidic chambers via the flow channel and the inlets of the chambers;
>
> exchanging the cell culture medium in the individual microfluidic chambers via the flow channel and the inlets of the chambers, to create a plurality of individual clonal cell populations, wherein the individual clonal cell populations are retained in the same microfluidic chamber as their respective parental cells;
>
> measuring a cell product secreted by the individual clonal cell populations, or subset thereof, within one or more of the microfluidic chambers; and
>
> selecting one or more individual clonal cell populations from the plurality to provide one or more selected individual clonal cell populations.

202.     On information and belief, the use of the Accused Products and Services includes selecting a cell or a clone of a cell from a population of cells.  (*See e.g.,* ¶¶ 36-59.)

203.     On information and belief, the use of the Accused Products and Services includes introducing a population of cells into 1,600 to 20,000 microfluidic chambers of a microfluidic device via a single introduction port, wherein each microfluidic chamber comprises an inlet, the single introduction port is in fluid communication with a flow channel that is in fluid communication with the inlets of the microfluidic chambers, and wherein individual cells of the population are retained in unique microfluidic chambers of the microfluidic device, and the cells

are transported via the introduction port and flow channel into the unique microfluidic chambers, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

204.    On information and belief, the use of the Accused Products and Services includes providing a cell culture medium to the plurality of microfluidic chambers via the flow channel and the inlets of the chambers, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

205.    On information and belief, the use of the Accused Products and Services includes exchanging the cell culture medium in the individual microfluidic chambers via the flow channel and the inlets of the chambers to create a plurality of individual clonal cell populations, wherein the individual clonal cell populations are retained in the same microfluidic chamber as their respective parental cells, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

206.    On information and belief, the use of the Accused Products and Services includes measuring a cell product secreted by the individual clonal cell populations, or subset of the clonal cell populations, within one or more of the microfluidic chambers, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

207.    On information and belief, the use of the Accused Products and Services includes selecting one or more individual clonal cell populations from the plurality to provide one or more selected individual clonal cell populations, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

208.    Defendant also has indirectly infringed and continues to indirectly infringe the claims of the '936 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

209.    On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intended to induce infringement of the '936 patent by its customers and users of the Accused Products and Services and had knowledge that its acts would cause infringement or was willfully blind to the possibility that its acts would cause infringement.

210.     Defendant knew of the '936 patent at least as of its date of its issuance by virtue of inventor Singhal.  Defendant also knew of the '936 patent since at least as early as October 3, 2019, when it was identified by AbCellera to Defendant and no later than the original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020).

211.     On information and belief, Defendant specifically intends for its customers to infringe the '936 patent.  Defendant encourages infringement by its customers at least by offering to sell and selling the Accused Products and Services and providing instructions on how to use the Accused Products and Services, which directly infringes the '936 patent.

212.     On information and belief, despite Defendant's knowledge of the '936 patent and knowledge that its customers will necessarily infringe the '936 patent when the Accused Products and Services are used as instructed, Defendant continues to encourage infringement.

213.     Defendant also contributes to infringement of the '936 patent by its customers in violation of 35 U.S.C. § 271(c).  On information and belief, Defendant offers to sell and sells the Accused Products and Services within the United States knowing that it constitutes a material part of the claimed inventions, knowing that the Accused Products and Services is especially made or especially adapted for use in infringing the '936 patent, and knowing that the Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

214.     Defendant has committed and continues to commit all the above acts of infringement without license or authorization.

215.     Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by, *inter alia*, AbCellera's letters as well as the original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020).

216. Defendant has had knowledge of the '936 patent and the application from which it issued, including the published application with substantially identical claims.

217. As a result of Defendant's infringement of the '936 patent, Plaintiffs have suffered damages and will continue to suffer damages.

218. On information and belief, the infringement of the '936 Patent by Defendant has been and continues to be willful. Defendant has had knowledge that the use of the Accused Products and Services are covered by the '936 patent. On information and belief, Defendant, with assistance from inventor Singhal, copied the '936 patent despite knowing that the Accused Products and Services are covered by the '936 patent. Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant. Despite this risk, Defendant has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights. Thus, Defendant's infringing actions have been and continue to be consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

219. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct has caused and will continue to cause Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiffs' patented inventions. On information and belief, Defendant will continue to infringe the '408 patent unless permanently enjoined by the Court.

**COUNT VIII**
**INFRINGEMENT OF THE '018 PATENT**

220. The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

221.    Defendant has directly infringed, and continues to directly infringe, at least claim 1 of the '018 patent by making, using, offering for sale, selling, and/or importing the Accused Products and Services into the United States.

222.    The use of the Accused Products and Services meets every limitation of at least claim 1 of the '018 patent.  Accordingly, Defendant's use of the Accused Products and Services directly infringes the '018 patent in violation of 35 U.S.C. § 271(a).

223.    Claim 1 of the '018 patent recites:

1. A method for culturing single cells, comprising:

introducing a population of cells via a single introduction port into a microfluidic device comprising a plurality of microfluidic chambers, wherein each microfluidic chamber of the plurality comprises an inlet, the single introduction port is in fluid communication with a flow channel that is in fluid communication with the inlets of the plurality of microfluidic chambers,

wherein single cells of the population are retained individually in different microfluidic chambers of the plurality, and wherein the cells are transported via the introduction port and flow channel into the different microfluidic chambers,

providing a cell culture medium to the plurality of microfluidic chambers via the flow channel and the inlets of the microfluidic chambers,

exchanging the cell culture medium in the microfluidic chambers via the flow channel and the inlets of the microfluidic chambers, to create a plurality of individual clonal cell populations, wherein the individual clonal cell populations are retained in the same microfluidic chamber as their respective parental cell, thereby culturing the single cells.

224.    On information and belief, the use of the Accused Products and Services includes culturing single cells.  (*See e.g.*, ¶¶ 36-59.)

