1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    ABCELLERA BIOLOGICS INC, et al.,        Case No. 20-cv-08624-JST
                                             (Consolidated)
8                     Plaintiffs,

9           v.                               **ORDER GRANTING-IN-PART AND
                                             DENYING-IN-PART PLAINTIFFS'
10   BRUKER CELLULAR ANALYSIS. F/K/A          MOTIONS TO DISMISS AND STRIKE
     BERKELEY LIGHTS, INC.,                   CERTAIN AFFIRMATIVE DEFENSES
11                                            AND COUNTERCLAIMS FROM
                     Defendant.               DEFENDANT'S ANSWER AND
12                                            SECOND AMENDED
                                             COUNTERCLAIMS**
13
                                             Re: ECF No. 115
14          Pending before the Court are three motions by Plaintiffs AbCellera Biologics, Inc.

15   ("AbCellera") and the University of British Columbia's ("UBC") (collectively, "Plaintiffs") to

16   dismiss and strike certain affirmative defenses and counterclaims from Defendant Bruker Cellular

17   Analysis, formerly known as Berkeley Lights, Inc.'s ("Defendant" or "Berkeley Lights") Answer

18   and Second Amended Counterclaims in this case, Case No. 3:20-CV-08626 (the "8626 Case"),

19   and Case No. 3:20-CV-08627 (the "8627 Case"). As the three cases are now consolidated, the

20   Court considers the three motions to dismiss together. The Court will grant Plaintiffs' motions to

21   dismiss in part and deny them in part.

22   **I.      BACKGROUND**

23          AbCellera is a biotechnology company that discovers antibodies for the prevention and

24   treatment of disease. ECF No. 164 ¶ 18. Together with UBC, AbCellera patented the use of

25   microfluidic devices for high-throughput single-cell secretion assays that can be applied to

26   antibody discovery and cell clone selection. *Id.* ¶ 19. In these three consolidated cases, Plaintiffs

27   assert that certain of Defendant's optofluidic systems and services infringe fifteen of their patents

28   (the "Asserted Patents"). These include United States Patent Nos. 10,107,812 ("the '812 patent"),

U.S. Patent No. 10,274,494 ("the '494 patent"), 10,466,241 ("the '241 patent"), 10,578,618 ("the '618 patent"), 10,697,962 ("the '962 patent"), 10,775,376 ("the '376 patent"), 10,775,377 ("the '377 patent"), 10,775,378 ("the '378 patent"), 10,718,768 ("the '768 patent"), 10,746,737 ("the '737 patent"), and 10,753,933 ("the '933 patent") (collectively, the "'812 patent family"), which all relate to methods of assaying cellular binding interactions.  ECF No. 164 ¶¶ 20-24, 28-31, 33-35.  Each of the patents in the '812 patent family are direct or indirect continuations of the '812 patent, and each is terminally disclaimed over the other patents in the family. ECF No. 106 ¶ 160.  Additionally, Plaintiffs have also asserted United States Patent Nos. 10,087,408 ("the '408 patent"), 10,421,936 ("the '936 patent"), 10,704,018 ("the '018 patent"), and 10,738,270 ("the '270 patent") (collectively, the "'408 patent family"), which are directed to a system and method for microfluidic cell culture.  ECF No. 164 ¶¶ 25-27, 32.  As relevant here, AbCellera's CEO, Carl L.G. Hansen, is a named inventor on all of the Asserted Patents, while Daniel J. Da Costa is a named inventor of all the patents in the '812 patent family.  *Id.* ¶¶ 20-35.  UBC owns the Asserted Patents, and AbCellera is its exclusive licensee.  *Id.*

In addition to the Asserted Patents, Plaintiffs also hold United States Patent Nos. 9,188,593 (the "'593 patent"), 9,234,240 (the "'240 patent"), 9,290,811 (the "'811 patent"), 10,196,689 (the "'689 patent"), 9,909,180 (the "'180 patent"), and 10,058,839 (the "'839 patent") (collectively, the "Non-Asserted Patents").  Beginning in late 2019, AbCellera contacted Berkeley Lights and at least one of Berkeley Lights' customers, "inviting" the recipients to review AbCellera's "patent portfolio," which included the six Non-Asserted Patents as well as six of the Asserted Patents.  ECF No. 106 ¶¶ 17-29.  In this correspondence, AbCellera stated that its patent portfolio "cover[ed] single cell discovery that may be embodied in the Berkeley Lights Beacon™ Instrument" and that AbCellera "is willing to discuss potential licensing options."  ECF No. 106-8.

## II.    PROCEDURAL HISTORY

This is a consolidated action incorporating three patent infringement cases brought by Plaintiffs in the United States District Court for the District of Delaware.  As relevant here, in the summer of 2020, AbCellera filed three patent litigation suits in the District of Delaware: this case, the 8626 Case, and the 8627 Case.  Defendant answered the complaints, filed counterclaims

United States District Court
Northern District of California

United States District Court
Northern District of California

1    alleging inequitable conduct, and moved to transfer all three cases to this District.  ECF Nos. 10,

2    12.  On December 7, 2020, the District of Delaware transferred all three cases to this District.

3    ECF No. 26.  On December 23, 2020, Plaintiffs filed a motion to relate the three cases, ECF No.

4    38, which the Court granted on February 8, 2021.  ECF No. 51.  On March 11, 2021, the Court

5    consolidated the three cases, with this case designated as the lead case.  ECF No. 70.

6         Before the cases were related, Plaintiffs filed three "substantively identical" motions to

7    dismiss and to strike certain counterclaims and affirmative defenses.  *E.g.*, ECF No. 40 at 1 (filed

8    on Dec. 28, 2020) (noting "substantively identical versions of this motion").  On February 22,

9    2021, Defendant filed a motion to amend its answer and counterclaims, seeking leave to amend its

10   inequitable conduct counterclaim and assert two new unfair competition counterclaims under

11   Lanham Act § 43(a) and California Business and Professions Code §§ 17200, *et seq*.  ECF No. 53.

12   On July 1, 2021, the Court granted Defendant's motion to amend and denied as moot Plaintiff's

13   motions to dismiss and to strike certain counterclaims and affirmative defenses.  ECF No. 98 (the

14   "July 1, 2021 Order").  In its order, the Court cautioned that "Defendant may not add new

15   affirmative defenses, counterclaims, or parties without a stipulation or leave of the Court" and that

16   "deficient counterclaims and affirmative defenses will be dismissed with prejudice if, on review of

17   the merits, the Court finds that Defendant's second amended pleadings have failed to cure the

18   deficiencies identified in this Order and in Plaintiff's instant motion to dismiss[]."  *Id.* at 12.

