UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABCELLERA BIOLOGICS INC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRUKER CELLULAR ANALYSIS, INC., <br><br> Defendant. | Case No. 20-cv-08624-JST (VKD) <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO STRIKE NEW ACCUSED PRODUCTS** <br><br> Re: Dkt. No. 181 |

In this consolidated action, plaintiffs AbCellera Biologics Inc. and The University of British Columbia (collectively, "AbCellera") allege infringement of fifteen patents.[1] The asserted patents are generally directed to methods that use microfluidics in cell analyses. *See* Dkt. No. 164. Defendant Bruker Cellular Analysis ("Bruker Cellular") now moves for an order striking 26 accused instrumentalities in AbCellera's amended Patent Local Rule 3-1(b) disclosures. Dkt. No. 181. AbCellera opposes the motion. Dkt. No. 188. Upon consideration of the moving and responding papers, as well as the arguments presented at the February 20, 2024 hearing, the Court grants Bruker Cellular's motion to strike.

**I.   BACKGROUND**

On March 31, 2021, AbCellera served its Patent Local Rule 3-1 disclosures, identifying the following accused instrumentalities[2]:

---

[1] U.S. Patent Nos. U.S. Patent Nos. 10,087,408; 10,107,812; 10,274,494; 10,421,936; 10,466,241; 10,578,618; 10,697,962; 10,704,018; 10,718,768; 10,738,270; 10,746,737; 10,753,933; 10,775,376; 10,775,377; and 10,775,378.

[2] The disclosure also included a catch-all identification of "[t]he supporting instruments, components, other consumables, and reagents associated with [the accused instrumentalities]." Dkt. No. 181-2 at ECF 9-37.

- Beacon® Optofluidic System
- Culture Station™ instrument
- OptoSelect™ 1750 chips
- OptoSelect™ 3500 chips
- OptoSelect™ 11k chips
- OptoSelect™ 14k chips
- Opto Plasma B Discovery Workflow

Dkt. No. 181-2. Bruker Cellular[3] produced technical documents regarding the accused instrumentalities between April 8, 2021 and August 19, 2021 pursuant to Patent Local Rule 3-4(a) and in response to AbCellera's document requests. Dkt. No. 181-1 ¶¶ 3-9.

Meanwhile, in July 2021, Bruker Cellular filed petitions for *inter partes* review of three asserted patents and sought a stay of this litigation pending resolution of the petitions; AbCellera opposed the stay. *See* Dkt. No. 103; Dkt. No. 114. On August 26, 2021, the Court stayed the action. Dkt. No. 123. The action was stayed for almost two years.

On August 4, 2023, following completion of *inter partes* review, the Court lifted the stay. Dkt. No. 143. On August 29, 2023, the parties filed a joint case management statement, which included the following representations:

> As of now, [Defendant] currently markets *two additional optofluidic systems—known as the Beacon Select and the Beacon Quest*—as well as additional services and workflows for use in those new systems as well as in the original Beacon system. *AbCellera contends that these new products, services, and workflows infringe the patents asserted in these proceedings.*
>
> . . .
>
> Given Defendant's *new products, services and workflows*, Plaintiffs contend that additional discovery is required. For example, Plaintiffs intend to seek leave of the Court to amend its pleadings based on the Defendant's *new products, services, and workflows*, which will necessitate supplementing their initial disclosures, identification of accused products and corresponding asserted patent

---

[3] Bruker Cellular, formerly known as Berkeley Lights, Inc. and PhenomeX, Inc., appeared in this action in October 2023. *See* Dkt. No. 161; *see also* Dkt. No. 164 ¶ 6; Dkt. No. 204 ¶ 6. For convenience, the Court refers to defendant at all times as "Bruker Cellular."

> claims, infringement contentions, and damages contentions with respect to these *new products*, and propounding new discovery requests related to the new accused products. Once Plaintiffs accuse new products, services and workflows in this litigation, Defendant will also need to supplement its core technical document production to produce documents related to them as well as provide supplemental disclosures responsive to Plaintiffs' supplemental disclosures. And the parties will need to revise their claim construction disclosures to account for issues that arose as a result of the IPR and PGR proceedings.
>
> *The parties have discussed the most efficient manner to address these issues and incorporate their joint proposal in the attached proposed schedule for the Court's consideration. See* Exhibit A.

