United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ABCELLERA BIOLOGICS INC, et al.,
Plaintiffs,

v.

BRUKER CELLULAR ANALYSIS, INC.
Defendants.

Case No. 20-cv-08624-JST

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS CONSOLIDATED COMPLAINT**

Re: ECF No. 182

Pending before the Court is Defendant Bruker Cellular Analysis, Inc.'s ("Defendant") motion to dismiss Counts I through XV of Plaintiffs AbCellera Biologics, Inc. ("AbCellera") and the University of British Columbia's ("UBC") (collectively, "Plaintiffs") Amended and Consolidated Complaint ("Consolidated Complaint"). ECF No. 182, ("Mot."). The Court will grant the motion.

## I. BACKGROUND AND PROCEDURAL HISTORY

The procedural history of this case is summarized in greater detail in the Court's prior order. *See* ECF No. 191. AbCellera is a biotechnology company that discovers antibodies for the prevention and treatment of disease. ECF No. 164 ¶ 18. Together with UBC, AbCellera patented the use of microfluidic devices for high-throughput single-cell secretion assays that can be applied to antibody discovery and cell clone selection. *Id.* ¶ 19. The present case is a consolidated action incorporating three patent infringement cases brought by Plaintiffs in the United States District Court for the District of Delaware in the summer of 2020. The cases were transferred to this District on December 7, 2020, ECF No. 26, and consolidated into this case on March 11, 2021. ECF No. 70. The case was then stayed pending IPR on August 26, 2021, ECF No. 123, which was lifted on August 4, 2023. ECF No. 143. Subsequently, on October 23, 2023, Plaintiffs filed

the Consolidated Complaint, which consolidated all claims in the three cases into this lead case. ECF No. 164. Defendant filed this motion to dismiss the Consolidated Complaint on November 22, 2023. ECF No. 182.

In the Consolidated Complaint, Plaintiffs assert fifteen patents (the "Asserted Patents"): United States Patent Nos. 10,107,812 ("the '812 patent"), U.S. Patent No. 10,274,494 ("the '494 patent"), 10,466,241 ("the '241 patent"), 10,578,618 ("the '618 patent"), 10,697,962 ("the '962 patent"), 10,775,376 ("the '376 patent"), 10,775,377 ("the '377 patent"), 10,775,378 ("the '378 patent"), 10,718,768 ("the '768 patent"), 10,746,737 ("the '737 patent"), and 10,753,933 ("the '933 patent") (collectively, the "'812 patent family"), and United States Patent Nos. 10,087,408 ("the '408 patent"), 10,421,936 ("the '936 patent"), 10,704,018 ("the '018 patent"), and 10,738,270 ("the '270 patent") (collectively, the "'408 patent family"). ECF No. 164 ¶¶ 20–24, 28–31, 33–35, 25–27, 32. All of the Asserted Patents are method patents—the '812 patent family claims methods for assaying cellular binding interactions and the '408 patent family claims methods of culturing cells. ECF No. 164 ¶¶ 25–27, 32.

Plaintiffs accuse Defendant's "Accused Products and Services"—defined as "[t]he Beacon®, Beacon Select™, and Beacon Quest™, and related technologies including the culture systems, chips, kits, and workflows"—of infringing all Asserted Patents. *See* ECF No. 164 ¶¶ 58. The Beacon®, Beacon Select™, and Beacon Quest™ products (the "Beacon Products") are automated systems sold by Defendant for use in antibody discovery, cell line development, synthetic biology, and cell therapy workflows. *Id.* ¶¶ 37–40. Plaintiffs accuse six such workflows: the Opto Plasma B Discovery workflow, the Opto Viral Neutralization workflow, the Opto Memory B Discovery Rabbit workflow, the Opto Memory B Discovery Human workflow, the Opto Cell Line Development workflow, and the Opto Cell Therapy Development workflow. *Id.* ¶¶ 41–45. Plaintiffs allege that these workflows are performed by the Beacon Products using Defendant's OptoSelect chips, each of which contain thousands of NanoPen chambers. These NanoPen chambers have a volume of 250 picoliters such that "a single cell can be isolated and assayed in its own discrete chamber." *Id.* ¶ 46. Defendant allegedly sells various models of OptoSelect chips for use with the Beacon Products. *Id.* ¶¶ 47–51. Defendant also allegedly sells

reagents and software for use with the Beacon Products. *Id.* ¶ 49.

