UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABCELLERA BIOLOGICS INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BRUKER CELLULAR ANALYSIS, INC.,<br><br>Defendant. | Case No. 20-cv-08624-JST (VKD)<br><br>**ORDER RE JUNE 17, 2024 DISCOVERY DISPUTE RE DEFENDANT'S INTERROGATORY NO. 1**<br><br>Re: Dkt. No. 250 |

AbCellera Biologics, Inc. ("AbCellera") and The University of British Columbia ("UBC") (collectively, "AbCellera") and defendant Bruker Cellular ("Bruker Cellular") (formerly known as Berkeley Lights, Inc.) ask the Court to resolve their dispute concerning the sufficiency of AbCellera's response to Interrogatory No. 1. Dkt. No. 250. The Court finds this dispute suitable for resolution without oral argument. Civil L.R. 7-1(b).

For the reasons explained below, the Court requires AbCellera to amend its answer to Interrogatory No. 1 in some respects.

## I. BACKGROUND

In these consolidated actions, AbCellera alleges that Bruker Cellular infringes several patents relating to the use of microfluidic devices for assays that can be applied to the discovery of antibodies for the treatment of disease and methods for isolating antibody sequences of interest.[1]

---

[1] According to the Second Amended Consolidated Complaint, AbCellera asserts fifteen patents: United States Patent Nos. 10,107,812 ("the '812 patent"), 10,274,494 ("the '494 patent"), 10,466,241 ("the '241 patent"), 10,578,618 ("the '618 patent"), 10,697,962 ("the '962 patent"), 10,775,376 ("the '376 patent"), 10,775,377 ("the '377 patent"), 10,775,378 ("the '378 patent"), 10,718,768 ("the '768 patent"), 10,746,737 ("the '737 patent"), and 10,753,933 ("the '933 patent") (collectively, "the '812 patent family"), and United States Patent Nos. 10,087,408 ("the '408 patent"), 10,421,936 ("the '936 patent"), 10,704,018 ("the '018 patent"), and 10,738,270 ("the '270 patent") (collectively, "the '408 patent family"). Dkt. No. 254 ¶¶ 20–35; *see* Dkt. No. 252 at

*See* Dkt. No. 254 ¶ 19. Bruker Cellular denies the allegations of infringement and contends that all of the asserted patents are invalid. *See* Dkt. Nos. 106, 204.

As relevant to this dispute, Bruker Cellular's Interrogatory No. 1 to AbCellera asks:

> Describe in detail the dates and circumstances of the conception and actual and/or constructive reduction to practice for the inventions claimed or disclosed, or that You contend are claimed or disclosed, in the Asserted Patents, including but not limited to identifying all Documents, materials and/or witnesses that AbCellera contend(s) corroborate or support the dates and circumstances identified or that contradict or may contradict AbCellera contentions as to such dates and circumstances.

Dkt. No. 250 at 1. AbCellera organizes its response to this interrogatory by "patent family"—i.e., the '408 patent family and the '962 patent family.[2] For each family, AbCellera describes in narrative form the named inventors' work linked to multiple different dates. In addition, AbCellera cites to many Bates numbered documents that corroborate the dates and circumstances of the inventions. *See* Dkt. No. 250-1 at 16-25.

Bruker Cellular takes issue with AbCellera's response on two grounds. First, Bruker Cellular says that because AbCellera does not provide claim-specific responses to Interrogatory No. 1, Bruker Cellular cannot discern which conception and reduction to practice dates apply to each asserted claim. Dkt. No. 250 at 2. Second, Bruker Cellular complains that because AbCellera cites to numerous corroborating documents, some of which are hundreds of pages long, without identifying specific pages within those documents, AbCellera does not adequately disclose the corroborating evidence called for by Interrogatory No. 1. *Id.* at 2-3.

**II.   DISCUSSION**

    **A.   Whether a Claim-Specific Response Is Required**

The parties do not disagree that discovery of the dates of conception and reduction to practice of the inventions claimed in the asserted patents, and of the contributions of each

---

2. The docket indicates that, pursuant to a case management order, plaintiffs have identified 50 claims from seven patents to assert against Bruker Cellular. *See* Dkt. Nos. 70, 192 at 2, 209 at 8; *see also* Dkt. Nos. 218, 238 (referring to '408, '936, '270, '962, '933, '378, and '376 patents).

