UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABCELLERA BIOLOGICS INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BRUKER CELLULAR ANALYSIS,<br><br>Defendant. | Case No. 20-cv-08624-JST (VKD)<br><br>**ORDER RE APRIL 14, 2025 DISCOVERY DISPUTE RE KADIA AND MUNCH DEPOSITIONS**<br><br>Re: Dkt. No. 334 |

AbCellera Biologics, Inc. ("AbCellera") and The University of British Columbia ("UBC") (collectively, "AbCellera") and defendant Bruker Cellular Analysis, Inc. ("Bruker Cellular") ask the Court to resolve their dispute regarding AbCellera's requests for depositions of Siddhartha Kadia and Mark Munch. Dkt. No. 334.[1] The Court finds this dispute suitable for resolution without oral argument. Civil L.R. 7-1(b). For the reasons explained below, the Court denies AbCellera's requests for relief.

## I.  BACKGROUND

As explained by the parties, Siddartha Kadia is the former CEO of PhenomeX. Dkt. No. 334 at 1. According to Bruker Cellular, PhenomeX was the successor to the original defendant in this action, Berkeley Lights. *Id.* at 4. Bruker Corporation later acquired PhenomeX pursuant to an August 2023 merger agreement during the pendency of this litigation, and the surviving corporation became current defendant Bruker Cellular. *Id.* at 2, 4, Ex. 2.

Dr. Kadia, on behalf of PhenomeX, participated in at least one communication or meeting with a representative of AbCellera in August 2023 to discuss a possible resolution of this action.

---

[1] The Court defers ruling on AbCellera's associated sealing motion (Dkt. No. 331), until the period for briefing on that motion is closed. *See* Civil L.R. 79-5. However, information disclosed in this order reflects matters for which the Court has determined that no sealing is warranted.

1  *Id.* at 2, 5.  He also signed the August 2023 merger agreement with Bruker Corporation.  *Id.* at 2.

2  Dr. Kadia is no longer affiliated with any party to this action but is currently the CEO of an

3  unrelated company.  Dr. Kadia resides and works outside of the Northern District of California.

4  *Id.* at 4.

5        Mark Munch is the president of current defendant Bruker Cellular, as well as the president

6  of its corporate parent.  *Id.* at 1, 4.  Dr. Munch signed the August 2023 merger agreement on

7  behalf of Bruker Corporation.  *Id.* at 2, Ex. 2.

8        AbCellera first requested Dr. Kadia's deposition on January 23, 2025.  *Id.* at 1, 3.  Bruker

9  Cellular's counsel advised that they also represent Dr. Kadia for purposes of AbCellera's request

10 but objected to his deposition on multiple grounds, including that he is an "apex" witness with no

11 unique, relevant knowledge.  Apparently, Bruker Cellular's counsel did not advise AbCellera until

12 recently that they are not authorized to accept service of a subpoena on Dr. Kadia's behalf.  *See id.*

13 at 3, 4 & n.3.

14       AbCellera first requested Dr. Munch's deposition on February 25, 2025.  *Id.* at 1, 4.

15 Bruker Cellular objected to this deposition on the ground that Dr. Munch is an "apex" witness

16 with no unique, relevant knowledge.  *Id.* at 1, 4.

## II.     LEGAL STANDARD

Rule 30 of the Federal Rules of Civil Procedure permits "[a] party . . . [to] depose any person, including a party, without leave of court . . . ."  Fed. R. Civ. P. 30(a)(1).  If the party to be deposed is a corporation, a notice of deposition may identify a specific officer, director, or managing agent to testify.  Fed. R. Civ. P. 30(b)(1); *see, e.g., Elasticsearch, Inc. v. GmbH*, No. 19-cv-05553-YGR (AGT), 2021 WL 1753796, at *1 (N.D. Cal. May 4, 2021).  With respect to a non-party, deposition discovery may be obtained by serving a subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 45(a)(1).

The scope of discovery permitted under Rule 30, and by subpoena under Rule 45, is governed by Rule 26.  *See* Fed. R. Civ. P. 45, advisory committee notes to 1970 amendment (noting that "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules").  That is, a party may obtain discovery of any matter that is

2

relevant to a claim or defense and that is "proportional to the needs of case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Under Rule 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding a deposition, or limiting its scope. Fed. R. Civ. P. 26(c)(1). The party seeking a protective order bears the burden of showing good cause for the order by "demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).

A party's request for the deposition of a high-level executive of a corporation—a so-called "apex" deposition—poses a risk of abuse or harassment. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). A court may, in its discretion, disallow or limit such a deposition if the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). In determining whether to permit or limit an apex deposition, a court should consider (1) whether the deponent has unique first-hand knowledge of the facts at issue in the case, and (2) whether the party seeking the deposition has exhausted other less intrusive means to obtain the discovery. *Apple*, 282 F.R.D. at 263.

