UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABCELLERA BIOLOGICS INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BRUKER CELLULAR ANALYSIS, INC.,<br><br>Defendant. | Case No.  20-cv-08624-JST (VKD)<br><br>**REDACTED**<br><br>**ORDER RE APRIL 28, 2025<br>DISCOVERY DISPUTE LETTER**<br><br>Re: Dkt. No. 343 |

Plaintiffs AbCellera Biologics, Inc. ("AbCellera") and The University of British Columbia ("UBC") (collectively, "plaintiffs") and defendant Bruker Cellular Analysis, Inc. ("Bruker Cellular") ask the Court to resolve their dispute regarding information Bruker Cellular seeks regarding an ███████████████████████████. Dkt. No. 343.[1]  The Court finds this dispute suitable for resolution without oral argument.  Civil L.R. 7-1(b).

For the reasons explained below, the Court concludes that Bruker Cellular was not able to obtain relevant testimony from AbCellera's witnesses about the resolution of the ██████. However, the Court is unable to resolve plaintiffs' privilege objections regarding this testimony on the current record, and orders further proceedings on this point.

---

[1] Bruker Cellular moves to seal portions of the discovery dispute letter and Exhibits 4-10 on the ground that plaintiffs claim the information is confidential.  Dkt. No. 344.  Plaintiffs state that the subject information discloses highly confidential financial and business information, the disclosure of which would cause competitive harm.  Dkt. No. 350.  As the present sealing motion relates to a discovery matter, the good cause standard applies.  *Ctr. for Auto Safety v. Chrysler Group, LLC,* 809 F.3d 1092, 1098-99 (9th Cir.), *cert. denied sub nom FCA U.S. LLC v. Ctr. for Auto Safety*, 137 S. Ct. 38 (2016); *Kamakana v. City & Cnty. of Honolulu,* 447 F.3d 1172, 1179-80 (9th Cir. 2006).  Good cause appearing, the Court grants the sealing motion.  Redacted portions of the discovery letter brief (Dkt. No. 344) and Exhibits 4-10 (Dkt. Nos. 344-3 through 344-9) shall remain under seal.

United States District Court<br>Northern District of California

United States District Court
Northern District of California

## I.     BACKGROUND

As alleged in the operative complaint, AbCellera has an exclusive license from UBC to all of the asserted patents.  Dkt. No. 254 ¶¶ 20-34.  The UBC-AbCellera license has been produced in discovery and requires AbCellera to pay royalties on a quarterly basis to UBC.  Dkt. No. 343 at 1. The license also permits UBC to ███████████████████████████████████.  *Id.*

In October 2023, while this litigation was pending, UBC completed an ████ of AbCellera's records, the results of which are documented in an ████████.  *Id.* at 2.  The ████████, which has been produced in discovery, reflects a ████████████████████████ ████████████████.  *Id.* at 2, 5, Ex. 5.  Apparently, AbCellera disputed the conclusions reached in the ████████.  *Id.* at 2.  Bruker Cellular seeks deposition testimony about the resolution of this dispute.  *Id.* at 2, 4.  Plaintiffs object that Bruker Cellular's request for deposition testimony is untimely and seeks information that is not relevant.  *Id.* at 4, 6.  They advise that several witnesses have already testified about the ████ and argue that no further testimony should be permitted.  *Id.* at 5-6.  In addition, plaintiffs object to any effort by Bruker Cellular to discover their communications regarding "litigation and settlement strategies."  *Id.* at 6.

## II.    DISCUSSION

The Court considers each of plaintiffs' objections to the testimony Bruker Cellular seeks.

### A.     Timeliness

Plaintiffs object that Bruker Cellular did not timely seek deposition testimony regarding resolution of the ████████.  According to plaintiffs, Bruker Cellular had ample opportunity to ask plaintiffs' witnesses questions about the ████ before the close of fact discovery but chose not to inquire about whether and how the ████████ was resolved.  *Id.* at 4, 5-6.  Bruker Cellular responds that it did not learn of the existence of the ████ or the ████ until March 25, 2025, during the deposition of UBC's Managing Director of Innovation UBC, and that the ████ was not produced until April 3, 2025, during the deposition of AbCellera's CFO.  *Id.* at 2.  Bruker Cellular contends that plaintiffs' counsel repeatedly instructed witnesses not to answer certain questions about the ████ and the ████████, invoking the "common interest" doctrine, and that it did not learn until shortly before filing the joint discovery dispute letter that there are no written

