UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABCELLERA BIOLOGICS INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BRUKER CELLULAR ANALYSIS, INC.,<br><br>Defendant. | Case No. 20-cv-08624-JST<br><br>**ORDER DENYING DEFENDANT'S MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE AMENDED PLEADING**<br><br>Re: ECF No. 358 |

Pending before the Court is Defendant Bruker Cellular Analysis, Inc.'s motion to modify scheduling order and for leave to file amended pleading. ECF No. 358. The Court will deny the motion.

I.  **BACKGROUND**

The present case is a consolidated action incorporating three patent infringement cases brought by Plaintiffs AbCellera Biologics, Inc. and The University of British Columbia in the United States District Court for the District of Delaware in the summer of 2020, which were transferred to this District and consolidated into the instant action. *See* ECF Nos. 26, 70. Plaintiffs accuse Bruker Cellular of infringing seven patents: U.S. Patent Nos. 10,087,408 (the "'408 Patent"); 10,421,936 (the "'936 Patent"); 10,738,270 (the "'270 Patent"); 10,775,376 (the "'376 Patent"); 10,697,962 (the "'962 Patent"); 10,775,377 (the "'377 Patent"); and 10,775,378 (the "'378 Patent").[1]

Pursuant to the Court's scheduling order, the deadline to amend pleadings was October 20,

---

[1] Plaintiffs initially asserted fifteen patents but "reduced the number of asserted claims and asserted patents to a narrowed set of claims from the '408, '936, '270, '962, '933, '376, and '378 Patents . . . ." ECF No. 286 at 3 n.1.

1  2023, ECF No. 154, and the deadline for fact discovery was April 21, 2025, ECF No. 313.  Expert
2  discovery is set to close on July 23, 2025, summary judgment and *Daubert* motions are due on
3  August 21, 2025, and trial is set to begin on January 26, 2026.  ECF No. 313 at 7–8.

**II.     LEGAL STANDARD**

Requests to modify a scheduling order made after the Court has set a timetable for amending the pleadings are governed by Federal Rule of Civil Procedure 16.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).  Rule 16(b)(4) requires "good cause" and the consent of the Court to amend a scheduling order.  Fed. R. Civ. P. 16(b)(4).  "A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under [] Rule 15."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (citation omitted).  "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  *Id.*; *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("The pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the extension.") (quotation and citation omitted).  "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."  *Johnson*, 975 F.2d at 609.  "If that party was not diligent, the inquiry should end."  *Id*.

If the moving party demonstrates good cause to modify the scheduling order, the Court must then determine whether to grant leave to amend the complaint under Federal Rule of Civil Procedure 15(a)(2).  *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2017 WL 3149297, at *3 (N.D. Cal. July 25, 2017).  Rule 15(a)(2) instructs that a "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "The Supreme Court [has] identified four factors relevant to whether a motion for leave to amend pleadings should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party."  *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The rule is "to be applied with extreme liberality."  *Eminence*

*Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a court should determine whether to grant leave indulging "all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

### III. DISCUSSION

Defendant seeks to amend its answer to add an affirmative defense and counterclaim of inequitable conduct with respect to U.S. Patent No. 10,704,018 (the "'018 Patent") and the '408, '936, and '270 Patents (collectively, the "'408 Patent Family").[2] Defendant alleges that "named inventors Véronique Lecault, Carl Hansen, and James Piret intentionally withheld from the Patent Office two presentations that Dr. Lecault [] made to an organization called the Stem Cell Network, a Canadian government-supported non-profit whose members include research groups at universities and laboratories all over Canada." Mot. at 6. More specifically, Defendant alleges that (1) at the November 7, 2008 Stem Cell Network Annual General Meeting, Dr. Lecault presented "a slide deck titled 'Assessment of Hematopoietic Stem Cell Population Heterogeneity by High-throughput Clonal Expansion in Microfluidic Devices[,]'" (the "SCN Annual General Meeting Presentation") and (2) at the June 28, 2009 Stem Cell Network Cord Blood Meeting, Dr. Lecault presented "a slide deck titled 'High-throughput Culture of Hematopoietic Cells in Microfluidic Devices'" (the "SCN Cord Blood Meeting Presentation") (collectively, "SCN Presentations"). *Id*. at 2. Defendant alleges that the SCN Presentations "disclose[d] claimed inventions in the '408 [P]atent [F]amily and were presented on a non-confidential basis more than one year before July 7, 2010 (the earliest claimed priority date in the '408 [P]atent [F]amily)," and it was therefore "inequitable conduct not to disclose the [SCN] Presentations to the Patent Office." *Id*. at 6.