225.    On information and belief, the use of the Accused Products and Services includes introducing a population of cells via a single introduction port into a microfluidic device comprising a plurality of microfluidic chambers, wherein each microfluidic chamber of the plurality comprises an inlet, the single introduction port is in fluid communication with a flow channel that is in fluid communication with the inlets of the plurality of microfluidic chambers, or an equivalent thereof.  (*See e.g.*, ¶¶ 36-59.)

226.    On information and belief, the use of the Accused Products and Services includes single cells of the population retained individually in different microfluidic chambers of the plurality, and wherein the cells are transported via the introduction port and flow channel into the different microfluidic chambers, or an equivalent thereof.  (*See e.g.*, ¶¶ 36-59.)

227.    On information and belief, the use of the Accused Products and Services includes providing a cell culture medium to the plurality of microfluidic chambers via the flow channel and the inlets of the microfluidic chambers, or an equivalent thereof.  (*See e.g.*, ¶¶ 36-59.)

228.    On information and belief, the use of the Accused Products and Services includes exchanging the cell culture medium in the microfluidic chambers via the flow channel and the inlets of the microfluidic chambers, to create a plurality of individual clonal cell populations, wherein the individual clonal cell populations are retained in the same microfluidic chamber as their respective parental cell, thereby culturing the single cells, or an equivalent thereof.  (*See e.g.*, ¶¶ 36-59.)

229.    Defendant also has indirectly infringed and continues to indirectly infringe the claims of the '018 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

230.    On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intended to induce infringement of the '018 patent by its customers and users of the Accused Products and Services and had knowledge that its acts would cause infringement or was willfully blind to the possibility that its acts would cause infringement.

231.    Defendant knew of the '018 patent at least as of its date of its issuance by virtue of inventor Singhal.  Defendant also knew of the '018 patent since no later than the original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020).

232.     On information and belief, Defendant specifically intends for customers to infringe the '018 patent.  Defendant encourages infringement by customers at least by offering to sell and selling the Accused Products and Services and providing instructions on how to use the Accused Products and Services, which directly infringes the '018 patent.

233.     On information and belief, despite Defendant's knowledge of the '018 patent and knowledge that its customers will necessarily infringe the '018 patent when the Accused Products and Services are used as instructed, Defendant continues to encourage infringement.

234.     Defendant also contributes to infringement of the '018 patent by its customers in violation of 35 U.S.C. § 271(c).  On information and belief, Defendant offers to sell and sells the Accused Products and Services within the United States knowing that it constitutes a material part of the claimed inventions, knowing that the Accused Products and Services are especially made or especially adapted for use in infringing the '018 patent, and knowing that the Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

235.     Defendant has committed and continues to commit all the above acts of infringement without license or authorization.

236.     Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by the original Complaint filed on July 9, 2020 (No. 20-cv-00931, D.I. 1 (D. Del. July 9, 2020).

237.     Defendant has knowledge of the '018 patent and the application from which it issued, including the published application with substantially identical claims.

238.     As a result of Defendant's infringement of the '018 patent, Plaintiffs have suffered damages and will continue to suffer damages.

239.   On information and belief, the infringement of the '018 Patent by Defendant is willful.  Defendant has had knowledge that the use of the Accused Products and Services are covered by the '018 patent.  On information and belief, Defendant, with assistance from inventor Singhal, copied the '018 patent despite knowing that the Accused Products and Services are covered by the '018 patent.  Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant.  Despite this risk, Defendant has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights.  Thus, Defendant's infringing actions have been and continue to be consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

240.   Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct has caused and will continue to cause Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiffs' patented inventions.  On information and belief, Defendant will continue to infringe the '018 patent unless permanently enjoined by the Court.

### COUNT IX
### INFRINGEMENT OF THE '376 PATENT

241.   The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

242.   Defendant directly infringes, at least claim 1 of the '376 patent by making, using, offering for sale, selling, and/or importing the Accused Products and Services into the United States.

243.   The use of the Accused Products and Services meets every limitation of at least claim 1 and Defendant directly infringes at least claim 1 when using the Accused Products and Services in violation of 35 U.S.C. § 271(a).

244.   Claim 1 of the '376 patent recites:

1. A method of assaying for a binding interaction between an antibody secreted by a single antibody secreting cell (ASC) and an antigen, the method comprising:

retaining the single ASC within a chamber having a volume of less than 500 pL, a solid wall, and an aperture that defines an opening of the chamber;

incubating the single ASC within the chamber to produce a secreted antibody;

bringing a first fluid volume comprising the antigen in fluid communication with the secreted antibody;

exposing the secreted antibody to a removeable capture substrate, wherein the removeable capture substrate is in fluid communication with the secreted antibody and wherein the removeable capture substrate is operable to bind the secreted antibody;

incubating the secreted antibody with the removeable capture substrate to produce a bound antibody; and

measuring a binding interaction between the secreted antibody and the antigen.

245.   On information and belief, the use of the Accused Products and Services includes assaying for a binding interaction between an antibody secreted by a single ASC and an antigen. (*See e.g.,* ¶¶ 36-59.)

246.   On information and belief, the use of the Accused Products and Services includes retaining the single ASC within a chamber having a volume of less than 500 pL, a solid wall, and an aperture that defines an opening of the chamber, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

247.   On information and belief, the use of the Accused Products and Services includes incubating the single ASC within the chamber to produce a secreted antibody, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

248.   On information and belief, the use of the Accused Products and Services includes bringing a first fluid volume comprising the antigen in fluid communication with the secreted antibody, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

249.     On information and belief, the use of the Accused Products and Services includes exposing the secreted antibody to a removeable capture substrate, wherein the removeable capture substrate is in fluid communication with the secreted antibody and wherein the removeable capture substrate is operable to bind the secreted antibody, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

250.     On information and belief, the use of the Accused Products and Services includes incubating the secreted antibody with the removeable capture substrate to produce a bound antibody, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

251.     On information and belief, the use of the Accused Products and Services includes measuring a binding interaction between the secreted antibody and the antigen, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

252.     Defendant also indirectly infringes the claims of the '376 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

253.     On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intends to induce infringement of the '376 patent by its customers and users of the Accused Products and Services and has knowledge that its acts will cause infringement or is willfully blind to the possibility that its acts will cause infringement.