19        Consistent with the Court's order, Defendant filed its Answer and Second Amended

20   Counterclaims on July 22, 2021.  ECF No. 106; *see also* 8626 Case ECF No. 73, 8627 Case ECF

21   No. 75.  In this case, Defendant asserted two new unfair competition counterclaims under Lanham

22   Act § 43(a) and California Business and Professions Code §§ 17200, *et seq*.  In all three cases,

23   Defendant also amended its inequitable conduct counterclaims as to the '812 patent family, on

24   grounds that during prosecution of the '812 patent family, the inventors and/or patent prosecution

25   counsel intentionally withheld from the PTO (1) U.S. Published Patent Application 2004/0229349

26   ("Daridon"), (2) U.S. Published Patent Application 2011/0281764 ("Love") and associated patents

27   and articles, (3) U.S. Published Patent Application 2004/0067482 ("Yasuda"), (4) U.S. Published

28   Patent Application 2007/0074972 ("Nassef"), (5) Gómez-Sjöberg et al., "Versatile, fully

United States District Court
Northern District of California

automated, microfluidic cell culture system," Anal. Chem. 79, 8557-8563 (2007) ("Gómez-Sjöberg"), and (6) Lee et al., "Nanoliter scale microbioreactor array for quantitative cell biology," Biotechnol. Bioeng. 94, 5-14 (2005) ("Lee"). *See* ECF No. 106; *see also* 8626 Case ECF No. 73, 8627 Case ECF No. 75.  Additionally, in the 8626 Case and 8627 Case, Defendant alleged inequitable conduct as to the '408 patent family, on grounds that during prosecution of the '812 patent family, the inventors and/or patent prosecution counsel (1) intentionally withheld from the PTO PCT Application WO 2005/069980 ("Balagadde"), (2) made intentional misrepresentations regarding Daridon, and (3) intentionally withheld from the PTO the '812 patent family and Hansen, C., "Microfluidic Measurement of Antibody-Antigen Binding Kinetics from Low-Abundance Samples from Single Cells," Anal. Chem. 82, 8671-8679 (2010) ("Hansen 2010").

Plaintiffs then filed motions to dismiss Defendant's counter-claims in all three cases.  ECF No. 115, *see also* 8626 Case ECF No. 74, 8627 Case ECF No. 76.  Plaintiff's motions in the 8626 Case and 8627 Case are substantively identical.  As these cases have been consolidated, the Court will rule as to all three motions in this order.[1]

### III.     LEGAL STANDARD

#### A.     Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[1] Plaintiffs subsequently filed an Amended Complaint in this lead case, consolidating all three complaints into one.  Because "an amended complaint does not moot the counterclaims filed in the answer to the original complaint," *Williams & Cochrane, LLP v. Rosette*, No. 17-CV-01436-GPC-MSB, 2020 WL 1939065, at *3 (S.D. Cal. Apr. 22, 2020), Defendant's Second Amended Counterclaims in each case are still operative and thus Plaintiffs' respective motions to dismiss are still ripe.

*Id*. While this standard is not a probability requirement, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks omitted). In determining whether a plaintiff has met this plausibility standard, the Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The Court applies these same standards on a motion to dismiss a defendant's counter-claims, construing the pleadings in the light most favorable to the pleading party. *E.g., Tori Belle Cosms., LLC v. Meek*, No. C-21-0066-RSL, 2023 WL 1991887, at *1 (W.D. Wash. Feb. 14, 2023); *Conte v. Jakks Pac., Inc.*, No. 1:12-CV-00006-LJO, 2012 WL 6115632, at *5 (E.D. Cal. Dec. 10, 2012).

Allegations of inequitable conduct sound in fraud, and thus a party pleading inequitable conduct must plead the "circumstances constituting" the inequitable conduct with particularity under Federal Rule of Civil Procedure 9(b). *Exergen Corp. v. Wal-Mart Stores*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). "[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.*; *see also Breville Pty Ltd. v. Storebound LLC*, No. 12-CV-01783-JST, 2013 WL 1758742, at *3 (N.D. Cal. Apr. 24, 2013). In contrast, "'knowledge' and 'intent' may be averred generally." *Exergen*, 575 F.3d at 1328. However, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29.

### B.     Motion to Strike

Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). The function of a motion to strike pursuant to Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with

1   those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir.

2   2010) (citation omitted).  Motions to strike "are generally disfavored because they are often used

3   as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales*

4   *v. Citibank, 133* F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).  In most cases, the Court should not

5   grant a motion to strike unless "the matter to be stricken clearly could have no possible bearing on

6   the subject of the litigation."  *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057

7   (N.D. Cal. April 19, 2004).

8   **IV.   ANALYSIS**

9      **A.   Unfair Competition Counterclaims (Counterclaims IV & V)**

10      Plaintiffs move to dismiss Defendant's unfair competition counterclaims under Lanham

11   Act § 43(a) and California Business and Professions Code §§ 17200, *et seq*., on the grounds that

12   they are barred by the *Noerr-Pennington* doctrine.  ECF No. 115 at 7-11.  Plaintiffs additionally

13   move to dismiss Defendant's state law unfair competition counterclaim as preempted by federal

14   law, and insufficiently pled under all three prongs of Section 17200.  *Id.* at 11-14.

15      Plaintiffs first argue that Defendant's unfair competition counterclaims, which are

16   predicated upon Plaintiffs' pre-suit correspondence with Defendant and Defendant's customers,

17   are barred under the *Noerr-Pennington* doctrine.[2]

18      The *Noerr-Pennington* doctrine shields entities from liability for actions that "use the

19   channels and procedures of state and federal agencies and courts to advocate their causes and

20   points of view respecting resolution of their business and economic interests vis-à-vis their

21   competitors."  *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972); *see also*

22   *Breville*, 2013 WL 1758742, at *7 ("*Noerr–Pennington* immunity applies when an entity seeks

23   redress to the courts by pursuing litigation.").  The doctrine specifically "exempts bringing a

24   lawsuit . . . from antitrust liability."  *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1183 (9th

25   Cir. 2005) (citing *Cal. Motor Transp. Co.*, 404 U.S. at 510).  This immunity applies to common

26   law and statutory claims under state and federal law, including unfair competition claims under the

27   _____

28   [2] *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961); *Mine Workers v. Pennington,* 381 U.S. 657 (1965).

United States District Court
Northern District of California

6

1   Lanham Act and California's Unfair Competition Law.  *See UCP Int'l Co. Ltd. v. Balsam Brands*

2   *Inc.*, 420 F. Supp. 3d 966, 984 (N.D. Cal. 2019) (dismissing claims under UCL and Lanham Act

3   as being barred by the *Noerr-Pennington* doctrine); *Santana Prods., Inc. v. Bobrick Washroom*

4   *Equip., Inc.*, 249 F. Supp. 2d 463, 493 (M.D. Pa. 2003), *aff'd in relevant part*, 401 F.3d 123 (3d

5   Cir. 2005) (applying *Noerr-Pennington* doctrine to Lanham Act § 43(a) claims).  "Conduct

6   incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the *Noerr–*

7   *Pennington* doctrine."  *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th

8   Cir. 2008); *see also Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1377

9   (Fed. Cir. 2004) (Noerr-Pennington immunity applies to pre-suit communications alleging patent

10  infringement).