Dkt. No. 150 at 2-3 (emphasis added). Exhibit A to the joint case management statement attached the parties' proposed schedule, including a proposed deadline of October 20, 2023 for AbCellera to "supplement its disclosure, separately for each asserted claim, with the new accused products, consistent with PLR 3-1(b)." Dkt. No. 150-1 at 1.

Following a case management conference, the Court issued a scheduling order on September 5, 2023 adopting the parties' proposed October 20, 2023 deadline for amendment of AbCellera's Patent Local Rule 3-1(b) disclosures. Dkt. No. 154.

On November 2, 2023,[4] AbCellera served its amended Patent Local Rule 3-1(b) disclosures on Bruker Cellular. Dkt. No. 181-10. In addition to the Beacon® Optofluidic System that AbCellera originally accused, the amended disclosures identify the Beacon® Quest Optofluidic System and the Beacon® Select Optofluidic System as accused instrumentalities. *Id.* The amended disclosures also include the following additional listing of accused instrumentalities:

- The associated technology and services that are used in conjunction with the Beacon, Beacon Quest, and/or Beacon Select depending on the customized configuration, including but not limited to the following:
    - Culture Station™ instrument (Part No. 110-08001);
    - OptoSelect® 1500 chip (Part No. 750-00060) (*see, e.g.*, BLI00000041-46 at BLI00000042; BLI00000023);
    - OptoSelect® 1750 or 1750b chip (Part Nos. 750-00018, 500-12006);
    - OptoSelect® 3500 chip (Part Nos. 750-00012, 500-12001);

---

[4] AbCellera missed the October 20, 2023 deadline.

3

- OptoSelect® 11k chip (Part Nos. 500-12012, 750-08106, 750-08090);
- OptoSelect® 14k chip (Part Nos. 500-12008, 750-00021);
- OptoSelect® 20k chip (Part No. 750-00019);
- Opto Plasma B Discovery Workflows (*see, e.g.*, BLI00000076; Opto Plasma B Discovery 1.0 Workflow (BLI0000174-234); Opto Plasma B Discovery 2.0 Workflow (PLF00006161-168; BLI00000508-564; PLF00006161-168); Opto Plasma B Discovery 3.0 Workflow; Opto Plasma B Discovery 4.0 Workflow (BLI00000058-65; BLI00000011; BLI00000027));
- Opto Viral Neutralization Workflows (*see, e.g*., BLI00000066-73; Opto Viral Neutralization 1.0 Workflow (BLI00000066));
- Opto Memory B Discovery Rabbit Workflows (https://www.berkeleylights.com/wp-content/uploads/2022/11/DAT-BLI-Opto-Memory-B-Discovery-Rabbit-Workflow.pdf);
- Opto Memory B Discovery Human Workflows (https://brukercellularanalysis.com/products/workflows/opto-b-discovery-workflow/);
- Plasma B Cell Workflows (*see, e.g*., BLI00000263; BLI00000342; BLI00000424);
- Other antibody discovery workflows, B cell antibody discovery workflows, and/or antibody therapeutics workflows;
- Opto Cell Line Development (CLD) Workflows2 (*see, e.g*., BLI00000120-123; BLI00000157; Opto CLD 1.0 Workflow (BLI00001303-62; BLI00001218-74); Opto CLD 2.0 Workflow (BLI00001453-1553; BLI00000129-136); Opto CLD 3.0 Workflow);
- Opto Cell Therapy Development Workflows (*see, e.g*., BLI0000041-46; BLI0000047-51; BLI00000086-87; BLI00000114-118; BLI0000018383-497 at BLI00018497; Opto Cell Therapy Development 1.0 Workflow; Opto Cell Therapy Development 2.0 Workflow; Opto Cell Therapy Development 3.0 Workflow);
- T Cell Workflows, and/or T Cell Profiling Workflows (*see, e.g*., BLI00001080; T Cell Phenotype and Cytokine Assay Workflow (BLI00000089));
- Opto T Cell IFNγ Workflows (*see, e.g.*, BLI00000023);
- Synthetic Biology Workflows;
- Adherent Cell Workflows (*see, e.g.*, BLI00001036; Adherent Cell Split Unload Workflow (BLI00000782));
- Culture Workflows (*see, e.g.*, BLI00001198; BLI00001793; Culture Workflow and Pulse Culture Workflow);
- Workflows for OEP™ Load and Culture Settings (*see, e.g.*, BLI00000436);
- Workflows for OEP™ Unload (*see, e.g.*, BLI00000436);
- OptoSeq 3' mRNA Workflows (*see, e.g.*, BLI00001036; OptoSeq Single Cell 3' mRNA workflow (BLI00000084));