Plaintiffs also include in the Accused Products and Services Defendant's Culture Station system, which can allegedly be used in conjunction with the Beacon Products and "enables parallel processing of cell cultures while simultaneously running assays on Beacon[.]" *Id.* ¶ 54. Taken together, Plaintiffs allege that the Accused Products and Services "provide[] for bead and diffusion-based fluorescent assays . . . for scoring secreted antibody on chip" whereby "antibody-secreting cells ('ASCs') can be microfluidically imported into the chip and sequestered on into individual NanoPens for screening via gravity" such that "ASCs that secret antigen-specific IgG can be detected using a bead-based, two-color fluorescent binding assay that produces a characteristic fluorescent bloom." *Id.* ¶¶ 52-53 (quotation omitted). "Individual cells of interest can then either be lysed in the NanoPen with nucleic acids being captured for further analysis and sequencing or can be removed from the NanoPens . . . ." *Id.* ¶ 53.

Plaintiffs allege that Defendant directly and indirectly infringes the Asserted Patents: they allege that Defendant sells the Accused Products and Services to its customers, and provides instruction and support for those customers to use the Accused Products and Services to infringe the Asserted Patents. *Id.* ¶ 55. Defendant also allegedly advertises and promotes such use of the Accused Products and Services. *Id.* ¶ 56. Plaintiffs further allege that "in addition to selling the [Beacon Products] that embody the technology claimed in the patents-in-suit and related reagents, software, and culture systems directly to consumers, Defendant also provides services to customers and partners using the [Beacon Products]." *Id.* ¶ 57. Plaintiffs allege that Defendants are accordingly liable for direct patent infringement under 35 U.S.C. § 271(a) through use of the Accused Products and Services, and for indirect patent infringement under 35 U.S.C. § 271(b)–(c) for contributing to, and inducing their customers to infringe the Asserted Patents. *See, e.g.*, *id* ¶¶ 69–75; 76–81.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must

be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). In determining whether a plaintiff has met this plausibility standard, the Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

In the context of patent infringement, "[a] plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). Rather, the complaint need only contain sufficient factual allegations that, "when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* The level of detail required in these allegations varies, "depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* For patents involving "simple technology," it is sufficient to identify the accused products "by name and attaching photos of the product" and allege that the accused products meet each and every element of at least one claim. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). However, for more complex technologies, "mere recitation of claim elements and corresponding conclusions, without supporting factual allegations, is insufficient to satisfy the *Iqbal/Twombly* standard." *Bot M8*, 4 F. 4th at 1355.

## III.     ANALYSIS

### A.     Waiver Under Fed. R. Civ. P. 12(g)(2)

As a threshold issue, Plaintiffs argue that Defendants waived the arguments presented in this motion by failing to raise them in previous Rule 12 motions to dismiss filed in the three cases

prior to consolidation. *See* ECF No. 190 ("Opp.") at 11–13. In support, Plaintiffs rely upon this Court's prior decision in *Niantic, Inc. v. Glob.++*, No. 19-cv-03425-JST, 2020 WL 8620002, at *3 (N.D. Cal. Sep. 2, 2020), which found that "amending or consolidating a complaint does not give defendants a second opportunity to raise waived objections" and "[a] defendant cannot bring a second motion to dismiss challenging a claim that is 'based on substantially the same allegations in the amended complaint and the original complaint.'" *Niantic*, 2020 WL 8620002, at *3 (internal quotations omitted). Plaintiffs argue, and Defendant does not contest, that the factual allegations in the Consolidated Complaint are substantially identical to the operative complaints filed in each of the three actions prior to consolidation. Opp. at 12.