[2] Elsewhere referred to as the '812 patent family.

2

inventor, is relevant to Bruker Cellular's invalidity defenses. *Id.* at 1. They disagree about whether AbCellera's response fairly addresses the request for information in Interrogatory No. 1.

As a general matter, questions of prior art invalidity and questions of inventorship must be resolved on a claim-by-claim basis. *See Altoona Publix Theatres v. Am. Tri-Ergon Corp.*, 294 U.S. 477, 487 (1935) ("[E]ach claim [of a patent] must stand or fall, as itself sufficiently defining invention, independently of the others"; critiquing lower court's treatment of a patent "as though it were a combination of five distinct elements, . . . although nowhere in the patent is any such combination claimed"); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008) ("Although § 102 refers to 'the invention' generally, the anticipation inquiry proceeds on a claim-by-claim basis."); *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1381 (Fed. Cir. 2004) ("Because co-inventors need not contribute to the subject matter of every claim of the patent, inventorship is determined on a claim-by-claim basis."). Thus, to the extent AbCellera advocates a date of invention for an asserted claim that differs from the application date (or from the priority date disclosed pursuant to Patent Local Rule 3-1(f)), Bruker Cellular needs to know, for each such claim, the dates and circumstances of the conception and reduction to practice that supports that date of invention, as well as which inventors contributed to the invention claimed, so that it can prepare its invalidity and inventorship defenses. However, this observation does not dictate the resolution of this discovery dispute.

As noted above, Interrogatory No. 1 asks for a description of the dates and circumstances of the conception and reduction to practice for "the inventions claimed or disclosed . . . in the [a]sserted [p]atents." In this interrogatory, Bruker Cellular does not expressly demand a separate response for each asserted claim, although it certainly could have. And while Bruker Cellular is correct that each claim of a patent must be considered a distinct invention, it is not true that every invention disclosed in a patent specification is or must be claimed. Here, the interrogatory refers to inventions "claimed or disclosed" in the asserted patents, suggesting that at least part of this interrogatory seeks information that is *not* claim-specific. Complicating matters is the fact that courts and litigants sometimes use the term "invention" to refer to the *innovative work* an inventor did, rather than to the *legal description* of that work in a patent. For example, in *University of*

3

*Pittsburgh v. Hedrick*, the Federal Circuit discussed evidence of conception with respect to an "invention," which the court repeatedly described in singular terms in connection with four distinct claims:

> Conception is the touchstone of inventorship under 35 U.S.C. § 116. It is "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Burroughs Wellcome Co. v. Barr Labs., Inc.,* 40 F.3d 1223, 1228 (Fed.Cir.1994) (quoting *Hybritech,* 802 F.2d at 1376). The test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention; the inventor must prove his conception by corroborating evidence, preferably by showing contemporaneous disclosures. *Burroughs,* 40 F.3d at 1228. Such corroborating evidence is taken as a whole; *conception of an entire invention* need not be reflected in a single source. *Price v. Symsek,* 988 F.2d 1187, 1196 (Fed.Cir.1993). . . .
>
> The district court correctly applied this law, finding clear and convincing evidence that Katz and Llull conceived of *each claim of the invention* through contemporaneous corroboration before the arrival of Hedrick at Pittsburgh in July 1997. It found that they had recorded that their cells could transdifferentiate into multiple mesodermal lineages including bone, cartilage, fat and muscle in laboratory notebooks, letters, a January 1997 invention disclosure for their Auto–Cell Separator, the February 1997 document "What's So Great About Fat?," and the inference that Katz would have only conducted his muscle induction experiment on the cells to confirm his belief that they could differentiate into muscle instead of adipocytes. They had recorded that their isolated cells transdifferentiated into cells resembling a nerve cell in April 1997, as was recorded in a letter to a colleague requesting his help with electrophysiological techniques. While not scientifically certain that they were observing a nerve cell, they did have the firm and definite idea that nerve cells were present, and ordered further confirming tests. Claims 1, 2, 3, and 4 require an isolated adipose-derived stem cell that can differentiate into two or more mesodermal phenotypes, including specifically a fat cell, a bone cell, a cartilage cell, a nerve cell, a muscle cell, or a combination of these. Thus, *the entire invention as described by claims 1, 2, 3, and 4* had been conceived and corroborated through these disclosures.