### III.    DISCUSSION

The Court separately addresses AbCellera's requests for the depositions of Dr. Kadia and Dr. Munch.

#### A.    Dr. Kadia

Because Dr. Kadia is a non-party, AbCellera may only obtain his testimony pursuant to a valid Rule 45 subpoena; it may not rely on Rule 30. Thus, to the extent AbCellera seeks a Court order directing Bruker Cellular to produce Dr. Kadia for deposition, *see* Dkt. No. 334 at 1, this request is denied.

Apparently, AbCellera attempted to subpoena Dr. Kadia for deposition. *See id.* at 4. That

subpoena has not been provided to the Court.  However, if Dr. Kadia resides outside of the Northern District of California, as Bruker Cellular represents, the subpoena would have to designate a place of compliance in accordance with Rule 45(c)(1), and disputes regarding Dr. Kadia's compliance with such subpoena would need to be brought in the district of compliance, unless transferred here.  *See* Fed. R. Civ. P. 45(d)(3), (f).

As AbCellera has not presented any grounds on which the Court could properly order Dr. Kadia to provide deposition testimony, or order Bruker Cellular to produce him for a deposition, the Court denies AbCellera's request for relief as to Dr. Kadia.

### B. Dr. Munch

Unlike Dr. Kadia, Dr. Munch's deposition may be noticed under Rule 30(b)(1), as he is an officer of defendant Bruker Cellular.  There is no dispute that Dr. Munch is an "apex" witness. The question is whether he has unique first-hand knowledge of any facts at issue in the case, and if so, whether AbCellera has exhausted less intrusive means to obtain that information.

AbCellera explains that Dr. Munch signed the August 2023 merger agreement with PhenomeX and was directly involved in that transaction.  *Id.* at 2.  According to AbCellera, after the merger, Dr. Munch was "the head of the business entity that is directly responsible for manufacturing and selling the accused Beacon system, which is at the center of this case."  *Id.*  In addition, AbCellera says that Dr. Munch is knowledgeable about Bruker Cellular's employment of Anupam Singhal and the company's decision to continue the allegedly infringing activity after receiving AbCellera's first notice of infringement.  *Id.*  AbCellera argues that it deposed Bruker Cellular's corporate representative about "this topic"[2] but found that the representative had no relevant knowledge.  *Id.* at 2-3.

Bruker Cellular responds that Dr. Munch has had "almost no direct involvement" in any issues relevant to this action.  *Id.* at 6.  While Bruker Cellular acknowledges Dr. Munch's role in August 2023 transaction with PhenomeX, it argues that the negotiations involve "common-interest privileged information" or are "otherwise clear" from the discovery already obtained.  *Id.*  Finally,

---

[2] It is not clear what the subject matter of the "topic" is to which AbCellera refers.

4

Bruker Cellular observes that Dr. Singhal left Bruker Cellular's employ in March 2023, before Bruker Cellular began diligence on PhenomeX, and AbCellera's first notice of infringement came in 2019, four years before Bruker Cellular became involved.  *Id.*

AbCellera does not explain how Dr. Munch's anticipated testimony on any of the matters identified above is relevant to any issue in the case.  First, as to the Bruker Cellular/PhenomeX transaction, it is not clear why AbCellera believes the negotiations[3] with PhenomeX are relevant to any issue in the case.  To the extent, AbCellera suggests that Bruker Cellular and PhenomeX must have discussed the asserted patents and this litigation as part of the negotiations, *see* Dkt. No. 334 at 2 (discussing relevance of *Dr. Kadia's* testimony), it is not self-evident that such discussions have any bearing on any fact at issue, and AbCellera provides no authority or argument that support such a conclusion.  Second, while Dr. Munch's information about a response to AbCellera's notice of infringement might well yield information relevant to the question of willfulness, Bruker Cellular represents that he has no such information, given the timing of AbCellera's first notice of infringement.  AbCellera does not respond to this point.  Third, AbCellera does not explain how Dr. Singhal's tenure with the company is relevant to any issue in the case, and it does not respond to Bruker Cellular's assertion that Dr. Singhal left the company before months before the transaction with PhenomeX.

As AbCellera has not shown that Dr. Munch has unique first-hand knowledge of any facts at issue in the case, the Court denies AbCellera's request for his deposition and grants Bruker Cellular's request for a protective order.

**IT IS SO ORDERED.**

Dated: April 16, 2025

Virginia K. DeMarchi
United States Magistrate Judge

---

[3] Bruker Cellular provides no basis for the Court to conclude that the negotiations are privileged.  There is no "common interest privilege."  The "common interest" doctrine is an exception to ordinary waiver rules that comes into play only if a privilege or protection already covers the communications in question.  *See, e.g., RJ v. Cigna Health & Life Ins. Co.*, No. 20-cv-02255-EJD (VKD), 2023 WL 187565, at *1 (N.D. Cal. Jan. 13, 2023) (discussing operation of doctrine).  Bruker Cellular identifies no such underlying privilege or protection.

5