2

communications between UBC and AbCellera regarding the ████████, but only oral communications. *Id.*

The Court has reviewed the deposition transcripts of the following witnesses: (1) Dr. John-Paul Heale, UBC's Managing Director of Innovation UBC, (2) Andrew Booth, AbCellera's CFO, (3) Dr. Carl Hansen, AbCellera's CEO, and (4) Dr. Brett Sharp, UBC's Associate Director of Technology Transfer. *Id.*, Exs. 4, 6, 7, 9. The transcripts reflect that Bruker Cellular did not learn of the ████ until March 25, 2025 and was prevented from questioning Dr. Heale about it. *See id.*, Ex. 4 (Heale dep. at 37:7-40:25, 44:16-22). Bruker Cellular did not obtain a copy of the ████ until April 3, 2025. *See id.*, Ex. 6 (Booth dep. at 183:10). While Bruker Cellular's counsel did question Mr. Booth about the ████ itself, counsel's opportunity for questioning was limited by the fact that the ████ was not disclosed until late in Mr. Booth's deposition. *See id.*, Ex. 6 (Booth dep. at 183:10-192:20). After disclosing the ████ on April 3, 2025, plaintiffs apparently conducted an exhaustive search for any ████ written communications regarding the ████ and did not identify any non-privileged documents. *Id.* at 5. Plaintiffs provided their final privilege log documenting their position on the ████ documents they found on April 24, 2025, three days after the close of fact discovery. *Id.* at 2, Ex. 10.

The parties filed this discovery dispute letter on April 28, 2025, four days after disclosure of the final privilege log, and the last permissible date for filing discovery disputes. *See* Civil L.R. 37-3. In these circumstances, the Court concludes that Bruker Cellular's request for relief is not untimely.

### B. Relevance

Bruker Cellular argues that the further deposition testimony it seeks is relevant to the question of damages. Specifically, Bruker Cellular argues that the royalty rate structure in the UBC-AbCellera license, as well as the royalties actually paid under that license, inform how the patented technology is valued, and if UBC and AbCellera disagreed about ████████ ████, the resolution of that disagreement bears on consideration of this important *Georgia-Pacific* factor. Dkt. No. 343 at 4.

Plaintiffs appear to agree that the royalty rate structure of the UBC-AbCellera license and

3

United States District Court
Northern District of California

1  the payments made pursuant to the license are relevant to the parties' damages calculations.  *Id.* at

2  6.  However, they disagree that the results of the ▮▮▮ have any bearing on how the asserted

3  patents are valued.  *Id.*  Specifically, relying on the deposition testimony of Drs. Heale and Sharp,

4  plaintiffs assert that "nothing has changed about how AbCellera pays UBC under the license

5  ▮▮▮▮" and that "▮▮▮▮▮▮▮▮▮

6  ▮▮▮▮▮"  *Id.*

7       The Court agrees with Bruker Cellular that information concerning how royalties for an

8  exclusive license to the asserted patents are to be calculated is relevant the question of

9  infringement damages.  *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120

10  (S.D.N.Y. 1970) (among several factors relevant to determination of a reasonable royalty, the first

11  factor is: "The royalties received by the patentee for the licensing of the patent in suit, proving or

12  tending to prove an established royalty.").  It is not clear whether UBC and AbCellera *agree* about

13  the royalty rate structure and how it applies to AbCellera's payment obligations—the deposition

14  testimony indicates only that AbCellera ▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮.  If the plaintiffs disagree about how the value of the

16  asserted patents is to be captured under the royalty terms of the license, or if they have reached a

17  ▮▮▮▮ understanding on that point that has not been disclosed to Bruker Cellular, such

18  information may bear on the calculation of reasonable royalty damages.

19       For this reason, the Court concludes that Bruker Cellular has shown that the discovery it

20  seeks is relevant to the parties' respective damages calculations, including at least the following

21  matters:

22       1.  Have UBC and AbCellera resolved their dispute regarding the ▮▮▮▮▮ or do

23            they continue to disagree?

24       2.  If they have resolved their dispute, how has it been resolved?

25       3.  What is their agreed interpretation of the royalty terms in the license, or if they

26            disagree, what are their respective interpretations of those terms?