#### A. "Good Cause" Under Rule 16

The deadline to amend pleadings has passed, and Defendant's motion is therefore governed by Rule 16. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir.

---

[2] Plaintiffs initially accused Defendant of infringing the '018 Patent, but Plaintiffs no longer assert the '018 Patent. ECF No. 286 at 3 n.1.

1992) ("Once the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings that rule's standards controlled."). "The initial question under Rule 16 is whether [Defendant] has established 'good cause' for modifying the scheduling order." *TV Interactive Data Corp. v. Sony Corp.*, No. C 10-0475 PJH, 2012 WL 3791414, at *3 (N.D. Cal. Aug. 31, 2012). "In making that determination, the court should focus on the reasonable diligence of the moving party." *Id.* "In evaluating diligence for the purposes of Rule 16(b), [] courts generally consider both when the relevant facts were learned and whether the moving party was diligent in seeking discovery of those facts." *Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649, 654 (N.D. Cal. 2025).

Plaintiffs produced the SCN Presentations on August 15, 2024, but Defendant argues it "did not discover and could not have discovered the factual basis for the amendment until April 21, 2025 . . . ." Mot. at 10. Defendant argues that because "Plaintiffs designated the presentations [] 'CONFIDENTIAL' under the protective order . . . [Defendant] had no reason to believe the presentations were not confidential . . . ." *Id.* at 11. According to Defendant, it was only after Dr. Lecault's April 7, 2025 deposition, during which she was unable to confirm the confidential status of the presentations, that it "ha[d] reason to question whether the [SCN] Presentations . . . were not actually confidential[] and might form a basis for alleging inequitable conduct." *Id.*[3] On April 13, 2025, Defendant challenged Plaintiffs' confidentiality designation of the SCN Presentations. *Id.* at 15. In response to Defendant's challenge, Plaintiffs produced "Stem Cell Network agreements that included confidentiality provisions" on April 21, 2025.[4] *Id.* at 12. Defendant argues that the Stem Cell Network agreements "confirm[ed] that the [SCN] Presentations were not confidential." *Id.* at 13. In essence, Defendant argues it could not have discovered the factual basis for its amendment until Plaintiffs produced the Stem Cell Network agreements on April 21, 2025, and it acted diligently in seeking amendment after April 21, 2025. *See id.* at 15 ("[Defendant] only had

---

[3] According to Defendant, Dr. Lecault "testified [] she could not remember whether the Stem Cell Network imposed confidentiality obligations on the attendees of its annual general meetings, the audience for Dr. Lecault's November 2008 Presentation." *Id.*
[4] Plaintiffs produced three agreements: (1) 2001 Stem Cell Network NCE Network Agreement, ECF No. 357-6, (2) 2011 Non-Disclosure and Confidentiality Agreement, ECF No. 357-7, and (3) 2008 Standard NCE Network Agreement, ECF No. 357-8.

4

1  reason to suspect that the [SCN] Presentations were not in fact confidential after the April 7, 2025
2  deposition of their author and presenter, followed that up with a challenge to Plaintiffs'
3  'CONFIDENTIAL' designations on April 13, received Plaintiffs' production of Stem Cell
4  Network agreements on April 21 and discovered they confirmed the Stem Cell Network
5  Presentations were not in fact confidential, first approached Plaintiffs on May 3 for their consent
6  to amend . . . and now files the instant motion on May 15, a little over a month after the factual
7  basis for inequitable conduct was discovered.").