254.     Defendant has known of the '376 patent at least as of the date of the original Complaint filed on September 16, 2020 (No. 20-cv-01230, D.I. 1 (D. Del. Sept. 16, 2020), as well as by virtue of inventor Singhal. On information and belief, Defendant's customers directly infringe the '376 patent.

255.     On information and belief, Defendant specifically intends for its customers to infringe the '376 patent. Defendant encourages infringement by its customers at least by offering to sell and selling the Accused Products and Services and providing instructions to users on how to use the Accused Products and Services, which directly infringes the '376 patent.

256.    On information and belief, despite Defendant's knowledge of the '376 patent and knowledge that its customers will necessarily infringe the '376 patent when the Accused Products and Services are used as instructed, Defendant encourages infringement.

257.    Defendant also contributes to infringement of the '376 patent by its customers in violation of 35 U.S.C. § 271(c). On information and belief, Defendant offers to sell and sells the Accused Products and Services within the United States knowing that it constitutes a material part of the claimed inventions, knowing that the Accused Products and Services are especially made or especially adapted for use in infringing the '376 patent, and knowing that the Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

258.    Defendant commits all the above acts of infringement without license or authorization.

259.    Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by, *inter alia*, AbCellera's letters and the original Complaint filed on September 16, 2020 (No. 20-cv-01230, D.I. 1 (D. Del. Sept. 16, 2020).

260.    Defendant has had knowledge of the '376 patent and the application from which it issued, including the published application with substantially identical claims.

261.    As a result of Defendant's infringement of the '376 patent, Plaintiffs have suffered damages and will continue to suffer damages.

262.    On information and belief, the infringement of the '376 patent by Defendant is willful. Defendant has had knowledge that the Accused Products and Services are covered by the '376 patent. On information and belief, Defendant, with assistance from inventor Singhal, copied the '376 patent despite knowing that the Accused Products and Services are covered by the '376 patent. Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant.

Despite this risk, Defendant infringes in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights. Thus, Defendant's infringing actions are consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

263.    Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct causes and will cause Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiffs' patented inventions. On information and belief, Defendant will continue to infringe the '376 patent unless permanently enjoined by the Court.

## COUNT X
## INFRINGEMENT OF THE '377 PATENT

264.    The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

265.    Defendant directly infringes at least claim 1 of the '377 patent by making, using, offering for sale, selling, and/or importing the Accused Products and Services into the United States.

266.    The use of the Accused Products and Services meets every limitation of at least claim 1 and Defendant directly infringes at least claim 1 when using the Accused Products and Services in violation of 35 U.S.C. § 271(a).

267.    Claim 1 of the '377 patent recites:

1. A method of assaying a secreted monoclonal antibody produced by a single antibody producing cell (APC) and an antigen, the method comprising:

retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber;

incubating the single APC within the chamber to produce a secreted monoclonal antibody;

exposing the secreted monoclonal antibody to a first removeable capture substrate bound to an antigen

determining whether the secreted monoclonal antibody binds the antigen;

lysing the single APC and capturing the nucleic acids of the single APC on a second removeable capture substrate.

268.    On information and belief, the use of the Accused Products and Services includes assaying a secreted monoclonal antibody produced by a single APC and an antigen. (*See e.g.,* ¶¶ 36-59.)

269.    On information and belief, the use of the Accused Products and Services includes retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

270.    On information and belief, the use of the Accused Products and Services includes incubating the single APC within the chamber to produce a secreted monoclonal antibody, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

271.    On information and belief, the use of the Accused Products and Services includes exposing the secreted monoclonal antibody to a first removeable capture substrate bound to an antigen, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

272.    On information and belief, the use of the Accused Products and Services includes determining whether the secreted monoclonal antibody binds the antigen, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

273.    On information and belief, the use of the Accused Products and Services includes lysing the single APC and captures the nucleic acids of the single APC on the removeable capture substrate, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

274.    Defendant also indirectly infringes the claims of the '377 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

275.    On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intends to induce infringement of the '377 patent by its customers and users of the Accused Products

and Services and has knowledge that its acts will cause infringement or is willfully blind to the possibility that its acts will cause infringement.

276.    Defendant has known of the '377 patent at least as of the date of the original Complaint filed on September 16, 2020 (No. 20-cv-01230, D.I. 1 (D. Del. Sept. 16, 2020), as well as by virtue of inventor Singhal. On information and belief, Defendant's customers directly infringe the '377 patent.

277.    On information and belief, Defendant specifically intends for its customers to infringe the '377 patent. Defendant encourages infringement by its customers at least by offering to sell and selling the Accused Products and Services and providing instructions to users on how to use the Accused Products and Services, which directly infringes the '377 patent.

278.    On information and belief, despite Defendant's knowledge of the '377 patent and knowledge that its customers will necessarily infringe the '377 patent when the Accused Products and Services are used as instructed, Defendant encourages infringement.

279.    Defendant also contributes to infringement of the '377 patent by its customers in violation of 35 U.S.C. § 271(c). On information and belief, Defendant offers to sell and sells the Accused Products and Services within the United States knowing that it constitutes a material part of the claimed inventions, knowing that the Accused Products and Services are especially made or especially adapted for use in infringing the '377 patent, and knowing that the Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

280.    Defendant commits all the above acts of infringement without license or authorization.

281.    Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by, *inter alia*, AbCellera's letters and the original Complaint filed on September 16, 2020  (No. 20-cv-01230, D.I. 1 (D. Del. Sept. 16, 2020).

282.    Defendant has had knowledge of the '377 patent and the application from which it issued, including the published application with substantially identical claims.

283. As a result of Defendant's infringement of the '377 patent, Plaintiffs have suffered damages and will continue to suffer damages.