11          To avoid the application of *Noerr-Pennington* immunity, a claimant must demonstrate that

12  the lawsuit in question is a "sham" litigation.  The Supreme Court has set forth the following two-

13  part definition of whether a litigation is a "sham":  (1) the lawsuit must be objectively meritless

14  such that "no reasonable litigant could realistically expect success on the merits" and (2) it must be

15  found that "the baseless lawsuit conceals 'an attempt to interfere directly with the business

16  relationships of a competitor.'"  *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,

17  508 U.S. 49, 60-61 (1993).  "Where a claim involves the right to petition governmental bodies

18  under *Noerr–Pennington* . . . we apply a heightened pleading standard."  *Oregon Natural Res.*

19  *Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991).  "[I]n order to state a claim for relief . . . a

20  complaint must include allegations of the specific activities" defendant has engaged in that deprive

21  it of *Noerr-Pennington*'s protection.  *Franchise Realty Interstate Corp. v. San Francisco Local*

22  *Joint Executive Bd. of Culinary Workers*, 542 F.2d 1076, 1082 (9th Cir. 1976).

23          Here, Defendant alleges that AbCellera engaged in unfair competition under state and

24  federal law through its pre-suit correspondence with Defendant and its customers.  Specifically,

25  Defendant alleges that AbCellera sent letters asserting its "patent portfolio," which included the

26  Non-Asserted Patents, for which AbCellera knew (or should have known) it had no colorable

27  claim of infringement as to any of Defendant's products or services.  Defendant further alleges

28  that AbCellera made these false statements in an attempt to interfere with Defendant's business

United States District Court
Northern District of California

7

1    relationships.  *See, e.g.*, ECF No. 106 ¶¶ 241, 243, 253, 257.  Thus, the question before the Court

2    is whether AbCellera's act of sending pre-suit correspondence drawing attention to its patent

3    portfolio, which included patents for which no colorable claim of infringement could exist (1) was

4    sufficient to render the lawsuit objectively baseless such that no reasonable litigant could

5    realistically expect success on the merits and (2) concealed an attempt to interfere directly with

6    Defendant's business relationships.

7                    **1.      Objectively Baseless**

8            The objective part of the definition of "sham" requires the Court to determine whether the

9    assertion of some baseless claims together with some that are potentially meritorious renders a

10   lawsuit based on those claims "objectively baseless."  The Court finds that it does not.

11           This is not the first time the Court has confronted this question.  In *Breville*, this Court held

12   that, in a patent infringement case involving two asserted patents, the fact that one of the two

13   infringement claims was baseless did not render the lawsuit objectively baseless such that the

14   sham litigation exception to *Noerr-Pennington* applied.  2013 WL 1758742, at *8.  As the Court

15   noted there, to fit within the sham litigation exception, "the *lawsuit* must be objectively baseless."

16   *Id.* (quoting *Pro. Real Est. Invs. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993))

17   (emphasis in *Breville*).  A single baseless claim does not sink an entire lawsuit when the remaining

18   claims have some merit.  As in *Breville*, Defendant's allegations here fall short of the requirement

19   in *Professional Real Estate Investors* that the lawsuit, and not merely some of the claims asserted

20   in the complaint—or, as here, the pre-suit correspondence—be objectively baseless.

21           *Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, is instructive.  404 F. Supp. 2d

22   1214 (E.D. Cal. 2005).  In that case, the court held that the plaintiff's filing of a lawsuit that

23   included a baseless copyright infringement claim was not objectively baseless as a whole.  *Id.* at

24   1221.  Nonetheless, the *Meridien* court declined to extend *Noerr-Pennington* protection to the

25   plaintiff's communications to Defendant's customers because those communications related

26   specifically to the allegedly baseless copyright infringement claim and threatened those customers

27   with suit.  *Id.* at 1219-20.  Here, in contrast, AbCellera's correspondence with Defendant's

28   customers was substantively identical to its correspondence with Defendant and included

reference to patents for which it ultimately asserted colorable claims of infringement.  And, instead of threatening Defendant's customers with infringement suits, AbCellera merely suggested that some of its patents might be practiced by Defendant's products and requested to open licensing discussions.  Accordingly, the Court concludes AbCellera's correspondence with Defendant's customers were more "good faith acts attendant to effective litigation," and not objectively baseless.  *Meridien*, 404 F. Supp. 2d at 1223.

### 2.      Intent to Interfere with Defendant's Business

Turning to the second prong of the sham litigation definition, Defendant must show that AbCellera's pre-suit correspondence constitutes a concealed "attempt to interfere directly with the business relationships of a competitor."  *Pro. Real Est. Invs.*, 508 U.S. at 60–61 (emphasis omitted) (quoting *Noerr*, 365 U.S. at 144).  This prong specifically "focus[es] on whether the baseless suit conceals an attempt to interfere directly with a competitor's business relationships through the use of the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon."  *Pro. Real Est. Invs.*, 508 U.S. at 60-61 (emphasis in original, internal quotations omitted).  "To determine whether the exception applies, [the Court] ask[s]:  'Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?'"  *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 539 (9th Cir.) (internal quotation and citation omitted), *cert. denied*, 143 S. Ct. 212, 214 L. Ed. 2d 83 (2022).

Here, Defendant alleges that AbCellera interfered with its business relationships by pressuring Defendant and its customers to enter into licensing negotiations.  As with its attempt to satisfy the "objectively baseless" prong, Defendant bases this claim on AbCellera's having included references to both patents for which it had a good claim and those it did not.  *See* ECF No. 119 at 11-12.[3]  As with the "objectively baseless" prong, the Court again concludes that

---

[3]         AbCellera next argues that BLI's allegation that three of the patents listed in AbCellera's letters "do not even disclose, mention, or claim (i) a microfluidic system, (ii) single cell antibody discovery, or (iii) clone selection, as AbCellera represented to Berkeley Lights and its customers" does not show that its patents identified in the letters were "so obviously unenforceable that no reasonable litigant could

because at least some of the claims AbCellera asserted in its communications with Defendant's customers were potentially meritorious, the communications expressed a "genuine interest in redressing grievances," *B&G Foods N. Am., Inc.*, 29 F.4th at 539, rather than an improper attempt to interfere directly with a competitor's business relationships.  The letters are therefore subject to *Noerr-Pennington* immunity.[4]

### B.    Inequitable Conduct

Plaintiffs move to dismiss Defendant's inequitable conduct counterclaims and affirmative defenses on the grounds that they are insufficiently pled under Federal Rule of Civil Procedure 9(b) and *Exergen*.  Under *Exergen*, Defendant must allege specific facts "to identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1328.  Defendant must also allege sufficient "underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this *1329 information with a specific intent to deceive the PTO." *Id.*

#### 1.    '812 Patent Family Inequitable Conduct Counterclaims[5]

##### a.    The "Who"

---

expect to assert an infringement claim." *See* Mot. at 9-10 (citing Dkt. 106, ¶ 34). But this allegation does indeed demonstrate that AbCellera's statements were objectively baseless because they misrepresent the scope of certain patents . . . .