4

- o OptoSeq BCR Workflows (*see, e.g.*, BLI00000142; BLI00000459);
- o Prime Line Workflow (*see, e.g.*, BLI00001793);
- o Decontamination Workflow (*see, e.g.*, BLI00000763);
- o Flush Chip Workflow (*see, e.g.*, BLI00001793);
- o Full Clean Workflow (*see, e.g.*, BLI00000578);
- o Long-Term Storage Clean Workflow (*see, e.g.*, BLI00000590);
- o Cell Line Stability/Population Dynamics Workflow (*see, e.g.*, BLI00018496-497 at BLI00018496);
- o Antibody Discovery, Memory Cell Workflow (*see, e.g.*, BLI00018496-497 at BLI00018496);
- o Hybridoma Workflows, and/or Hybridoma Cloning Workflows (*see, e.g.*, BLI00018496-497 at BLI00018496); and/or
- o The supporting software, including but not limited to various versions of the Cell Analysis Suit (CASTM) software and software updates, instruments, sample prep kits, components, other consumables, and reagents associated with the above.

Dkt. No. 181-10.

Bruker Cellular does not object to AbCellera's inclusion of four of the new accused instrumentalities (the Beacon Quest, the Beacon Select, the Opto Memory B Discovery Rabbit Workflow, and the Opto Memory B Discovery Human Workflow), in addition to the original seven accused instrumentalities. Dkt. No. 181 at 4. However, Bruker Cellular does object to the remainder of the new items listed in AbCellera's amended disclosures.

## II. LEGAL STANDARD

Among other things, Patent Local Rule 3-1 requires "a party claiming patent infringement" to identify for each asserted claim "each accused apparatus, product, device, process, method, act, or other instrumentality . . . of which the party is aware." Patent L.R. 3-1(b). This identification must be "as specific as possible," including "by name or model number, if known." *Id.* "[A]ll courts agree that the degree of specificity under [Patent] Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)). The Patent Local Rules do not "require the disclosure of specific evidence nor

do they require a plaintiff to prove its infringement case," but "a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it." *DCG Sys. v. Checkpoint Techs., LLC*, No. 11-cv-03792-PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (internal quotations and citation omitted).

A party may amend its Patent Local Rule 3-1 disclosures "only by order of the Court upon a timely showing of good cause." Patent L.R. 3-6. Good cause for amendment requires the moving party to show that (1) the party was diligent in discovering the basis for amendment and in seeking leave to amend once the basis for amendment has been discovered; and (2) the non-moving party will not be prejudiced by the amendment. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1366 (Fed. Cir. 2006); *Apple Inc. v. Samsung Elecs. Co*., No. 12-cv-00630 LHK (PSG), 2012 WL 5632618, at *2 (N.D. Cal. Nov. 15, 2012). If the Court finds that a party was not diligent, it need not consider the question of prejudice. *O2 Micro*, 467 F.3d at 1368. Patent Local Rule 3-6 provides "[n]on-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause," including "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." Patent L.R. 3-6(c).

## III. DISCUSSION

As noted above, Bruker Cellular agrees that AbCellera may amend its Patent Local Rule 3-1(b) disclosures to include four new accused instrumentalities: the Beacon Quest, the Beacon Select, the Opto Memory B Discovery Rabbit Workflow, and the Opto Memory B Discovery Human Workflow. Therefore, these amendments to AbCellera's disclosures are permitted.

Bruker Cellular moves to strike the remainder of AbCellera's amended disclosures on the ground that AbCellera did not seek leave to amend, and even if it had, amendment should not be permitted because AbCellera was not diligent. Bruker Cellular also argues that AbCellera's amended disclosures do not identify some of the new accused instrumentalities with sufficient specificity. AbCellera responds that its amended disclosures are permitted by the scheduling order, and that in any event, it has good cause to make the amendments without prejudice to

Bruker Cellular. Finally, AbCellera argues that it has identified the accused instrumentalities with the requisite specificity.

### A. Whether the Scheduling Order Authorizes AbCellera's Amendments

AbCellera does not dispute that it served its amended disclosures without first seeking and obtaining leave to amend. *See generally* Dkt. No. 188. However, it argues that the September 5, 2023 scheduling order "broadly permitted" amendment of AbCellera's disclosures, and that the deadline for amending infringement contentions "was not limited to the addition of newly-released products." *Id.* at 1, 7. Bruker Cellular disputes AbCellera's reading of the scheduling order and argues that amendments made without leave of court should be stricken. Dkt. No. 154 at 2-3; Dkt. No. 195 at 1-2.