Defendant, in reply, "acknowledges that its motion was untimely as brought under Rule 12(b)(6) as to the first two filed cases in view of Rule 12(g), which requires consolidating Rule 12(b) arguments." ECF No. 205 ("Reply") at 7. However, Defendant argues that its motion is not waived under Rule 12(g), because "Rule 12(h)(2) expressly provides that even after an initial Rule 12(b) motion, the defense of failure to state a claim upon which relief can be granted may still be raised by motion for judgment on the pleadings, or at trial." *Id.*; *see also* Fed. R. Civ. P. 12(h)(2). Accordingly, Defendant requests that the Court consider the arguments in this motion under Rule 12(c).

The Court agrees with Defendant that its defense is not waived, and, in the interest of judicial economy, will consider the arguments Defendant raises in this motion. Under Federal Rule of Civil Procedure 12(h), the defense of failure to state a claim upon which relief can be granted cannot be waived, and may be raised "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). The Ninth Circuit has recognized that "[d]enying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019); *see also California Expanded Metal Prod. Co. v. Klein*, No. C18-0659JLR, 2018 WL 6065644, at *5 (W.D. Wash. Nov. 20, 2018) ("A court may treat an untimely 12(b)(6) motion as a motion for judgment on the

pleadings under Rule 12(c).”). Plaintiffs readily admit that this case is “still at an early stage” such that consideration of Defendant’s arguments under Rule 12(c) would not delay trial. *See* Opp. at 20. Forcing Defendant’s to answer the Consolidated Complaint, and then bring a separate Rule 12(c) motion would only result in a waste of resources for both the parties and the Court. Accordingly, the Court considers the merits of Defendant’s motion under Rule 12(b)(6).

**B. Mootness**

Plaintiffs also argue that Defendant’s motion is moot, in light of Plaintiffs’ service of infringement contentions under the Patent Local Rules. Mot. at 9. This Court is not convinced that the pleading requirements of Federal Rule of Civil Procedure and *Iqbal/Twombly*, as applied to a publicly filed complaint, are mooted by nonpublic disclosures of information such as infringement contentions. *See Emblaze Ltd. v. Apple Inc.*, No. C 11-01079 SBA, 2012 WL 5940782, at *6 (N.D. Cal. Nov. 27, 2012) (rejecting argument that dismissal of direct infringement claim was mooted by service of infringement contentions). In any event, Judge DeMarchi has found those infringement contentions deficient. *See* ECF No. 220. Accordingly, this Court does not find Defendant’s motion moot in light of those deficient disclosures.

**C. Failure to State a Claim Under Rule 12(b)(6)**

**1. Direct Patent Infringement**

Defendant argues that Plaintiffs’ claim for direct patent infringement should be dismissed for two closely related reasons: First, Defendant argues that Plaintiffs’ allegations in the Consolidated Complaint “cite[] to the exact same set of factual allegations to support its infringement allegations for each of the fifteen Asserted Patents, without regard to the specific and necessarily distinct claim limitations asserted in each.” Mot. at 12. Defendant argues that such generalized allegations are “too vague to state a plausible claim for infringement.” *LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*, No. 1:22-CV-1167-RP, 2023 WL 2290291, at *4 (W.D. Tex. Feb. 27, 2023), *reconsideration denied*, No. 1:22-CV-1167-RP, 2023 WL 6167604 (W.D. Tex. Sept. 21, 2023). Second, Defendant argues that the allegations of the Consolidated Complaint fail to address specific claim limitations found in claim 1 of each Asserted Patent, including “an aperture that defines the opening of the chamber,” “inlet,” “outlet,” and various

assaying steps. Mot. at 13–23. The Court addresses each argument in turn.