573 F.3d 1290, 1297–98 (Fed. Cir. 2009) (emphasis added); *see also id*. at 1299 (describing reduction to practice of a singular "invention").

So, at least initially, AbCellera might have reasonably understood Interrogatory No. 1 as

1  requesting "dates and circumstances" of the named inventors' work in conceiving and reducing to
2  practice inventions that were eventually claimed in the asserted patents, and responded to the
3  interrogatory accordingly.  However, once Bruker Cellular clarified that Interrogatory No. 1 uses
4  the term "inventions claimed" to mean "for each asserted claim, the invention claimed in that
5  claim," it was unreasonable for AbCellera to insist on a different reading of this interrogatory.

6        As a practical matter, the problem with AbCellera's current response to Interrogatory No. 1
7  is that it is difficult to tell which date or dates of conception and reduction to practice apply to
8  specific asserted claims.  AbCellera must amend its interrogatory response to make this clear.
9  Moreover, it must identify, as specifically as possible, a single date of conception and a single date
10 of reduction to practice for each asserted claim.  AbCellera should be well-equipped to provide
11 this information in the form of an interrogatory response.  Presumably, it has already produced
12 "[a]ll documents evidencing the conception, reduction to practice, design, and development of
13 each claimed invention, which were created on or before the date of application for the patent in
14 suit or the priority date identified pursuant to Patent L.R. 3-1(f), whichever is earlier," as required
15 by Patent Local Rule 3-2(b).  *See, e.g., Boston Scientific Corp. v. Micrus Corp.,* No. C 04-04072-
16 JW (RS), 2007 WL 174475, at *1-*2 (N.D. Cal. Jan. 22, 2007) (ordering patentee to state its
17 position regarding dates of conception and reduction to practice in response to interrogatories
18 directed to "each alleged invention" claimed in the patents in suit).  However, AbCellera need not
19 prepare a separate answer for each asserted claim.  If the answer (e.g., dates and circumstances) is
20 the same for multiple claims and multiple patents, AbCellera may so state and may group asserted
21 claims and patents accordingly.  Additionally, AbCellera need not describe the dates and
22 circumstances of any invention that is disclosed but not claimed in an asserted patent or not
23 asserted against Bruker Cellular.

24     **B.**    **Whether the Response Properly Identifies Corroborating Evidence**
25     The parties disagree about whether AbCellera has sufficiently identified evidence
26 corroborating its description of the conception and reduction to practice of the claimed inventions.
27 *See* Dkt. No. 250 at 2-3, 5-6.  In answering this part of Interrogatory No. 1, AbCellera cited many
28 documents produced in discovery and invoked Rule 33(d) of the Federal Rules of Civil Procedure.

5

*See* Dkt. No. 250-1 at 23-24.  Rule 33(d) permits a party to respond to an interrogatory by referring to documents only if "the burden of deriving or ascertaining the answer will be substantially the same for either party" and if the responding party "specif[ies] the records that must be reviewed, in sufficient detail to enable the [requesting] party to locate and identify them as readily as the responding party could."  Fed. R. Civ. P. 33(d)(1).

AbCellera argues that it has provided many pinpoint citations to documents identifying the corroborating evidence responsive to Interrogatory No. 1, but it does not deny that it has also cited to several documents or pages ranges within documents that are not "pinpoint" cites but instead range from 20 pages to 267 pages.  *See* Dkt. No. 250 at 3 (citing examples), 5 (referring to "Bruker's select examples").  There may be circumstances where a 20-page range is sufficiently specific under Rule 33(d).  However, it is difficult to imagine any circumstance in which citing to the entirety of a 200+ page lab notebook or thesis satisfies the requirements of the Rule as an adequate response to this interrogatory.

AbCellera must review its references to documents identified as corroborating evidence to ensure that its citations indicate where the corroborating evidence within a document may be found and must amend its response to Interrogatory No. 1 accordingly.

### III. CONCLUSION

AbCellera must amend its response to Interrogatory No. 1, as directed above.  The amended response must be served no later than **August 15, 2024**, unless the parties agree otherwise.

**IT IS SO ORDERED.**

Dated: July 18, 2024

Virginia K. DeMarchi
United States Magistrate Judge