27  **C.    Opportunity to Question about ▮▮▮▮**

28  The parties disagree about whether Bruker Cellular has already had a reasonable

4

opportunity to question UBC's and AbCellera's witnesses about whether and how the ███

███ was resolved.  Plaintiffs say that Bruker Cellular questioned all four witnesses about the

███ and they all "answered freely."  Dkt. No. 343 at 5.  With respect to the ███████,

specifically, plaintiffs assert that both Mr. Booth and Dr. Sharp responded to questions on this

subject and that Bruker Cellular simply did not ask about the information it says it now requires.

*Id.* at 5-6.  Bruker Cellular responds that plaintiffs' counsel repeatedly instructed the witnesses not

to answer questions about the ███████ and that as a result it has been unable to obtain the

information it requires.  *Id.* at 3-4.

　　　The Court has carefully reviewed the deposition testimony identified by the parties.  As to

Dr. Heale, Mr. Booth, and Dr. Hansen, the Court agrees with Bruker Cellular that it was

effectively prevented from questioning these witnesses regarding the ███████ and how the

dispute between UBC and AbCellera about the ████ was resolved.  The Court summarizes its

review of the testimony as follows:

　　　<u>UBC's Dr. Heale</u>:  At the time of Dr. Heale's deposition, plaintiffs had not yet produced

the ██████ to Bruker Cellular, so it would not have been possible for Bruker Cellular to

question Dr. Heale fully about the ██████ contents.  Moreover, while Dr. Heale did answer

questions about whether AbCellera made ████████████████████, plaintiffs'

counsel instructed Dr. Heale not to answer any questions about the ██████, asserting unspecified

"privilege" objections.  *See id.*, Ex. 4 (Heale depo. at 37:9-40:25, 44:16-45:20).  Other testimony

indicates that Dr. Heale was among a handful of people present at a meeting between UBC and

AbCellera to discuss the ██████, suggesting that he likely has personal knowledge of those

discussions and possibly other discussions on the same topic.  *See id.*, Ex. 9 (Sharp dep. at 126:13-

127:22, 130:3-14, 146:8-21).

　　　<u>AbCellera's Mr. Booth</u>:  As the Court has already noted, plaintiffs did not produce the

██████ to Bruker Cellular until late in Mr. Booth's deposition.  Before the ███ was

provided, Mr. Booth was questioned about whether and how AbCellera responded to the ███

███.  He testified that AbCellera disagreed with the ██████ conclusions and stated that the

parties "████████████████████████████████████████

1  ██████████" and "████████████████████████████████████████" *Id.*, Ex. 6 (Booth

2  dep. at 56:2-12).  However, following plaintiffs' counsel's admonitions regarding "common

3  interest privileged communications," Mr. Booth declined to answer questions about what in

4  particular about the license UBC and AbCellera were seeking to clarify, although he seemed to say

5  that UBC and AbCellera "████████████████████████████" of the dispute.  *Id.*, Ex. 6

6  (Booth dep. at 56:25-57:13, 58:9-15).[2]

7      AbCellera's Dr. Hansen:  After conceding he was "aware" of "████████████████████

8  ████████████████████████████████████████████████," Dr. Hansen

9  testified that AbCellera and UBC had "██████████████████████████████████████

10  ████████████████████████████" *Id.*, Ex. 7 (Hansen dep. at 204:10-205:12).  Dr.

11  Hansen was then asked, "████████████████████████████████████████████████"

12  Plaintiffs' counsel instructed him not to answer that question, and he declined to answer it.  *Id.*,

13  Ex. 7 (Hansen dep. at 205:14-20).

14      The Court reaches a different conclusion with respect to UBC's Dr. Sharp.[3]  Bruker

15  Cellular questioned Dr. Sharp at length about the ████, the ████████, and AbCellera's response

16  to the ████.  *Id.*, Ex. 9 (Sharp dep. at 59:5-60:17, 122:20-130:14, 131:6-17, 133:8-136:16,

17  141:3-142:4, 144:4-146:6).  Plaintiffs' counsel did not instruct Dr. Sharp not to answer questions

18  about whether or how UBC and AbCellera resolved their disagreement about the ████████; Dr.

19  Sharp simply was not asked any questions on that point.

20      Thus, the Court concludes that Bruker Cellular had an opportunity to question UBC (by

21  means of Dr. Sharp's deposition) about the resolution of UBC's and AbCellera's ████████, but

22  it was prevented from questioning AbCellera on that subject.