   The Court finds Defendant was not diligent in seeking discovery of the facts underlying its amendment. It is undisputed that Plaintiffs produced the SCN Presentations on August 15, 2024. *Id*. at 6. Yet Defendant did not make further inquiry or seek additional discovery related to the SCN Presentations until Dr. Lecault's April 7, 2025 deposition. Mot. at 11. The only explanation Defendant offers for its eight-month delay is that Plaintiffs designated the presentations "CONFIDENTIAL" under the protective order. *Id*. But it is unclear to the Court why Plaintiffs' confidentiality designation prevented Defendant from seeking additional discovery, particularly when the face of the presentations clearly name the presenter—Dr. Lecault—and the date of the presentation–November 7, 2008 and June 28, 2009.[5]

 

Dkt. No. 357-3 at 135, 159. Defendant's proffered justification is further undermined by the fact that "neither presentation was natively marked 'confidential.'" ECF No. 370-3 ("Opp.") at 5.

---

[5] Defendant itself recognizes that the SCN Presentations "on their face, were presented more than one year before the provisional application for the '408 [Patent] [F]amily." Mot. at 11.

5

1    Defendant argues that it had no reason to question the confidentiality of the SCN
2 Presentations until Dr. Lecault's deposition. But the fact that Defendant did not depose Dr.
3 Lecault until April 7, 2025 further exemplifies Defendant's lack of diligence. Although Plaintiffs
4 requested Dr. Lecault be deposed on April 7, Mot. at 11, Defendant agreed to that request.
5 Defendant could have sought to depose Dr. Lecault sooner but chose not to. Additionally, even if
6 the parties were unable to accommodate an earlier deposition for Dr. Lecault, Defendant could
7 have sought to confirm the confidentiality of the SCN Presentations through other means of
8 discovery. In fact, as Plaintiffs note, in the eight months that elapsed between the production of
9 the SCN Presentations and the close of fact discovery, Defendant "served numerous discovery
10 requests for additional production and interrogatories, including on October 2, 2024, October 8,
11 2024, December 2, 2024 and March 22, 2025." Opp. at 6. Defendant also "served its 30(b)(6)
12 notice on January 28, 2025," sought "new third party discovery as late as April 15, 2025[,]" and
13 "amended its invalidity contentions on December 12, 2024 . . . ." *Id*. But at no point during these
14 eight months did Defendant seek additional discovery regarding the SCN Presentations. The
15 record suggests that Defendant "did little—if anything—to ensure that the discovery it needed to
16 support the proposed counterclaims would be completed in a timely manner." *Tessera, Inc. v.*
17 *Sony Corp.*, No. 5:11-CV-04399 EJD, 2013 WL 97794, at \*3 (N.D. Cal. Jan. 7, 2013). Courts
18 considering similar facts have denied leave to amend based on the moving party's lack of
19 diligence in seeking discovery. *See Hayward Prop., LLC v. Commonwealth Land Title Ins. Co.*,
20 No. 17-CV-06177 SBA, 2021 WL 4927012, at \*5 (N.D. Cal. Sept. 28, 2021) ("However, the
21 motion for leave to amend does not show (or attempt to show) that [p]laintiff acted with diligence
22 in pursuing discovery regarding [defendant's] alleged bad faith."); *TV Interactive Data Corp. v.*
23 *Sony Corp.*, No. C 10-0475 PJH, 2012 WL 3791414, at \*4 (N.D. Cal. Aug. 31, 2012) (denying
24 defendant's motion to for leave to add an inequitable conduct defense as defendant's "papers
25 ma[d]e clear that [defendant] had been aware of the[] prior art reference for some time").
26 Accordingly, the Court finds Defendant was not diligent in seeking discovery of the facts
27 underlying its amendment. Defendant has not established good cause under Rule 16, and as such,
28 the Court need not determine whether Defendant has satisfied Rule 15. *Johnson*, 975 F.2d at 609

6

("If th[e] [moving] party was not diligent, the inquiry should end.").

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to modify scheduling order and for leave to file amended pleading.

**IT IS SO ORDERED.**

Dated: July 18, 2025



_____
JON S. TIGAR
United States District Judge