284. On information and belief, the infringement of the '377 patent by Defendant is willful. Defendant has had knowledge that the Accused Products and Services are covered by the '377 patent. On information and belief, Defendant, with assistance from inventor Singhal, copied the '377 patent despite knowing that the Accused Products and Services are covered by the '377 patent. Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant. Despite this risk, Defendant deliberately infringes in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights. Thus, Defendant's infringing actions are consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

285. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct will continue to cause Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiffs' patented inventions. On information and belief, Defendant will continue to infringe the '377 patent unless permanently enjoined by the Court.

## COUNT XI
## INFRINGEMENT OF THE '378 PATENT

286. The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

287. Defendant directly infringes at least claim 1 of the '378 patent by making, using, offering for sale, selling, and/or importing the Accused Products and Services into the United States.

288. The use of the Accused Products and Services meets every limitation of at least claim 1 and Defendant directly infringes at least claim 1 when using the Accused Products and Services in violation of 35 U.S.C. § 271(a).

289. Claim 1 of the '378 patent recites:

1. A method of assaying a secreted monoclonal antibody produced by a single antibody producing cell (APC) and an antigen, the method comprising:

retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber;

incubating the single APC within the chamber to produce a secreted monoclonal antibody;

exposing the secreted monoclonal antibody to a first removeable capture substrate, wherein first the removeable capture substrate is in fluid communication with the secreted monocolonal antibody and wherein the first removeable capture substrate is capable of binding the secreted monoclonal antibody;

incubating the secreted monoclonal antibody with the first removeable capture substrate to produce a bound antibody;

exposing a first fluid volume comprising the antigen in fluid communication with the bound antibody.

determining whether the bound antibody binds the antigen; and

lysing the single APC and capturing the nucelic acids of the single APC on a second removeable capture substrate.

290. On information and belief, the use of the Accused Products and Services includes assaying a secreted monoclonal antibody produced by a single APC and an antigen. (*See e.g.,* ¶¶ 36-59.)

291. On information and belief, the use of the Accused Products and Services includes retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

292.    On information and belief, the use of the Accused Products and Services includes incubating the single APC within the chamber to produce a secreted monoclonal antibody, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

293.    On information and belief, the use of the Accused Products and Services includes exposing the secreted monoclonal antibody to a first removeable capture substrate, wherein first the removeable capture substrate is in fluid communication with the secreted monoclonal antibody and wherein the first removeable capture substrate is capable of binding the secreted monoclonal antibody, or an equivalent thereof . (*See e.g.,* ¶¶ 36-59.)

294.    On information and belief, the use of the Accused Products and Services includes incubating the secreted monoclonal antibody with the first removeable capture substrate to produce a bound antibody, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

295.    On information and belief, the use of the Accused Products and Services includes exposing a first fluid volume comprising the antigen in fluid communication with the bound antibody, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

296.    On information and belief, the use of the Accused Products and Services includes determining whether the bound antibody binds the antigen, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

297.    On information and belief, the use of the Accused Products and Services includes lysing the single APC and capturing the nucleic acids of the single APC on a second removeable capture substrate, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

298.    Defendant also indirectly infringes the claims of the '378 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

299.    On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intends to induce infringement of the '378 patent by its customers and users of the Accused Products and Services and has had knowledge that its acts will cause infringement or is willfully blind to the possibility that its acts will cause infringement.

300.    Defendant has known of the '378 patent at least as of the date of the original Complaint filed on September 16, 2020 (No. 20-cv-01230, D.I. 1 (D. Del. Sept. 16, 2020), as well as by virtue of inventor Singhal. On information and belief, Defendant's customers directly infringe the '378 patent.

301.    On information and belief, Defendant specifically intends for its customers to infringe the '378 patent. Defendant encourages infringement by its customers at least by offering to sell and selling the Accused Products and Services and providing instructions to users on how to use the Accused Products and Services, which directly infringes the '378 patent.

302.    On information and belief, despite Defendant's knowledge of the '378 patent and knowledge that its customers will necessarily infringe the '378 patent when the Accused Products and Services are used as instructed, Defendant encourages infringement.

303.    Defendant also contributes to infringement of the '378 patent by its customers in violation of 35 U.S.C. § 271(c). On information and belief, Defendant offers to sell and sells the Accused Products and Services within the United States knowing that it constitutes a material part of the claimed inventions, knowing that the Accused Products and Services are especially made or especially adapted for use in infringing the '378 patent, and knowing that the Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

304.    Defendant commits all the above acts of infringement without license or authorization.

305.    Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by, *inter alia*, AbCellera's letters and the original Complaint filed on September 16, 2020 (No. 20-cv-01230, D.I. 1 (D. Del. Sept. 16, 2020).

306. Defendant has had knowledge of the '378 patent and the application from which it issued, including the published application with substantially identical claims.

307. As a result of Defendant's infringement of the '378 patent, Plaintiffs have suffered damages and will continue to suffer damages.

308. On information and belief, the infringement of the '378 patent by Defendant is willful. Defendant has had knowledge that the Accused Products and Services are covered by the '378 patent. On information and belief, Defendant, with assistance from inventor Singhal, copied the '378 patent despite knowing that the Accused Products and Services are covered by the '378 patent. Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant. Despite this risk, Defendant deliberately infringes in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights. Thus, Defendant's infringing actions are consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

309. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct will cause Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiffs' patented inventions. On information and belief, Defendant will continue to infringe the '378 patent unless permanently enjoined by the Court.

## COUNT XII
## INFRINGEMENT OF THE '768 PATENT

310. The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

311. Defendant has directly infringed, and continues to directly infringe, at least claim 1 of the '768 patent by making, using, offering for sale, selling, and/or importing the Accused Products and Services into the United States.

312.   The use of the Accused Products and Services meets every limitation of at least claim 1 and Defendant directly infringes at least claim 1 when using the Accused Products and Services in violation of 35 U.S.C. § 271(a).