In addition, the Second Amended Counterclaims alleged that AbCellera's false and misleading infringement claims in its letters to BLI and its customers were intended to deceive BLI's customers by falsely claiming that a license to AbCellera's patents was required, thereby pressuring BLI or its customers to negotiate an unnecessary license or cease purchasing and using BLI's products. Dkt. 106, ¶ 44. Thus, AbCellera's objectively baseless infringement claims "conceal[ ] 'an attempt to interfere directly with [BLI's] business relationships.'"

*Id.*

[4] Because the Court finds that both of Defendant's unfair competition counterclaims are barred by the *Noerr-Pennington* doctrine, it does not need to reach Plaintiffs' other arguments as to federal preemption or the sufficiency of Defendant's state law unfair competition counterclaim.
[5] For the purposes of the '812 patent family inequitable conduct counterclaims, Defendant's Second Amended Counterclaims in the three cases are substantively identical.  Accordingly, for the purposes of citation, the Court will refer to documents filed on the docket in this case.

United States District Court
Northern District of California

Plaintiffs argue that Defendant has inadequately alleged the "who" of its inequitable conduct counterclaims as to each reference.  An adequately pled inequitable conduct claim must "name the specific individual associated with the filing or prosecution of the application . . . who both knew of the material information and deliberately withheld or misrepresented it." *Exergen*, 575 F.3d at 1329.  Here, Defendant has identified the following individuals in its pleading:

Daridon:  Defendant alleges that Carl Hansen, Michael Rubin, and Thomas Cawley, Jr. knew about Daridon.  ECF No. 106 ¶ 68.  Defendant further alleges that Carl Hansen, Michael Rubin, Carol Francis, and Thomas Cawley, Jr. withheld Daridon from the examiner during prosecution of the '812 patent family.  *Id.* ¶¶ 94–108.  Because Defendant fails to allege that Carol Francis knew about Daridon, the Court finds that Defendant has inadequately alleged the "who" of its inequitable conduct counterclaim as to Carol Francis's failure to disclose Daridon.  As for Dr. Hansen, Mr. Rubin, and Dr. Cawley, the Court finds that these allegations are sufficient to name the specific individuals associated with the filing or prosecution of the application who both knew of the material information and deliberately withheld or misrepresented it.

Love:  Defendant alleges that Carl Hansen, Michael Rubin, Carol Francis, and Thomas Cawley, Jr. knew about Love.  *Id.* ¶¶ 113–114.  Defendant further alleges that Carl Hansen, Michael Rubin, Carol Francis, and Thomas Cawley, Jr withheld Daridon from the examiner during prosecution of the '812 patent family.  *Id.* ¶¶ 113, 159–161.  The Court finds that these allegations are sufficient to name the specific individuals associated with the filing or prosecution of the application who both knew of the material information and deliberately withheld or misrepresented it.

Yasuda:  Defendant alleges Michael Rubin and Thomas Cawley, Jr. knew about Yasuda. *Id.* ¶¶ 165, 173–174.  Defendant further alleges that Michael Rubin and Thomas Cawley, Jr. withheld Yasuda from the examiner during prosecution of the '812 patent family.  *Id.* ¶¶ 176–178. The Court finds that these allegations are sufficient to name the specific individuals associated with the filing or prosecution of the application who both knew of the material information and deliberately withheld or misrepresented it.

Nassef:  Defendant alleges Michael Rubin and Thomas Cawley, Jr. knew about Nassef.  *Id.*

1    ¶¶ 183, 193-195.  Defendant further alleges that Michael Rubin and Thomas Cawley, Jr. withheld

2    Nassef from the examiner during prosecution of the '812 patent family.  *Id.* ¶¶ 197–199.  The

3    Court finds that these allegations are sufficient to name the specific individuals associated with the

4    filing or prosecution of the application who both knew of the material information and deliberately

5    withheld or misrepresented it.

6         Gómez-Sjöberg:  Defendant alleges Carl Hansen, Daniel Da Costa, Michael Rubin, Carol

7    Francis, and Thomas Cawley, Jr. knew about Gómez-Sjöberg.  *Id.* ¶¶ 203, 209–212.  Defendant

8    further alleges that Carl Hansen, Daniel Da Costa, Michael Rubin, Carol Francis, and Thomas

9    Cawley, Jr. withheld Gómez-Sjöberg from the examiner during prosecution of the '812 patent

10   family.  *Id.* ¶¶ 213–217.  The Court finds that these allegations are sufficient to name the specific

11   individuals associated with the filing or prosecution of the application who both knew of the

12   material information and deliberately withheld or misrepresented it.

13        Lee:  Defendant alleges Carl Hansen, Michael Rubin, Carol Francis, and Thomas Cawley,

14   Jr. knew about Lee.  *Id.* ¶¶ 221, 229–232.  Defendant further alleges that Carl Hansen, Michael

15   Rubin, Carol Francis, and Thomas Cawley, Jr. withheld Lee from the examiner during prosecution

16   of the '812 patent family.  *Id.* ¶¶ 234–236.  The Court finds that these allegations are sufficient to

17   name the specific individuals associated with the filing or prosecution of the application who both

18   knew of the material information and deliberately withheld or misrepresented it.

19             **b.**       **The "What" and "Where"**

20        To plead the 'what' and 'where' of inequitable conduct, the claimant must "identify which

21   claims, and which limitations in those claims, the withheld references are relevant to."  *Exergen*,

22   575 F.3d at 1329.  Plaintiffs do not challenge the '812 Patent Family inequitable conduct

23   counterclaim on this ground, and as such, the Court finds that Defendant has adequately pled the

24   "what" and "where" of its inequitable conduct counterclaim.

25             **c.**       **The "Why" and "How"**

26        An inequitable conduct claimant must also plead the "particular claim limitations, or

27   combination of claim limitations, that are supposedly absent from the information of record,"

28   because such allegations are necessary "to explain both 'why' the withheld information is material

United States District Court
Northern District of California

and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329–30.  Plaintiffs argue that Defendant's allegations as to Daridon, Yasuda, Nassef, Gómez-Sjöberg, and Lee are deficient in this regard, and the Defendant has made "identical conclusory pleadings" as to the "why" these references are material and "how" the examiner would have used them in assessing the patentability of the '812 patent family.  ECF No. 115 at 18–19, 22.  Notably, Plaintiffs do not challenge Defendant's allegations as to Love.