The Court agrees with Bruker Cellular. The September 5, 2023 scheduling order does not permit any and all amendments AbCellera might wish to make to its Patent Local Rule 3-1 disclosures, particularly when that order is read in the context of the parties' August 29, 2023 joint case management statement. Rather, the only plausible reading of the scheduling order is that it adopted the parties' proposed deadline for those amendments to which they had agreed, as reflected in the joint case management statement—i.e., the two *new* optofluidic systems (Beacon Select and Beacon Quest), as well as the *new* services and workflows for use in those systems and in the original Beacon system. *See* Dkt. No. 150 at 2-3; Dkt. No. 154.

Even if the Court were to adopt AbCellera's view that nothing in the case management statement or the scheduling order *limited* the scope of permissible amendments, AbCellera does not explain why it believes it was free to make whatever amendments it chose without first seeking and obtaining leave of court. Nothing in the scheduling order relieved AbCellera of its obligation to comply with the Patent Local Rules. And nothing in the scheduling order suggests that the presiding judge approved AbCellera's particular amendments, which were not described in the joint case management statement or anywhere else.

Accordingly, the Court concludes that the September 5, 2023 scheduling order neither permits the disputed amendments nor grants leave to make those amendments.

### B. Whether AbCellera Was Diligent

Although AbCellera has not moved for leave to amend, both parties invite the Court's consideration of whether good cause exists for the amendments. *See* Dkt. No. 181 at 6-11; Dkt. No. 188 at 12-14. To facilitate an efficient resolution of this dispute, the Court will consider whether AbCellera has established good cause to amend its disclosures.

AbCellera has the burden to show that it acted diligently to amend its disclosures. *O2 Micro*, 467 F.3d at 1366 ("The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence.").[5] Here, AbCellera concedes that it identified grounds to amend its disclosures as early as April of 2021, shortly after receiving Bruker Cellular's first document production. *See* Dkt. No. 188 at 3-4. On April 12, 2021, AbCellera advised Bruker Cellular that AbCellera was "diligently working to prepare our amendment." Dkt. No. 188-3 at ECF 3. On several subsequent occasions during the next few months, AbCellera advised Bruker Cellular that it intended to amend its disclosures. *See* Dkt. No. 188 at 13. However, AbCellera did not share any of its proposed amendments with Bruker Cellular during this time.

On August 23, 2021, AbCellera informed Bruker Cellular that it intended to provide "supplemental infringement contentions" on September 3, 2021. *Id.* at 6. However, when the case was stayed on August 26, 2021, AbCellera apparently chose not to disclose its proposed amendments to Bruker Cellular on that date or at any other time during the stay.

After the Court lifted the stay on August 24, 2023, AbCellera still did not provide its proposed amendments to Bruker Cellular. AbCellera explains: "Given the posture of the case just before the case was stayed, Plaintiffs reasonably understood that they would have the opportunity to make the supplementation of accused instrumentalities that were discovered through Defendant's delayed and supplemental document productions (as [AbCellera] repeatedly informed Defendant it would do before the case was stayed), in addition to identifying the two new accused

---

[5] AbCellera is mistaken in suggesting that Bruker Cellular must establish that AbCellera lacked good cause to amend, or that Bruker Cellular must show good cause to strike AbCellera's amended disclosures. *See* Dkt. No. 188 at 11, 12. The authority on which AbCellera relies concerns motions to strike otherwise timely disclosures.

optofluidic systems and workflows that were released during the pendency of the stay." Dkt. No. 188 at 7. But the only justification AbCellera cites for this understanding is the parties' discussions about and preparation of the August 19, 2023 joint case management statement. *See id.* As explained above, nothing in the joint case management statement, or the subsequent scheduling order, supports AbCellera's expectation that it had Bruker Cellular's agreement, or the Court's approval, to freely amend its disclosures.