**a. Generalized Allegations**

Defendant first argues that the Consolidated Complaint's allegations are too generalized and vague to state a plausible claim for infringement, because Plaintiffs' recitation of the same set of collective allegations regarding the Accused Products and Services fails to identify which of those products and services infringes which of the Asserted Patents. In other words, Defendant effectively argues because each Asserted Patent must claim a distinct invention, it is implausible for *all* of the Accused Products and Services to infringe *all* fifteen Asserted Patents.

This argument is not persuasive. Defendant's argument is premised upon the fact that under 35 U.S.C § 101, multiple patents may not issue from the same invention. However, the statute "only prohibits a second patent on subject matter *identical* to an earlier patent. Thus, applicants can evade this statutory requirement by drafting claims that vary slightly from the earlier patent." *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1377 (Fed. Cir. 2003) (emphasis added). For example, the statutory prohibition against double patenting does not preclude a patentee from obtaining a second patent that claimed a broader category that included the invention in its first patent. *See Application of Vogel*, 422 F.2d 438, 441 (C.C.P.A. 1970) (finding no statutory double patenting where claims of issued patent were limited to pork and the claims of the application extend more broadly to all types of meat). Therefore, as a matter of law, there is no reason why a collective set of factual allegations, describing the same accused products, would not support a plausible claim for infringement of multiple closely related patents. Indeed, if a complaint plausibly alleges infringement of a species claim, it would logically follow that those same allegations would be sufficient to support infringement of a genus claim.

Defendant, in reply, argues that it is impossible that each of its workflows infringes all of the Asserted Patents, because its workflows are "different, each with its unique series of steps and overall purposes." Opp. at 12. As such, Defendant argues that "by their very steps not all of the accused workflows could possibly practice the claim limitations of all of the Asserted Patents," and that therefore, "it is literally not possible that all of the Accused Products and Services infringe all of the patents." *Id.* These arguments raise premature factual issues that cannot be

resolved on a motion to dismiss under Rule 12(b)(6). Defendants' assertion that each workflow is "unique" is unsupported by the allegations of the Complaint, and will need to be proven through discovery. Similarly, even if each workflow were unique, it could still plausibly be the case that the differences between the workflows are immaterial to whether they infringe the Asserted Patents. Taking the well-pled allegations of the Consolidated Complaint as true, the Court cannot conclude that, as a matter of law, it is implausible that all of the Accused Products and Services infringe all of the patents, such that dismissal of the claims would be warranted on that ground alone.

**b. "An Aperture that Defines the Opening of a Chamber," "Inlet," & "Outlet"**

Defendant next argues that the Consolidated Complaint does not contain factual allegations addressing specific claim limitations in the Asserted Patents. Specifically, Defendant argues that the Consolidated Complaint fails to identify what aspects of the Accused Products and Services correlate to the "aperture that defines the opening of a chamber," "chamber," "inlet," or "outlet" in Asserted Patents.

The Court finds the allegations of the Consolidated Complaint sufficient to address these claim limitations. As the Federal Circuit held in *Bot M8,* a patent infringement plaintiff "is not required to plead infringement on an element-by-element basis" nor "prove infringement at the pleading stage[.]" *Bot M8*, 4 F.4th at 1353–54. Defendant's position would require Plaintiffs to map out each feature of the Accused Products and Services to each claim element in the Asserted Patents, a level a specificity not required by our caselaw. The Consolidated Complaint need only contain "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* at 1354. Such allegations must only give the defendant fair notice of what the claim of infringement is. Plaintiffs' allegations have done so—the Consolidated Complaint makes clear that the "chambers" being accused are Defendant's NanoPens, with the openings to those NanoPens being the "aperture," "inlet," and "outlet," of the Asserted Patents. The very fact that Defendant is able to make specific arguments as to how these features in their Accused Products and Services fail to meet the limitations of the Asserted Patents

shows that Plaintiffs have pled sufficient facts to "place the alleged infringer on notice of what activity is being accused of infringement." *Bot M8*, 4 F.4th at 1352 (quotation omitted).