23

24

25  _____
    [2] After plaintiffs produced the ████████ to Bruker Cellular towards the end of Mr. Booth's
26  deposition, he was questioned in some detail about the contents of the ████ but was not asked at
    that time whether or how the ████████████ was resolved.  *Id.*, Ex. 6 (Booth dep. at 183:10-192:16).

27  [3] Apparently, Dr. Sharp testified as a Rule 30(b)(6) corporate representative for UBC.  *See* Dkt.
    No. 343, Ex. 9 (Sharp dep. at 11:6-16).  The record does not indicate the topics on which he was
28  designated to testify.

United States District Court
Northern District of California

**D.    Privilege and Common Interest**

The question remains whether information about whether or how UBC and AbCellera resolved their dispute about the ███████ is protected from disclosure by the attorney-client privilege and the common interest doctrine.

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020).  The privilege extends to a client's confidential disclosures to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citations and quotations omitted).

Ordinarily, the voluntary disclosure of a privileged communication to a third party waives that privilege. *Ruehle*, 583 F.3d at 612.  The "common interest" doctrine is an exception to ordinary waiver rules that applies when parties represented by separate counsel communicate in confidence about a matter of common legal interest, in furtherance of that common legal interest. *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012).  The doctrine does not create a privilege but comes into play only if a privilege or protection already covers the material disclosed to the third party. *Id.*; *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578-79 (N.D. Cal. 2007) (describing boundaries and application of common interest doctrine).

Here, plaintiffs argue that ███████ discussions between UBC and AbCellera are protected from discovery because they "involved direction and participation with counsel" and related to plaintiffs' "litigation and settlement strategies."  Dkt. No. 343 at 6-7.  Bruker Cellular responds that UBC and AbCellera have no common legal interest with respect to the ███████, and so any discussions they had, with or without counsel, could not be privileged. *Id.* at 3.

While UBC and AbCellera have a common legal interest in enforcing their respective rights in the asserted patents against others, prosecuting this infringement action against Bruker Cellular, defending against Bruker Cellular's counterclaims, and pursuing a possible settlement of the action, they do not appear to have a common legal interest in resolution of the ███████. Rather, as to that dispute, their interests appear to be adverse, not common. *See, e.g., RJ v. Cigna*

*Health & Life Ins. Co.*, No. 20-cv-02255-EJD (VKD), 2023 WL 187565, at *2 (N.D. Cal. Jan. 13, 2023) ("While defendants and [third-party] share a common legal interest with respect to at least one aspect of their respective litigations, the protections of the common interest doctrine may not extend to matters beyond that common legal interest.").  However, the record is not well-developed on this point.  Plaintiffs seem to say that resolution of the ███████ is intertwined with matters of "litigation strategy" and/or "settlement strategy," *see* Dkt. No. 343 at 6-7, but they do not explain how this could be so.  The ███████ does not appear to have anything to do with the matters in which UBC and AbCellera share a common legal interest, and plaintiffs provide no explanation or other information that would permit the Court to conclude otherwise.

If this privilege dispute involved documents, the Court would direct plaintiffs to submit the documents for *in camera* review so that the Court could assess plaintiffs' privilege claims.  However, because the dispute involves the contents of oral communications, the Court directs plaintiffs to provide a declaration establishing the bases for their assertion of the attorney-client privilege and for the application of the common interest doctrine.[4]  If necessary to protect the asserted privilege, the declaration may be submitted *in camera* and not filed.

## III.   CONCLUSION

For the reasons explained above, the Court finds that Bruker Cellular was not able to obtain relevant testimony from AbCellera's witnesses about the resolution of the ███████.  Absent plaintiffs' privilege objections, the Court would require AbCellera to produce a witness capable of answering questions regarding this subject matter.  However, on the record presented, the Court cannot determine whether requiring AbCellera to provide this testimony would require plaintiffs to disclose attorney-client privileged communications for which privilege has not been waived due to application of the common interest doctrine.  If AbCellera objects to providing testimony about resolution of the ███████, and relies on assertion of privilege/common interest to resist that discovery, it must file (or, if necessary, submit *in camera*) a declaration

---

[4] The Court's standing order for resolution of discovery disputes does not allow the parties to submit supporting declarations, absent leave of the Court.  The Court finds that a declaration is needed here.

United States District Court
Northern District of California

supporting the privilege/common interest on which it relies by **May 23, 2025**.

     **IT IS SO ORDERED.**

Dated: May 19, 2025

Virginia K. DeMarchi
United States Magistrate Judge