313.   Claim 1 of the '768 patent recites:

> 1. A method of assaying for a binding interaction between a secreted monoclonal antibody produced by a single antibody producing cell (APC) and an antigen, the method comprising:
>
> retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber;
>
> incubating the single APC within the chamber to produce a secreted monoclonal antibody;
>
> exposing the secreted monoclonal antibody to a first removeable capture substrate bound to an antigen, wherein the antigen is capable of capturing the secreted monoclonal antibody,
>
> incubating the secreted monoclonal antibody with the first removeable capture substrate to produce a bound antibody;
>
> measuring a binding interaction between the bound antibody and the antigen; and
>
> lysing the single APC and capturing the nucleic acids of the single APC on the removeable capture substrate.

314.   On information and belief, the use of the Accused Products and Services includes assaying for a binding interaction between a secreted monoclonal antibody produced by a single antibody producing cell (APC) and an antigen.  (*See e.g.,* ¶¶ 36-59.)

315.   On information and belief, the use of the Accused Products and Services includes retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

316.   On information and belief, the use of the Accused Products and Services includes incubating the single APC within the chamber to produce a secreted monoclonal antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

317.   On information and belief, the use of the Accused Products and Services includes exposing the secreted monoclonal antibody to a first removeable capture substrate bound to an

antigen, wherein the antigen is capable of capturing the secreted monoclonal antibody, or an equivalent thereof . (*See e.g.*, ¶¶ 36-59.)

318.     On information and belief, the use of the Accused Products and Services includes incubating the secreted monoclonal antibody with the first removeable capture substrate to produce a bound antibody, or an equivalent thereof. (*See e.g.*, ¶¶ 36-59.)

319.     On information and belief, the use of the Accused Products and Services includes measuring a binding interaction between the bound antibody and the antigen, or an equivalent thereof. (*See e.g.*, ¶¶ 36-59.)

320.     On information and belief, the use of the Accused Products and Services includes lysing the single APC and captures the nucleic acids of the single APC on the removeable capture substrate, or an equivalent thereof. (*See e.g.*, ¶¶ 36-59.)

321.     Defendant also has indirectly infringed and continues to indirectly infringe the claims of the '768 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

322.     On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intended to induce infringement of the '768 patent by its customers and users of the Accused Products and Services and had knowledge that its acts would cause infringement or was willfully blind to the possibility that its acts would cause infringement.

323.     Defendant knew of the '768 patent at least as of its date of its issuance by virtue of inventor Singhal.  Defendant also knew of the '768 patent since no later than the original Complaint filed on August 25, 2020  (No. 20-cv-01116, D.I. 1 (D. Del. Aug. 25, 2020).  On information and belief, Defendant's customers directly infringe the '768 patent.

324.     On information and belief, Defendant specifically intends for its customers to infringe the '768 patent.  Defendant encourages infringement by its customers at least by offering to sell and

selling the Accused Products and Services and providing instructions to users on how to use the Accused Products and Services, which directly infringes the '768 patent.

325.    On information and belief, despite Defendant's knowledge of the '768 patent and knowledge that its customers will necessarily infringe the '768 patent when the Accused Products and Services are used as instructed, Defendant continues to encourage infringement.

326.    Defendant also contributes to infringement of the '768 patent by its customers in violation of 35 U.S.C. § 271(c).  On information and belief, Defendant offers to sell and sells the Accused Products and Services within the United States knowing that it constitutes a material part of the claimed inventions, knowing that the Accused Products and Services are especially made or especially adapted for use in infringing the '768 patent, and knowing that the Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

327.    Defendant has committed and continues to commit all the above acts of infringement without license or authorization.

328.    Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by, *inter alia*, AbCellera's letters and the original Complaint filed on August 25, 2020  (No. 20-cv-01116, D.I. 1 (D. Del. Aug. 25, 2020).

329.    Defendant has had knowledge of the '768 patent and the application from which it issued, including the published application with substantially identical claims.

330.    As a result of Defendant's infringement of the '768 patent, Plaintiffs have suffered damages and will continue to suffer damages.

331.    On information and belief, the infringement of the '768 patent by Defendant has been and continues to be willful.  Defendant has had knowledge that the Accused Products and Services are covered by the '768 patent.  On information and belief, Defendant, with assistance from inventor Singhal, copied the '768 patent despite knowing that the Accused Products and Services are covered

by the '768 patent.  Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant.  Despite this risk, Defendant has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights.  Thus, Defendant's infringing actions have been and continue to be consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

332.     Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct has caused and will continue to cause Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using selling, offering to sell, and/or importing Plaintiffs' patented inventions.  On information and belief, Defendant will continue to infringe the '768 patent unless permanently enjoined by the Court.

**COUNT XIII**
**INFRINGEMENT OF THE '270 PATENT**

333.     The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

334.     Defendant has directly infringed, and continues to directly infringe, at least claim 1 of the '270 patent by making, using, offering for sale, selling, and/or importing the Accused Products and Services into the United States.

335.     The use of the Accused Products and Services meets every limitation of at least claim 1 of the '270 patent.  Accordingly, Defendant's use of the Accused Products and Services directly infringes the '270 patent in violation of 35 U.S.C. § 271(a).

336.     Claim 1 of the '270 patent recites:

1. A method for culturing single cells, comprising:

introducing a population of cells via a single introduction port into a microfluidic device comprising a 1,600 to 20,000 of microfluidic chambers, wherein each microfluidic chamber comprises an inlet, the single introduction port is in fluid

communication with a flow channel that is in fluid communication with the inlets of the microfluidic chambers,

wherein single cells of the population are retained in different microfluidic chambers, and wherein the cells are transported via the introduction port and flow channel into the different microfluidic chambers,

providing a cell culture medium to the plurality of microfluidic chambers via the flow channel and the inlets of the microfluidic chambers,

exchanging the cell culture medium in the microfluidic chambers via the flow channel and the inlets of the microfluidic chambers, to create a plurality of individual clonal cell populations, wherein the individual clonal cell populations are retained in the same microfluidic chamber as their respective parental cell, thereby culturing the single cells.

337.    On information and belief, the use of the Accused Products and Services includes culturing single cells.  (*See e.g.,* ¶¶ 36-59.)