The Court finds that Defendant's pleadings are sufficient to identify the particular claim limitation that was absent from the record before the PTO.  Specifically, Defendant alleges that during the prosecution of the '812 patent, "[t]he language 'wherein the volume of the chamber is from 100 pL to 100 nL' was added to the claim in a May 8, 2018 Amendment filed by Applicant's counsel Michael Rubin in order to overcome a rejection for anticipation by U.S. Published Patent Application 2009/0068170 (Weitz)."  ECF No. 106 ¶ 79.  Defendant further alleges that "Mr. Rubin stated that the claims were 'amended herein to recite that the volume of the chamber is from 100 pL to 100 nL' and that 'Weitz fails to disclose or suggest such a feature.'"  *Id.*

Defendant's pleadings are also sufficient to identify "why" the withheld information is material and not cumulative, and "how" the examiner would have used the information to assess the patentability of the '812 patent.  For each reference, Defendant pleads specific facts showing that it discloses "retaining a cell within a chamber having an inlet, and outlet, and a solid wall defining the chamber, wherein the volume of the chamber is from 100 pL to 100 nL" that was represented as absent from the prior art during prosecution of the '812 patent.  *See id.* ¶¶ 74-85 (Daridon), 116-121 (Love), 167-170 (Yasuda), 185-192 (Nassef), 205-208 (Gómez-Sjöberg) and 223-228 (Lee).  While Plaintiffs may dispute whether these references in fact disclose the alleged limitation, at this stage of the proceedings the Court takes these well-pled allegations as true and concludes that Defendants have identified with specificity the "why" and the "how" of its inequitable conduct counterclaims.

Plaintiffs argue that in order to satisfy the "how" requirement, an inequitable conduct claimant must plead "how the examiner would have found a motivation to combine these

references with other art of record, and how the examiner would have found a reasonable expectation of success in view of the disclosure." ECF No. 158 at 9. The Court finds no support for such a high standard at this stage in the proceedings. The cases Plaintiffs rely upon do not stand for this proposition. In *Wisconsin Alumni Rsch. Found. v. Apple Inc*., No. 14-CV-062-WMC, 2014 WL 7217770, at *4 (W.D. Wis. Dec. 17, 2014), the defendant merely alleged generally that the undisclosed reference "discloses the same 'subject matter' as the [patent-in-suit]" and that the reference "in combination with other prior art . . . invalidates the [patent-in-suit]." 2014 WL 7217770, at *4. The court there found such allegations insufficient, as the allegations did not make any attempt to plead "(1) the particular claim limitations, or combination of limitations, that are supposedly absent from the record before the Examiner, and (2) the specific material, noncumulative disclosures in the [reference]." *Id.* Similarly, in *ConAgra Foods Food Ingredients Co. v. Archer-Daniels-Midland Co.*, No. 12-CV-2171-EFM-KGS, 2014 WL 359566, at *5 (D. Kan. Feb. 3, 2014), the Court found that the defendant had sufficiently alleged the "but-for" materiality of two allegedly withheld references but had failed to adequately plead "how" an examiner would have used those references to invalidate the patent-in-suit. Here, in contrast, Defendant's counterclaim sufficiently alleges that each of Daridon, Yasuda, Nassef, Gómez-Sjöberg, and Lee disclose a specific limitation that was represented as absent in the prior art during prosecution of the '812 patent, and that in combination with Weitz, the examiner would have invalidated the '812 patent.

### d. Knowledge of Materiality and Intent

In addition to pleading the circumstances of inequitable conduct with specificity, an inequitable conduct claimant must plead "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material representations, and (2) withheld or misrepresented this information with intent to deceive the PTO." *Exergen*, 575 F.3d at 1328–29. A "reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329, n.5. This stands in contrast to the requirement of *proving* inequitable conduct, which requires that the intent to deceive is the single

1   most reasonable inference that can be drawn from the facts.  At the pleading stage, a claimant

2   "need only plead 'sufficient allegations of underlying facts from which a court may reasonably

3   infer' that specific individuals had intent to deceive."  *Cypress Semiconductor Corp. v. GSI Tech.,*

4   *Inc.*, No. 13-CV-02013-JST, 2014 WL 988915, at *7 (N.D. Cal. Mar. 10, 2014) (quoting *Exergen*,

5   575 F.3d at 1328-29); *see also Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-CV-

6   03424-JCS, 2016 WL 4744165, at *10 (N.D. Cal. Sept. 12, 2016) (at the pleading stage, specific

7   intent to deceive need not be the single most reasonable inference drawn from the evidence).

8   As a preliminary matter, Defendant alleges that intent to deceive can be inferred generally from

9   the fact that Plaintiff's patent prosecution counsel, Bozicevic, Field & Francis, LLP, also

10  concurrently represented Berkeley Lights in patent prosecution matters from March 2015 through

11  October 2017.  *See* ECF No. 106, ¶¶ 61-63.  Defendant argues that these allegations of concurrent

12  representation by Bozicevic, Field & Francis, LLP support an inference that Plaintiff's patent

13  prosecution counsel obtained and misused Defendant's confidential information, with the intent to

14  deceive the PTO, in a "years-long effort to try and obtain claims intended to read on pre-existing

15  BLI technology."  ECF No. 119 at 21.

16          The Court does not find these allegations plausible.  While the Court takes as true the

17  factual allegation that the Bozicevic firm concurrently represented Plaintiffs and Defendant during

18  the years 2015 through 2017, and even assuming the existence of a conflict of interest, Defendant

19  fails to plead that any individual attorney at the Bozicevic firm represented both Plaintiffs and

20  Defendant in patent prosecution, or that any attorney involved in Plaintiffs' patent prosecution

21  actually obtained any confidential information from Defendant.  At least as importantly,

22  Defendant fails "to allege any facts from which a reasonable inference could be drawn that the

23  inventors had a specific intent to mislead the Patent Office."  *Impinj, Inc. v. NXP USA, Inc.*, No.

24  19-CV-03161-YGR, 2022 WL 20508654, at *3 (N.D. Cal. June 24, 2022) (citing *Roche Palo Alto*

25  *LLC v. Ranbaxy Lab'ys Ltd.*, No. CV 06-2003 (FLW), 2008 WL 11383743, at *1 (D.N.J. Apr. 18,

26  2008)).  Absent such factual allegations, Defendant's argument that the Bozicevic firm misused its

27  confidential information in a conspiracy to benefit Plaintiffs is speculative.  Accordingly, the

28  Court declines to give these allegations any weight in supporting an inference of specific intent to

1   deceive on the part of Plaintiffs or their counsel.  *See Nova Biomedical Corp. v. Mallinckrodt*

2   *Sensor Sys., Inc.,* 997 F.Supp. 187, 191–92 (D. Mass. 1998) (finding that suspicious circumstances

3   were insufficient to support an inequitable conduct defense where defendant had presented only

4   speculation and conjecture regarding patentee's knowledge and intent).  Instead, the Court turns to

5   the Defendant's specific allegations as to each reference.