AbCellera appears to concede that all of its amendments are based on documents produced by Bruker Cellular between April 8, 2021 and May 31, 2021, as well as public sources available in 2020. *See* Dkt. No. 181 at 7-11; Dkt. No. 188 at 4-5 (referencing production numbers cited in amended disclosure and dates of production), 12 ("Plaintiffs discovered information about the Added Instrumentalities through productions made after the service of the March 31, 2021 Disclosure, including on April 8, 2021 and May 31, 2021."); Dkt. No. 195 at 3. And while AbCellera says that it repeatedly put Bruker Cellular "on notice" of AbCellera's intent to amend its disclosures, such notice never included an identification of the additional instrumentalities AbCellera intended to accuse. This is not meaningful notice, nor does it demonstrate diligence. *See Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, No. 05-cv-03117 MJJ, 2007 WL 2221029, at *2 (N.D. Cal. July 30, 2007) (rejecting argument that party provided notice of amendment by serving document requests about new products); *cf. Apple*, 2012 WL 5632618, at *2 (party promptly investigated newly-released device and gave notice of intent to amend a week later; such notice included a copy of the proposed amendments).

AbCellera suggests it could not have provided amended disclosures at an earlier date because Bruker Cellular failed to timely produce documents in discovery. *See* Dkt. No. 188 at 5-6. However, AbCellera does not tie any missing or late-produced documents to the timing of its current amended disclosures, which cite only to documents produced or publicly available on or before May 31, 2021. AbCellera does refer to a discovery dispute that was presented to the Court for resolution in July 2021. *See* Dkt. No. 188 at 5-6 (citing Dkt. No. 105). As relevant here, in resolving that discovery dispute, the Court ordered Bruker Cellular to produce non-draft technical documents describing the operations, functions, and uses of the *then-accused instrumentalities*,

9

but denied AbCellera's request for an order compelling the production of documents concerning the OptoSelect 20k chip (which was not then accused) because AbCellera articulated no basis for its belief that this chip infringed one or more claims of an asserted patent. *See* Dkt. No. 112 at 2-3, 4. After the Court issued that order, and prior to the stay, AbCellera raised no further discovery disputes with the Court,[6] and it does not explain how any documents Bruker Cellular produced after the stay reveal information that AbCellera did not already have or could not have discovered before. Moreover, as noted above, AbCellera's amended disclosures do not appear to rely on any of Bruker Cellular's more recent document productions. In these circumstances, the Court is not persuaded that Bruker Cellular's failure to produce responsive documents prevented AbCellera from identifying additional accused instrumentalities at an earlier date. *See Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc*., No. 12-cv-03844-JST, 2014 WL 4773960, at *2 (N.D. Cal. Sept. 19, 2014) (party did not establish diligence where information necessary for infringement analysis was available for an extended period of time, and party failed to explain why such information was insufficient).

In short, AbCellera has not established diligence. Having discovered the information that forms the basis for its amendments as early as 2020 and no later than May 2021, AbCellera failed to share its proposed amendments with Bruker Cellular or to seek leave to amend during the following three to four months before the case was stayed. Because AbCellera has not shown diligence, the Court does not consider whether the amendments would prejudice Bruker Cellular.

### C. Whether AbCellera Identifies Accused Instrumentalities with Specificity

Separately, Bruker Cellular objects to AbCellera's amended disclosures for failing to identify certain accused instrumentalities with the specificity Patent Local Rule 3-1(b) requires. In particular, Bruker Cellular complains that AbCellera's identification of "[o]ther antibody discovery workflows, B cell antibody discovery workflows, and/or antibody therapeutics workflows" is insufficient. Dkt. No. 181 at 11-12. With respect to this item, AbCellera explains that it "understands [Bruker Cellular] offers *unnamed* workflows 'customized for or by

---

[6] At that time, the parties had an additional pending discovery dispute, which they ultimately resolved on their own. *See* Dkt. Nos. 109, 117, 121, 144, 156.

customers,'" but admits that it "currently [has] no knowledge of" those unnamed workflows. Dkt. No. 188 at 17-18.

If, as it concedes, AbCellera knows of no such "other workflows" and has no information that they infringe, it is not surprising that AbCellera is unable to identify these other workflows with any specificity. *See Geovector Corp. v. Samsung Elecs. Co.*, No. 16-cv-02463-WHO, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9, 2017) ("Rule 3-1(b) does not permit parties to identify accused products by using categorical or functional identifications, or limited, representative examples."). This item must be removed from AbCellera's list of accused instrumentalities for this reason alone.

## IV.  CONCLUSION

Based on the foregoing, the Court grants Bruker Cellular's motion to strike AbCellera's amended Patent Local Rule 3-1(b) disclosures. By **April 8, 2024**, AbCellera shall serve amended disclosures that conform with the direction in this order.

**IT IS SO ORDERED.**

Dated: March 18, 2024

Virginia K. DeMarchi
United States Magistrate Judge

11