The Court also agrees with Plaintiffs that Defendant's arguments raise premature issues of claim construction or non-infringement, which would depend upon intrinsic and extrinsic evidence and which cannot properly be resolved on a motion to dismiss. For example, Defendant argues that the "single openings of the NanoPens are 'akin to the surface of a microwell,' which is expressly excluded in the patent specification from being an 'aperture'." Mot. at 17. Similarly, it argues that the Asserted Patents require the chamber have a separate "inlet" and "outlet" such that the NanoPens cannot infringe with its singular opening. *Id.* at 24. Arguments such as these are quintessential claim construction and non-infringement arguments, and are improper on a motion to dismiss, where the allegations of the complaint are taken as true and a plaintiff need only give a defendant fair notice of what its claim is.

*Bowmar Archery LLC v. VIP Veteran Innovative Prod. LLC,* No. 1:22-CV-00346-RP, 2023 WL 28438, at *3 (W.D. Tex. Jan. 3, 2023), *report and recommendation adopted,* No. 1:22-CV-346-RP, 2023 WL 2311988 (W.D. Tex. Jan. 18, 2023) is distinguishable. In that case, the defendant argued that because its accused collapsible arrowhead did not have a fully stowed position, the plaintiff could not state a plausible claim for infringement. The plaintiff then argued that the term "stowed" in the patent was a claim construction issue, because there was a plausible claim that defendant's product would infringe because the arrowhead could be *partially* stowed. The court disagreed, finding that even under the plaintiff's claim construction, the complaint "includes no factual content supporting its allegation that [defendant's] broadheads meet this claim limitation and allowing the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowmar Archery*, 2023 WL 28438, at *4. Essentially, the court in *Bowmar Archery* concluded that the claim construction dispute was immaterial, because the plaintiff had failed to state a claim for relief under either possible construction. The same is not true here; Defendant's arguments are predicated on its specific claim construction positions as to certain terms such as "aperture," "inlet," and "outlet." The Consolidated Complaint contains sufficient factual allegations to give Defendant fair notice of what Plaintiffs allege meet these

limitations. That Defendant disagrees that these features in fact meet those limitations are questions to be resolved at claim construction, summary judgment, or trial.

**c. Assaying Steps**

Finally, the Court turns to Defendant's argument that the Consolidated Complaint fails to plausibly allege how the Accused Products and Services meet every assaying step in the Asserted Patents. Here, the Court agrees with Defendant.

All of the Asserted Patents are method patents, which "are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 & n.12 (Fed. Cir. 2006). In order to adequately allege a claim for direct infringement, Plaintiffs must plausibly allege that "'all steps of a claimed method are performed by or attributable to' the defendant." *WiNet Labs LLC v. Apple Inc.*, No. 5:19-CV-02248-EJD, 2020 WL 409012, at *3 (N.D. Cal. Jan. 24, 2020) (quoting *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015)).

Plaintiffs allege that "the use of the Accused Products and Services meets every limitation of" and directly infringes at least claim 1 of each Asserted Patent. *See* ECF No. 164 ¶¶ 69, 90, 111, 132, 155, 179, 200, 222, 243, 267, 288, 312, 335, 356, 380. In support of these allegations, Plaintiffs cite to the same set of general allegations describing the Accused Products and Services—paragraphs 36–59 of the Complaint—which describe the purpose and function of the Accused Products and Services. Specifically, Plaintiffs allege that Defendant's Beacon Products are sold for use with, and used by Defendants to perform, Defendant's antibody discovery, cell line development, and cell therapy workflows. ECF No. 164 ¶¶ 41–45. Plaintiffs further allege that these workflows are performed on Defendant's OptoSelect chips which contain thousands of NanoPen chambers, *id.* ¶¶ 46–51, wherein "antibody-secreting cells ('ASCs') can be microfluidically imported onto the chip and sequestered into individual NanoPens for screening via gravity." *Id.* ¶¶ 52–53. Thus, "ASCs that secrete antigen-specific IgG can be detected using a bead-based, two-color fluorescent binding assay" and "individual cells of interest can then either be lysed in the NanoPens with nucleic acids being captured for further analysis and sequencing or can be removed from the NanoPens and exported from the chip." *Id.* ¶ 53.