338.    On information and belief, the use of the  Accused Products and Services includes introducing a population of cells via a single introduction port into a microfluidic device comprising 1,600 to 20,000 microfluidic chambers, wherein each microfluidic chamber comprises an inlet, the single introduction port is in fluid communication with a flow channel that is in fluid communication with the inlets of the microfluidic chambers, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

339.    On information and belief, the use of the Accused Products and Services includes single cells of the population retained in different microfluidic chambers, and wherein the cells are transported via the introduction port and flow channel into the different microfluidic chambers, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

340.    On information and belief, the use of the Accused Products and Services includes providing a cell culture medium to the plurality of microfluidic chambers via the flow channel and the inlets of the microfluidic chambers, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

341.    On information and belief, the use of the Accused Products and Services includes exchanging the cell culture medium in the microfluidic chambers via the flow channel and the inlets of the microfluidic chambers, to create a plurality of individual clonal cell populations, wherein the

1   individual clonal cell populations are retained in the same microfluidic chamber as their respective

2   parental cell, thereby culturing the single cells, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

3       342.    Defendant also has indirectly infringed and continues to indirectly infringe the claims

4   of the '270 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to

5   infringement pursuant to 35 U.S.C. § 271(c).

6       343.    On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically

7   intended to induce infringement of the '270 patent by its customers and users of the Accused Products

8   and Services and had knowledge that its acts would cause infringement or was willfully blind to the

9   possibility that its acts would cause infringement.

10      344.    Defendant knew of the '270 patent at least as of its date of its issuance by virtue of

11  inventor Singhal.  Defendant also knew of the '270 patent since no later than the original Complaint

12  filed on August 25, 2020  (No. 20-cv-01116, D.I. 1 (D. Del. Aug. 25, 2020).  On information and

13  belief, Defendant's customers directly infringe the '270 patent.

14      345.    On information and belief, Defendant specifically intends for customers to infringe the

15  '270 patent.  Defendant encourages infringement by customers at least by offering to sell and selling

16  the Accused Products and Services and providing instructions on how to use the Accused Products

17  and Services, which directly infringes the '270 patent.

18      346.    On information and belief, despite Defendant's knowledge of the '270 patent and

19  knowledge that its customers will necessarily infringe the '270 patent when the Accused Products and

20  Services are used as instructed, Defendant continues to encourage infringement.

21      347.    Defendant also contributes to infringement of the '270 patent by its customers in

22  violation of 35 U.S.C. § 271(c).  On information and belief, Defendant offers to sell and sells the

23  Accused Products and Services within the United States knowing that it constitutes a material part of

24  the claimed inventions, knowing that the Accused Products and Services are especially made or

especially adapted for use in infringing the '270 patent, and knowing that the Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

348.    Defendant has committed and continues to commit all the above acts of infringement without license or authorization.

349.    Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by the original Complaint filed on August 25, 2020 (No. 20-cv-01116, D.I. 1 (D. Del. Aug. 25, 2020).

350.    Defendant has knowledge of the '270 patent and the application from which it issued, including the published application with substantially identical claims.

351.    As a result of Defendant's infringement of the '270 patent, Plaintiffs have suffered damages and will continue to suffer damages.

352.    On information and belief, the infringement of the '270 Patent by Defendant is willful. Defendant has had knowledge that the use of the Accused Products and Services are covered by the '270 patent.  On information and belief, Defendant, with assistance from inventor Singhal, copied the '270 patent despite knowing that the Accused Products and Services are covered by the '270 patent. Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant.  Despite this risk, Defendant has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights.  Thus, Defendant's infringing actions have been and continue to be consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

353.    Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct has caused and will continue to cause Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using

selling, offering to sell, and/or importing Plaintiffs' patented inventions.  On information and belief, Defendant will continue to infringe the '270 patent unless permanently enjoined by the Court.

**COUNT XIV**
**INFRINGEMENT OF THE '737 PATENT**

354.    The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

355.    Defendant has directly infringed, and continues to directly infringe, at least claim 1 of the '737 patent by making, using, offering for sale, selling, and/or importing the Accused Products and Services into the United States.

356.    The use of the Accused Products and Services meets every limitation of at least claim 1 and Defendant directly infringes at least claim 1 when using the Accused Products and Services in violation of 35 U.S.C. § 271(a).

357.    Claim 1 of the '737 patent recites:

> 1. A method of assaying for a binding interaction between a secreted monoclonal antibody produced by a single antibody producing cell (APC) and an antigen, the method comprising:
>
> retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber;
>
> incubating the single APC within the chamber to produce a secreted monoclonal antibody;
>
> exposing the secreted monoclonal antibody to a first removeable capture substrate, wherein the first removeable capture substrate is in fluid communication with the secreted monoclonal antibody and wherein the first removeable capture substrate is capable of binding the secreted monoclonal antibody,
>
> incubating the secreted monoclonal antibody with the removeable capture substrate to produce a bound antibody;
>
> bringing a first fluid volume comprising the antigen in fluid communication with the bound antibody;
>
> measuring a binding interaction between the bound antibody and the antigen; and
>
> lysing the single APC and capturing the nucleic acids of the single APC on the removeable capture substrate.

358.    On information and belief, the use of the Accused Products and Services includes assaying for a binding interaction between a secreted monoclonal antibody produced by a single antibody producing cell (APC) and an antigen.  (*See e.g.,* ¶¶ 36-59.)

359.    On information and belief, the use of the Accused Products and Services includes retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

360.    On information and belief, the use of the Accused Products and Services includes incubating the single APC within the chamber to produce a secreted monoclonal antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

361.    On information and belief, the use of the Accused Products and Services includes exposing the secreted monoclonal antibody to a first removeable capture substrate, wherein the first removeable capture substrate is in fluid communication with the secreted monoclonal antibody and wherein the first removeable capture substrate is capable of binding the secreted monoclonal antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

362.    On information and belief, the use of the Accused Products and Services includes incubating the secreted monoclonal antibody with the removeable capture substrate to produce a bound antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

363.    On information and belief, the use of the Accused Products and Services includes bringing a first fluid volume comprising the antigen in fluid communication with the bound antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

364.    On information and belief, the use of the Accused Products and Services includes measuring a binding interaction between the bound antibody and the antigen, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

365.    On information and belief, the use of the Accused Products and Services includes lysing the single APC and captures the nucleic acids of the single APC on the removeable capture substrate, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

366.    Defendant also has indirectly infringed and continues to indirectly infringe the claims of the '737 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

367.    On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intended to induce infringement of the '737 patent by its customers and users of the Accused Products and Services and had knowledge that its acts would cause infringement or was willfully blind to the possibility that its acts would cause infringement.