6       Daridon:  Defendants allege that Carl Hansen and Michael Rubin were aware of the

7   Daridon reference because Daridon was discussed in the prosecution of the '408 patent.  ECF No.

8   106 ¶¶ 69, 70, 88-91.  Specifically, Defendants allege that "in a July 29, 2016 final rejection of the

9   pending '408 patent claims, the Examiner rejected then pending claims 76 and 79 for obviousness

10  over U.S. Published Patent Application 2011/0262906 (Dimov) . . . in view of Daridon" and that

11  "Michael Rubin filed the response to that rejection, confirming his knowledge of Daridon and its

12  content." *Id.* ¶ 69.  Defendants further allege that Daridon was specifically discussed in the July

13  29, 2016 rejection, during which the examiner wrote:

14          DARIDON discloses a microfluidic particle analysis system
            comprising loading cells into chambers from a fluid flow (Figure 96a)
15          in which flow rate of the fluid is regulated by valves and that either
            the inlet or outlet is gated by a valve (0124,0145-146, 0198, 0216).
16

17  *Id.* ¶ 88.

18       Defendants allege that Mr. Rubin was aware of Daridon, and the specific material

19  information disclosed in Daridon, because he had, on multiple occasions, filed responses

20  discussing Daridon in response to the July 29, 2016 rejection of the '408 patent.  *See id.* ¶¶ 70, 89-

21  91.  As for Carl Hansen, Defendants allege that Dr. Hansen was involved in a telephonic interview

22  with the patent examiner regarding the July 29, 2016 rejection of the '408 patent, during which

23  Daridon (along with other prior art references) was discussed.  *Id.* ¶ 91.  As alleged, during the

24  interview the "[a]pplicants further compared the claimed method to the prior art cited and

25  discussed the differences regarding how cells are recovered." *Id.*  These allegations, together with

26  the fact that the '936 patent is closely related to the '812 patent family, support a plausible

27  inference that Mr. Rubin and Dr. Hansen were aware of the specific material information

28  contained in Daridon, and intentionally withheld this information during the prosecution of the

United States District Court
Northern District of California

'812 patent family.  *See iLife Techs. Inc v. AliphCom,* No. 14-CV-03345-WHO, 2015 WL 890347, at *9 (N.D. Cal. Feb. 19, 2015) (finding a plausible inference of specific intent to deceive where prosecuting attorney "disclosed the EPO report in his prosecution of another patent before the PTO, but allegedly withheld this same report from the PTO in his prosecution of the [asserted] patents," because "the facts in the light most favorable to [the non-moving party], establish a clear relationship between the European patent applications and the [asserted patents]").

However, the Court finds that Defendant's pleadings are deficient as to Carol Francis and Thomas Cawley, Jr.  As the Court discusses above, Defendant has failed to allege that Mr. Francis was even aware of Daridon.  As for Dr. Cawley, Defendant merely alleges that Dr. Cawley was aware of Daridon because he "filed an Information Disclosure Statement listing Daridon in the '270 prosecution on April 1, 2020."  ECF No. 106 ¶ 69.  This allegation is insufficient to support an inference that Dr. Cawley was aware of the specific material information disclosed by Daridon, or that he intentionally withheld Daridon during the examination of the '812 patent family.  *See Exergen,* 575 F.3d at 1330 ("one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference.").

<u>Yasuda and Nassef:</u>  Defendant alleges that Michael Rubin was aware of the specific material information disclosed in Yasuda and Nassef, because both the Yasuda and Nassef references were raised by the patent examiner during prosecution of the '936 patent.  ECF No. 106 ¶¶ 165, 171-172, 182-183, 193-194.  Specifically, Defendant alleges that "[o]n May 30, 2018, during the prosecution of the '936 patent, the Examiner rejected then-pending claims 30-59 for obviousness over Yasuda in view of U.S. Published Patent Application 2011/0262906 (Dimov)" and that "Michael Rubin filed the response to that rejection, confirming his knowledge of Yasuda and its content."  *Id.* ¶ 165, *see also* ¶¶ 171-172.  Similarly, Defendant alleges that "[o]n December 14, 2018, during the prosecution of the '936 patent, the Examiner rejected then-pending claims 30-37 and 39-59 for obviousness over Yasuda in view of U.S. Published Patent Application 2011/0262906 (Dimov) and further in view of Nassef" and that "Michael Rubin filed the response to that rejection, confirming his knowledge of Nassef and its content."  *Id.* ¶¶ 182-183, *see also id.* ¶¶ 193-194.  These allegations, together with the fact that the '936 patent is closely related to the

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

'812 patent family, support a plausible inference that Rubin was aware of the specific material information contained in Yasuda and Nassef, and intentionally withheld this information during the prosecution of the '812 patent family.

However, with regards to Thomas Cawley, Jr., Defendant's only allegation as to knowledge is that "[o]n information and belief, Dr. Cawley read the prosecution histories of the prior applications in the '408 patent family, as any prudent patent prosecutor would do when taking over prosecution of whole families of patents."  ECF No. 106 ¶¶ 174, 195.  These allegations are insufficient to support a plausible inference that Dr. Cawley knew of the specific material information contained within Yasuda and Nassef, much less that he intentionally withheld the Yasuda and Nassef references from the PTO during prosecution of the '812 patent family.  Even if, as a patent prosecutor, Dr. Cawley *should* have read the references cited in the prior '408 patent family applications, his failure to do so does not support an inference of intent, without more.  *See Abaxis, Inc. v. Cepheid*, No. 10-CV-02840-LHK, 2011 WL 3741501, at *6 (N.D. Cal. Aug. 25, 2011) (dismissing inequitable conduct counterclaim because "[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive." (internal quotations omitted)).

Gómez-Sjöberg, Lee, and Love:  The Court concludes that Defendant has failed to allege facts sufficient to support a plausible inference of intent to deceive as to Gómez-Sjöberg, Lee, or Love.  Specifically, as to Michael Rubin, Carol Francis, or Thomas Cawley, Jr., Defendants only allege that these individuals were aware of Gómez-Sjöberg, Lee, or Love by virtue of having listed these on Information Disclosure Statements made during the prosecution of the '408 patent family.  *See* ECF No. 106 ¶¶ 114 (Love), 203 (Gómez-Sjöberg), 221 (Lee).  As with Dr. Cawley's knowledge of Daridon, the mere inclusion of a reference on an information disclosure statement is insufficient to infer knowledge of the specific material information disclosed by the reference, much less an intent to deceive the PTO in withholding the reference.

Defendant's remaining allegations relate to Carl Hansen and Daniel Da Costa's knowledge of Gómez-Sjöberg, Lee, and Love.  Specifically, Defendant alleges that Dr. Hansen was aware of Gómez-Sjöberg through working with the corresponding author of Gómez-Sjöberg at Caltech and

18

citing to Gómez-Sjöberg in two papers he co-authored, ECF No. 106 ¶¶ 209-212, aware of Lee through citing to Lee in the '408 patent specification and one paper he co-authored, *id.* ¶¶ 229-232, and aware of Love because one of his Ph.D. students cited to Love (and specifically, a material figure in Love) in his Ph.D. thesis. *Id.* ¶¶ 129-132. Similarly, Defendant allege that Dr. Da Costa was aware of Gómez-Sjöberg through citing to Gómez-Sjöberg in one paper he co-authored. *Id.* ¶ 212. The Court finds that none of these allegations support a plausible inference of specific intent.[6] Defendant's allegations ask the Court to infer specific intent from the fact that Dr. Hansen and Dr. Da Costa cited to Gómez-Sjöberg and Lee in a few papers, which they were two of many authors. Similarly, Defendants ask the Court to infer intent from the fact that Dr. Hansen's Ph.D. student cited to Love in his thesis, but it is implausible to suggest that Dr. Hansen read every citation in each of his students' theses. At best, Defendant's allegations support Dr. Hansen and Dr. Da Costa's awareness of these references, but not the knowledge of the specific material information disclosed within. Without more, the Court is unable to infer specific intent to deceive from these allegations. *See Exergen*, 575 F.3d at 1330; *Abaxis*, 2011 WL 3741501, at *6.