Even taking these allegations as true, the Court finds that they fail to plausibly allege how use of the Accused Products and Services meets every step of the Asserted Patents. In particular, Plaintiffs allege that the Accused Products and Services infringe the Asserted Patents through their use in Defendant's antibody discovery, cell line development, and cell therapy workflows, but the Consolidated Complaint lacks sufficient specificity as to those workflows such that Defendants do not have fair notice as to how those workflows meet every limitation of the claimed methods. As an example, claim 1 of the '494 patent recites:

> 1. A method of assaying for a binding interaction between an antibody produced by a single antibody producing cell (APC) and a biomolecule, the method comprising:
>
> (a) retaining the single APC within a chamber having a volume of from 100 pL to 100 nL, a solid wall, and an aperture that defines an opening of the chamber;
>
> (b) exposing the antibody produced by the APC to a capture substrate, wherein the capture substrate is in fluid communication with the antibody produced by the APC and wherein the capture substrate is operable to bind the antibody produced by the APC to produce a bound antibody;
>
> (c) flowing a first fluid volume comprising the biomolecule into the chamber via the aperture, wherein the first fluid volume is in fluid communication with the capture substrate and the bound antibody; and
>
> (d) measuring a binding interaction between the antibody produced by the APC and the biomolecule.

Arguably, the Consolidated Complaint plausibly alleges that the Accused Products and Services, when used in Defendant's antibody discovery workflows, meet the "retaining the single APC within a chamber . . ." limitation because "antibody-secreting cells ('ASCs') can be microfluidically imported onto the chip and sequestered into individual NanoPens for screening via gravity." ECF No. 164 ¶ 52. However, nowhere in the Consolidated Complaint do Plaintiffs allege how those workflows meet the subsequent "exposing the antibody . . . to a capture substrate" or "flowing a first fluid . . ." limitations. Moreover, the Consolidated Complaint's allegations regarding sequestering ASCs, even viewed in a light most favorable to Plaintiffs, only plausibly allege these steps are accomplished in Defendant's antibody discovery workflows. The Consolidated Complaint is utterly devoid of any factual allegations regarding the steps of

Defendant's cell line development or cell therapy workflows, such that Defendant's would have fair notice as to how these workflows infringe upon the Asserted Patents.

Plaintiffs' allegations as to the '408 patent family fare even worse. As noted above, the '408 patent family is directed to methods of culturing cells. The Consolidated Complaint only includes one allegation regarding cell culturing, wherein Plaintiffs assert that Defendant's Culture Station system is able to culture cells for use in parallel with the Beacon Products. Nowhere in this allegation is there any identification of how the Culture Station's cell culturing processes meet the limitations of the '408 patent family claims, as required to plausibly allege direct infringement of those claims. Nor does the Consolidated Complaint allege which workflows involve cell culturing or use of the Culture Station. At best, Plaintiffs have alleged the sale of an apparatus that is capable of infringing use, but that is insufficient to plead a claim for direct infringement of the Asserted Patents as method patents.