368.    Defendant knew of the '737 patent at least as of its date of its issuance by virtue of inventor Singhal.  Defendant also knew of the '737 patent since no later than the original Complaint filed on August 25, 2020  (No. 20-cv-01116, D.I. 1 (D. Del. Aug. 25, 2020).  On information and belief, Defendant's customers directly infringe the '737 patent.

369.    On information and belief, Defendant specifically intends for its customers to infringe the '737 patent.  Defendant encourages infringement by its customers at least by offering to sell and selling the Accused Products and Services and providing instructions to users on how to use the Accused Products and Services, which directly infringes the '737  patent.

370.    On information and belief, despite Defendant's knowledge of the '737 patent and knowledge that its customers will necessarily infringe the '737 patent when the Accused Products and Services are used as instructed, Defendant continues to encourage infringement.

371.    Defendant also contributes to infringement of the '737 patent by its customers in violation of 35 U.S.C. § 271(c).  On information and belief, Defendant offers to sell and sells the Accused Products and Services within the United States knowing that it constitutes a material part of

the claimed inventions, knowing that the Accused Products and Services are especially made or especially adapted for use in infringing the '737 patent, and knowing that the Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

372.    Defendant has committed and continues to commit all the above acts of infringement without license or authorization.

373.    Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by, *inter alia*, AbCellera's letters and the original Complaint filed on August 25, 2020 (No. 20-cv-01116, D.I. 1 (D. Del. Aug. 25, 2020).

374.    Defendant has had knowledge of the '737 patent and the application from which it issued, including the published application with substantially identical claims.

375.    As a result of Defendant's infringement of the '737 patent, Plaintiffs have suffered damages and will continue to suffer damages.

376.    On information and belief, the infringement of the '737 patent by Defendant has been and continues to be willful. Defendant has had knowledge that the Accused Products and Services are covered by the '737 patent. On information and belief, Defendant, with assistance from inventor Singhal, copied the '737 patent despite knowing that the Accused Products and Services are covered by the '737 patent. Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant. Despite this risk, Defendant has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights. Thus, Defendant's infringing actions have been and continue to be consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

377.    Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct has caused and will continue to cause Plaintiffs to suffer

irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using, selling, offering to sell, and/or importing Plaintiffs' patented inventions.  On information and belief, Defendant will continue to infringe the '737 patent unless permanently enjoined by the Court.

**COUNT XV**
**INFRINGEMENT  OF THE '933 PATENT**

378.    The allegations in the preceding paragraphs are incorporated by reference as if fully set forth herein.

379.    Defendant has directly infringed, and continues to directly infringe, at least claim 1 of the '933 patent by making, using, offering for sale, selling, and/or importing the Accused Products and Services into the United States.

380.    The use of the Accused Products and Services meets every limitation of at least claim 1 and Defendant directly infringes at least claim 1 when using the Accused Products and Services in violation of 35 U.S.C. § 271(a).

381.    Claim 1 of the '933 patent recites:

> 1. A method of assaying for a binding interaction between a secreted monoclonal antibody produced by a single antibody producing cell (APC) and an antigen, the method comprising:
>
> retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber;
>
> incubating the single APC within the chamber to produce a secreted monoclonal antibody;
>
> exposing the secreted monoclonal antibody to a first removeable capture substrate bound to an antigen, wherein the antigen is capable of capturing the secreted monoclonal antibody,
>
> incubating the secreted monoclonal antibody with the first removeable capture substrate to produce a bound antibody; and
>
> measuring a binding interaction between the bound antibody and the antigen.

382.    On information and belief, the use of the Accused Products and Services includes assaying for a binding interaction between a secreted monoclonal antibody produced by a single antibody producing cell (APC) and an antigen.  (*See e.g.,* ¶¶ 36-59.)

383.    On information and belief, the use of the Accused Products and Services includes retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

384.    On information and belief, the use of the Accused Products and Services includes incubating the single APC within the chamber to produce a secreted monoclonal antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

385.    On information and belief, the use of the Accused Products and Services includes exposing the secreted monoclonal antibody to a first removeable capture substrate bound to an antigen, wherein the antigen is capable of capturing the secreted monoclonal antibody, or an equivalent thereof.  (*See e.g.,* ¶¶ 36-59.)

386.    On information and belief, the use of the Accused Products and Services includes incubating the secreted monoclonal antibody with the first removeable capture substrate to produce a bound antibody, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

387.    On information and belief, the use of the Accused Products and Services includes measuring a binding interaction between the bound antibody and the antigen, or an equivalent thereof. (*See e.g.,* ¶¶ 36-59.)

388.    Defendant also has indirectly infringed and continues to indirectly infringe the claims of the '933 patent by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or contributing to infringement pursuant to 35 U.S.C. § 271(c).

389.    On information and belief, in violation of 35 U.S.C. § 271(b), Defendant specifically intended to induce infringement of the '933 patent by its customers and users of the Accused Products and Services and had knowledge that its acts would cause infringement or was willfully blind to the possibility that its acts would cause infringement.

390.    Defendant knew of the '933 patent at least as of its date of its issuance by virtue of inventor Singhal.  Defendant also knew of the '933 patent since no later than the original Complaint filed on August 25, 2020 (No. 20-cv-01116, D.I. 1 (D. Del. Aug. 25, 2020).  On information and belief, Defendant's customers directly infringe the '933 patent.