### 2. '408 Patent Family Inequitable Conduct Counterclaims[7]

The Court next turns to Plaintiffs' motions to dismiss Defendant's inequitable conduct counterclaims as to the '408 Patent Family, as alleged in the 8626 Case and 8627 Case.

#### a. The "Who"

Balagadde: Defendant alleges that Carl Hansen, Michael Rubin, Carol Francis, and Thomas Cawley, Jr. knew about Balagadde. 8626 Case ECF No. 73 ¶¶ 39-40. Defendant further

---

[6] The Court does not credit Defendant's allegations as to Plaintiffs' conduct in litigation or before the PTO after the filing of Defendant's counterclaims. At best, these allegations show that Plaintiffs, once on notice of Defendant's allegations of inequitable conduct, amended their patent applications to disclose certain of those references. That Plaintiffs allegedly delayed in their substantive responses or in producing the relevant file histories also has no probative value as to whether Carl Hansen, Michael Rubin, Carol Francis, and Thomas Cawley, Jr. intentionally withheld Love from the examiner during the prosecution of the '812 patent family.

[7] For the purposes of the '408 patent family inequitable conduct counterclaims, Defendant's Second Amended Counterclaims in the 8626 Case and 8627 Case are substantively identical. Accordingly, for the purposes of citation, the Court will refer to documents filed on the docket in of the 8627 Case.

alleges that Carl Hansen, Michael Rubin, Carol Francis, and Thomas Cawley, Jr. withheld Balagadde from the examiner during prosecution of the '408 patent family. *Id.* ¶ 51. The Court finds that these allegations are sufficient to name the specific individuals associated with the filing or prosecution of the application who both knew of the material information and deliberately withheld or misrepresented it.

Daridon:  Defendant alleges that Michael Rubin made "demonstrably false" representations regarding Daridon during prosecution of the '408 patent.  8626 Case ECF No. 73 ¶¶ 58-59, 65-72.  The Court finds this sufficient to identify the "who" for the purposes of this ground.

The '812 Patent Family and Hansen 2010:  Defendant alleges that Carl Hansen, Carol Francis, Michael Rubin, and Thomas Cawley, Jr. were aware of the '812 patent family and failed to disclose the '812 patent family during prosecution of the '936 and '018 patents.  8626 Case ECF No. 73 at ¶¶ 126-127, 130. Defendant further alleges that Carl Hansen was aware of, and failed to disclose Hansen 2010 during prosecution of the '936 and '018 patents.  *Id.* at ¶¶ 124, 137. The Court finds that these allegations are sufficient to name the specific individuals associated with the filing or prosecution of the application who both knew of the material information and deliberately withheld or misrepresented it.

### b.    The "What" and "Where"

Plaintiffs argue that Defendant's allegations as to Balagadde fail to "identify which claims, and which limitations in those claims, the withheld references are relevant to." *Exergen*, 575 F.3d at 1329.  Here, the Court agrees.  Defendant argues that it has sufficiently identified the particular limitations Balagadde is relevant to in the following paragraph:

> The Examiner's stated reason for allowance of the independent claim was that "the prior art does not teach or fairly disclose a method of culturing a cell comprising retaining a cell at a retaining position within an individual chamber of a microfabricated device, perfusing the cell with a perfusion fluid … out of the chamber through an outlet, wherein the outlet is positioned such that gravitational forces acting on the cell to keep it at or near the retaining position exceed hydrodynamic forces acting on the cell to move it toward the outlet; and selectively recovering the cell or a clonal population thereof from the individual chamber based on the response from the step of monitoring a response in the chamber." (4/25/2018 Notice of

Allowance at 2-3.)

8626 Case ECF No. 73 at ¶ 79.  However, this paragraph does not discuss or identify which limitations in Balagadde are relevant to the '408 patent.  Indeed, this paragraph does not discuss Balagadde at all, and is instead referencing the alleged misrepresentations made about Daridon during the prosecution of the '408 patent family.  As such, because the Second Amended Counterclaims fail to "identify which claims, and which limitations" in the '408 patent family Balagadde is relevant to, the Court finds that Defendant has failed to plead the "what" of its inequitable conduct counterclaim here.

### c.       The "Why" and "How"

<u>Balagadde:</u>  The Court finds that Defendant has also failed to plead the "why" and "how" as to Balagadde.  In its Second Amended Counterclaims, Defendant merely alleges that "Balagadde discloses or suggests the step of that claim that the Examiner stated was absent from the prior art when stating the reason for allowance of the claim" and that "[h]ad the Examiner been aware of Balagadde, none of the claims in the asserted patents of the '408 patent family (including the '408, '936, '018, and '270 patents) would have been allowed."  8626 Case ECF No. 73 at ¶¶ 50-61.  Such conclusory allegations, without more, are insufficient "to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329–30.

<u>Daridon:</u>  The Court finds that Defendant has adequately plead the "why" and "how" as to Mr. Rubin's alleged misrepresentation of Daridon.  "Although an attorney is free to argue vigorously in favor of patentability without being subject to allegations of inequitable conduct, 'the law prohibits genuine misrepresentations of material fact.'" *Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1360 (Fed. Cir. 2010) (quoting *Rothman v. Target Corp.*, 556 F.3d 1310, 1328 (Fed. Cir. 2009)).  The parties dispute whether Mr. Rubin's statements regarding Daridon were vigorous attorney argument or genuine misrepresentations of material fact, but the Court cannot decide that factual dispute at this stage in the proceedings.  Defendant's allegations here are well-pled, and taken as true, are sufficient to satisfy Rule 9(b).

<u>'812 Patent Family and Hansen 2010:</u>  The Court finds that Defendants have failed to

United States District Court
Northern District of California

1   adequately plead the "why" and "how" as to the alleged failure to disclose the '812 patent family

2   and Hansen 2010 during prosecution of the '936 and '018 patents.  Defendant's allegations boil

3   down to the fact that at least one claim of the '936 and '018 patents are not entitled to priority to

4   the '408 patent (or the provisional application to which it claims priority to) because the '936 and

5   '018 patents are continuations of an application that contained new matter that was not disclosed

6   in the '408 patent (or the provisional application to which it claims priority to).  Accordingly, the

7   '812 patent family and Hansen 2010 are prior art to at least one claim of the '936 and '018 patents

8   and should have been disclosed during prosecution of those patents.  However, even taking all of

9   these allegations as true, Defendant has not pled facts "to explain both 'why' the withheld

10  information is material and not cumulative, and 'how' an examiner would have used this

11  information in assessing the patentability of the claims."  *Exergen*, 575 F.3d at 1329–30.  Instead,

12  Defendant pleads only conclusory allegations that "had the Examiner been aware of the '812

13  patent family [or Hansen 2010], at least some of the claims in the asserted patents of the '408

14  patent family . . . would not have been allowed."  8626 Case ECF No. 73 at ¶¶ 133, 134.  The

15  Court disregards such conclusory allegations and finds that Defendant's allegations as to this

16  inequitable conduct ground fail under Rule 9(b).