Numerous courts have found such allegations inadequate to plausibly allege a claim for direct patent infringement. In *Atlas IP LLC v. Pac. Gas & Elec. Co.*, the court found that "simply reciting some of the elements of a representative claim and then describing generally how an accused product operates, without specifically tying the operation to any asserted claim or addressing all of the claim requirements, is insufficient." No. 15-CV-05469-EDL, 2016 WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016). There, the court found that the complaint, which "recites only some of the elements of the sole asserted claim, and provides only a threadbare description of the alleged abilities of the accused device" failed to state a plausible claim for relief. Similarly, in *LS Cloud Storage Techs.*, the court dismissed a claim for patent infringement where the plaintiff failed to identify how the accused product met part of the claimed process, finding that "[a]s a result, Defendants lack notice as to what meets the limitations of that claim." 2023 WL 2290291, at * 4. Here, Plaintiffs have, at best, alleged that Defendant's antibody discovery workflows, when performed using the Beacon Products, infringes part of claim 1 in each Asserted Patent. By failing to identify what steps in those workflows meet the other limitations in the claimed methods, however, Plaintiffs have failed to state a plausible claim for patent infringement.

Plaintiffs' reliance on *Dental Monitoring SAS v. Align Tech., Inc.*, No. C 22-07335 WHA,

2023 WL 4297570, at *1 (N.D. Cal. June 30, 2023) does not change the result. There, the court found that the plaintiff had plausibly pled a claim for patent infringement where the complaint "provides a step-by-step recitation of how the accused platform functions" and then "proceeds to zero in on one claim from each asserted patent and explain, with cross references, how each of the limitations is met using the accused platform." *Id.* Critically, while Plaintiffs' allegations do "zero in on one claim from each asserted patent," Plaintiffs did not "provide[] a step-by-step recitation of how [the Accused Products and Services] function[]." *Id.* Instead, the Consolidated Complaint only contains generalized allegations as to the nature of Defendant's Accused Products and Services, with at best partial descriptions of certain steps in Defendant's antibody discovery workflows. And rather than cross-referencing "step-by-step recitations," Plaintiffs merely refer to those general allegations in totality, to support conclusory allegations that each limitation of the Asserted Patents is met. The Consolidated Complaint thus fails to "*explain*, with cross references, *how each of the limitations is met* using the accused platform." *Id.* (emphasis added). To the extent that Plaintiffs rely upon *Dental Monitoring* as the standard for a well-pled claim for patent infringement, they fail to meet that standard.

For the foregoing reasons, the Court grants Defendant's motion to dismiss as to Plaintiffs' claim for direct patent infringement.

**2. Indirect Patent Infringement**

Defendants argue that Plaintiffs' claims for indirect infringement should be dismissed, because they have failed to plausibly allege claims for direct infringement. "Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004). Therefore, when a plaintiff fails to adequately allege direct infringement by a third party, it has also failed to state a claim for indirect patent infringement. *See e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-CV-05790-JST, 2016 WL 4427209, at *5 (N.D. Cal. Aug. 22, 2016).

As discussed above, the Court finds that Plaintiffs have failed to allege a plausible claim

United States District Court
Northern District of California

for direct patent infringement as to Defendant. For the same reasons, Plaintiffs have also failed to plausibly allege that any of Defendant's customers engaged in direct patent infringement using the Accused Products and Services, because they have failed to identify how those Accused Products and Services meet every limitation of the claimed methods. Because the Consolidated Complaint fails to allege direct patent infringement by any third party, it fails to allege a necessary element for indirect patent infringement by Defendant. Thus, the Court grants Defendant's motion to dismiss as to Plaintiffs' claims for indirect patent infringement.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss. Because "[t]he liberal pleading requirements of the Federal Rules encourage the grant of leave to amend unless such amendment would not cure the flaw in the pleadings," *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1327 (Fed. Cir. 1998) (citation omitted), the Court grants leave to amend. Plaintiffs may file an amended complaint within the next 21 days solely to cure the deficiencies identified in this order.

**IT IS SO ORDERED.**

Dated: June 20, 2024

JON S. TIGAR
United States District Judge