391.    On information and belief, Defendant specifically intends for its customers to infringe the '933 patent.  Defendant encourages infringement by its customers at least by offering to sell and selling the Accused Products and Services and providing instructions to users on how to use the Accused Products and Services, which directly infringes the '933 patent.

392.    On information and belief, despite Defendant's knowledge of the '933 patent and knowledge that its customers will necessarily infringe the '933 patent when the Accused Products and Services are used as instructed, Defendant continues to encourage infringement.

393.    Defendant also contributes to infringement of the '933 patent by its customers in violation of 35 U.S.C. § 271(c).  On information and belief, Defendant offers to sell and sells the Accused Products and Services within the United States knowing that it constitutes a material part of the claimed inventions, knowing that the Accused Products and Services are especially made or especially adapted for use in infringing the '933 patent, and knowing that the Accused Products and Services are not a staple article or commodity of commerce suitable for substantial non-infringing use.

394.    Defendant has committed and continues to commit all the above acts of infringement without license or authorization.

395.    Plaintiffs have complied with the requirements of 35 U.S.C. § 287 by, among other things, giving actual notice to Defendant by, *inter alia*, AbCellera's letters and the original Complaint filed on August 25, 2020 (No. 20-cv-01116, D.I. 1 (D. Del. Aug. 25, 2020).

396.    Defendant has had knowledge of the '933 patent and the application from which it issued, including the published application with substantially identical claims.

397.   As a result of Defendant's infringement of the '933 patent, Plaintiffs have suffered damages and will continue to suffer damages.

398.   On information and belief, the infringement of the '933 patent by Defendant has been and continues to be willful.  Defendant has had knowledge that the Accused Products and Services are covered by the '933 patent.  On information and belief, Defendant, with assistance from inventor Singhal, copied the '933 patent despite knowing that the Accused Products and Services are covered by the '933 patent.  Defendant has thus sold the Accused Products and Services knowing of the risk of infringement and/or in view of a risk of infringement that was sufficiently obvious that it should have been known to Defendant.  Despite this risk, Defendant has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Plaintiffs' patent rights.  Thus, Defendant's infringing actions have been and continue to be consciously wrongful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284.

399.   Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement. Defendant's wrongful conduct has caused and will continue to cause Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using, selling, offering to sell, and/or importing Plaintiffs' patented inventions.  On information and belief, Defendant will continue to infringe the '933 patent unless permanently enjoined by the Court.

## **JURY DEMAND**

400.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs respectfully demand a trial by jury of all issues so triable.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs request that judgment be entered in favor of Plaintiffs and against Defendant as follows:

a.   A judgment that the Patents-in-Suit are directly and indirectly infringed by Defendant's manufacture, offers to sell, sales, or uses of the Accused Products and

Services within the United States, or importation into the United States, including without limitation, that practice one more of the inventions claimed in the Patents-in-Suit;

b.      An order permanently enjoining Defendant, its affiliates and subsidiaries, and each of its officers, agents, servants, and employees and those acting in privity or concert with them, from making, using, offering to sell, selling, or importing products or processes claimed in any of the claims of the Patents-in-Suit, and from causing or encouraging others to use, sell, offer for sale, or import products or processes that infringe any claim of the Patents-in-Suit, until after the expiration dates of the Patents-in-Suit, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or may become entitled;

c.      An order awarding damages under 35 U.S.C. § 284 in an amount sufficient to compensate Plaintiffs for their damages arising from infringement by Defendant, including, but not limited to, lost profits and/or a reasonable royalty (including under 35 U.S.C. § 154(d)), together with pre-judgment and post-judgment interest, and costs;

d.      An order awarding treble damages for willful infringement by Defendant, pursuant to 35 U.S.C. § 284;

e.      An accounting and/or supplemental damages for all damages occurring after any discovery cutoff and through the Court's decision regarding the imposition of a permanent injunction;

f.      A judgment declaring that this case is exceptional and awarding Plaintiffs their reasonable costs and attorneys' fees pursuant to 35 U.S.C. § 285; and

g.      Such other relief as this Court or a jury may deem proper and just under the circumstances.

DATED: October 20, 2023                        QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                               By /s/ Eric C. Stops

                                               QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                               Brian C. Cannon (Cal. Bar No. 193071)
                                               briancannon@quinnemanuel.com
                                               555 Twin Dolphin Drive, 5th Floor
                                               Redwood Shores, California 94065-2129
                                               (650) 801-5000

                                               F. Dominic Cerrito (admitted *pro hac vice*)
                                               nickcerrito@quinnemanuel.com
                                               Eric C. Stops (admitted *pro hac vice*)
                                               ericstops@quinnemanuel.com
                                               Angus Chen, Ph.D. (admitted *pro hac vice*)
                                               anguschen@quinnemanuel.com
                                               Brian P. Biddinger (Cal. Bar No. 224604)
                                               brianbiddinger@quinnemanuel.com
                                               Catherine T. Mattes (admitted *pro hac vice*)
                                               catherinemattes@quinnemanuel.com
                                               Krista M. Rycroft (admitted *pro hac vice*)
                                               kristarycroft@quinnemanuel.com
                                               Brian J. Forsatz, Ph.D. (admitted *pro hac vice*)
                                               brianforsatz@quinnemanuel.com
                                               51 Madison Avenue, 22nd Floor
                                               New York, NY 10010
                                               (212) 849-7000

                                               Nathan Sun (Cal. Bar No. 284782)
                                               nathansun@quinnemanuel.com
                                               50 California Street, 22nd Floor
                                               San Francisco, CA 94111
                                               (415) 875-6600

                                               *Attorneys for Plaintiffs AbCellera Biologics Inc. and The University of British Columbia*

1

2                                **CERTIFICATE OF SERVICE**

3          I hereby certify that on October 20, 2023 I caused a true and correct copy of the foregoing

4   to be filed in this Court's CM/ECF system, which will send notification of such filing to all parties

5   who have appeared in this matter.

6

7   DATED:  October 20, 2023

8                                          By  */s/ Eric C. Stops*
                                               Eric C. Stops
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28