17                    **d.      Knowledge of Materiality and Intent**

18          <u>Balagadde:</u>  Defendant alleges that Carl Hansen was aware of the specific material

19  information disclosed in Balagadde because Dr. Hansen is a named inventor of Balagadde.

20  However, because Defendant has failed to plead facts sufficient to establish that Balagadde was

21  material to the '408 patent family, and not cumulative of the prior art before the examiner, the

22  Court is also unable to draw an inference that Dr. Hansen had the specific intent to deceive in

23  failing to disclose Balagadde to the PTO.  Moreover, Defendant's allegations that Mr. Rubin, Mr.

24  Francis, and Dr. Cawley were aware of Balagadde because they disclosed Balagadde on

25  Information Disclosure Statements during prosecution of the '408 patent family are insufficient.

26  As the Court has stated previously, the mere inclusion of a reference on an information disclosure

27  statement is insufficient to infer knowledge of the specific material information disclosed by the

28  reference, much less an intent to deceive the PTO in withholding the reference.

United States District Court
Northern District of California

1     <u>Daridon:</u>  The Court does not find Defendant's allegations sufficient to support a

2     reasonable inference of intent to deceive as to Mr. Rubin's statements to the PTO.  To summarize,

3     Defendant's allegations as to Daridon are that (1) Mr. Rubin was aware of Daridon, (2) Mr. Rubin

4     made an allegedly false representation about Daridon's disclosures that gave the impression he

5     had read all of Daridon, (3) Mr. Rubin avoided discussing Daridon in detail during prosecution of

6     the '408 patent, and (4) Mr. Rubin cancelled two dependent claims that the examiner rejected over

7     Daridon.  8626 Case ECF No. 73 at ¶¶ 57-59, 65-79.  These allegations, even taken as true, do not

8     support a reasonable inference that Mr. Rubin intended to deceive the examiner by making

9     deliberately false representations about Daridon.  Instead, the most these allegations support is a

10    reasonable inference that Mr. Rubin did not read all of Daridon, only those portions cited by the

11    examiner – his alleged misrepresentation was therefore a failure to qualify his statement as to the

12    scope of Daridon's disclosure.  Indeed, Defendant even seems to suggest this possibility in its

13    counterclaims.  *See* 8626 Case ECF No. 73 at ¶ 65 ("Had Mr. Rubin read only the portions of

14    *Daridon* cited by the examiner, he would have stated that 'the portions of *Daridon* cited by the

15    examiner are silent regarding a method of recovering a cell form an individual chamber of

16    microfabricated device.'").  While it is true that at the pleading stage, intent to deceive need not be

17    the *single most* reasonable inference drawn, Defendants would have this court infer that Mr. Rubin

18    intended to deceive the examiner about the scope of a reference that the examiner was already

19    familiar with, on the mere hope that the examiner did not read that reference in more detail in

20    response.  The Court finds such an inference implausible in light of the facts alleged.

21    <u>'812 Patent Family and Hansen 2010</u>:  Because Defendant has failed to plead facts

22    sufficient to establish that the '812 patent family and Hansen 2010 were material to the '408 patent

23    family, and not cumulative of the prior art before the examiner, the Court is also unable to draw an

24    inference that any individual involved had the specific intent to deceive in failing to disclose these

25    references to the PTO.

26    **C.      Leave to Amend**

27    In its July 1, 2021 Order, the Court cautioned that dismissal would be with prejudice "if,

28    on review of the merits, the Court finds that Defendant's second amended pleadings have failed to

1   cure the deficiencies identified in [that] Order and in Plaintiffs' instant motion to dismiss, ECF

2   No. 40." ECF No. 98 at 12.  Accordingly, to the extent the Court grants Plaintiff's motion to

3   dismiss here, such dismissal is with prejudice.

### D.      Motion to Strike

5   Finally, Plaintiffs move to strike from Defendant's inequitable conduct counterclaim and

6   affirmative defense two new grounds that were not previously asserted by Defendants: (1)

7   inequitable conduct as to the '812 patent family based on failure to disclose U.S. Patent No.

8   7,776,553 ("Love 2"); Love, J. C. et al., Nature Biotechnology 24(6), 703-707 (2006) ("Love 3");

9   Love, K. R. et al., Biotechnology and Bioengineering 106(2), 319-325 (2010) ("Love 4"); and the

10   '936 patent specification and (2) inequitable conduct as to the '408 patent family out of the failure

11   to disclose the '812 patent family and Hansen 2010.  Plaintiffs argue that Defendant's addition of

12   these references to its counterclaim effectively asserts new grounds for inequitable conduct and

13   are therefore new counterclaims in violation of the Court's July 1, 2021 Order.  *Id.*  Defendant

14   argues that its addition of these references are not new counterclaims because they "relate to the

15   same 'transaction or occurrence' that was pled in BLI's original pleading, and thus belong to the

16   same claim" ECF No. 119 at 9.  Alternatively, Defendant argues that even if these are new

17   counterclaims, the Court should not strike them in light of the policy of extreme liberality in

18   granting leave to amend.  *Id.*

19   Because motions to strike are disfavored and Plaintiffs have made no argument that the

20   sections it seeks to strike are "redundant, immaterial, impertinent, or scandalous matter," Fed. R.

21   Civ. Proc. 12(f), the Court declines to strike these allegations.  *See Molica v. Synchrony Bank*, No.

22   21-CV-01549-JST, 2021 WL 9315272, at *2 (N.D. Cal. Sept. 14, 2021).  However, as the Court

23   finds these allegations insufficiently pled under Rule 9(b) and *Exergen* (*see* Section IV(B), *supra*),

24   the Court will dismiss these allegations with prejudice.

## V.      CONCLUSION

26   For the foregoing reasons, the Court denies Plaintiff's motion to dismiss Defendant's

27   inequitable conduct counterclaim and affirmative defenses on the grounds of  (1) Carl Hansen and

28   Michael Rubin's failure to disclose Daridon during the prosecution of the '812 patent family, and

24

(2) Michael Rubin's failure to disclose Yasuda and Nassef during the prosecution of the '812 patent family, and grants Plaintiff's motion to dismiss as to all other counterclaims.

      **IT IS SO ORDERED.**

Dated:  January 2, 2024



                    JON S. TIGAR
                United States District Judge

United States District Court
Northern District of California