RUDY Y. KIM (SB# 199426)
rudykim@paulhastings.com
ERIC LANCASTER (SB# 244449)
ericlancaster@paulhastings.com
PAUL HASTINGS LLP
1117 South California Avenue
Palo Alto, CA 94304
Telephone: (650) 320-1830
Facsimile: (650) 320-1930

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiffs AbCellera Biologics Inc. and The University of British Columbia*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ABCELLERA BIOLOGICS INC. and THE UNIVERSITY OF BRITISH COLUMBIA, <br><br> Plaintiffs, <br><br> vs. <br><br> BRUKER CELLULAR ANALYSIS, INC., <br><br> Defendant. | CASE NO. 4:20-cv-08624-JST-VKD <br><br> **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** <br><br> Date:    October 23, 2025 <br> Time:    2:00 PM. <br> Place:   Courtroom 6, 2nd Floor <br> Judge:  The Hon. Jon S. Tigar |

1

## **NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on October 23, 2025, at 2:00 PM, or as soon thereafter as

4

the matter may be heard in the United District Court for the Northern District of California,

5

Oakland Division, in Courtroom 6, 2nd Floor, before the Honorable Jon S. Tigar, Plaintiffs

6

AbCellera Biologics Inc. and The University of British Columbia ("Plaintiffs") will and hereby

7

move for summary judgment under Federal Rule of Civil Procedure 56 on the following grounds:

8

(1) Defendant Bruker Cellular Analysis, Inc.'s ("Defendant" or "Bruker") Eighth Affirmative

9

Defense of Inequitable Conduct and Counterclaims of Declaratory Judgment of Unenforceability

10

of U.S. Patent Nos. 10,753,933 (the "'933 patent"), 10,775,376 (the "'376 patent"), and

11

10,775,378 (the "'378 patent") (collectively, the "'933 Family"); (2) Bruker's Fourth Affirmative

12

Defense of Estoppel; (3) Bruker's Fifth Affirmative Defense under 35 U.S.C. §§ 286, 287, and/or

13

288; (4) Bruker's Sixth Affirmative Defense under 35 U.S.C. § 271(e); and (5) Bruker's Seventh

14

Affirmative Defense under 28 U.S.C. § 1498.

15

## **RELIEF REQUESTED**

16

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs seek an order granting summary

17

judgment dismissing Bruker's Fourth, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses,

18

and that the '933 Family is not unenforceable for inequitable conduct.

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

**Page**

I.  STATEMENT OF ISSUES ................................................................................................. 2

II. LEGAL STANDARD .................................................................................................... 2

III. THE COURT SHOULD GRANT SUMMARY JUDGMENT AGAINST
    BRUKER'S INEQUITABLE CONDUCT COUNTERCLAIM AND
    AFFIRMATIVE DEFENSE ............................................................................................ 3

    A.  Statement of Relevant Facts ................................................................................. 3

        1.  Bruker's Inequitable Conduct Affirmative Defense and
            Counterclaim of Unenforceability ................................................................ 3

        2.  Prosecution History of '933 Family ............................................................ 4

    B.  Bruker's Inequitable Conduct Affirmative Defense and Counterclaim for
        Unenforceability Fail as a Matter of Law ............................................................ 5

        1.  As a Matter of Law, Bruker Cannot Show that the '933 Family Is
            Unenforceable Due to Inequitable Conduct Based on an Alleged
            Failure to Disclose Daridon by Dr. Hansen or Mr. Rubin ........................... 5

        2.  As a Matter of Law, Bruker Cannot Show that the '933 Family Is
            Unenforceable Due to Inequitable Conduct Based on an Alleged
            Failure to Disclose Nassef and Yasuda by Mr. Rubin ............................... 10

IV. THE COURT SHOULD GRANT SUMMARY JUDGMENT AGAINST
    BRUKER ON ITS FOURTH, FIFTH, SIXTH, AND SEVENTH AFFIRMATIVE
    DEFENSES .............................................................................................................. 12

    A.  Statement of Relevant Facts ............................................................................... 12

    B.  Bruker Failed to Provide Any Factual Basis or Evidentiary Support for Its
        Fourth, Sixth, and Seventh Affirmative Defenses ............................................. 13

        1.  Bruker Has Not Provided Any Evidence to Support Its Fourth
            Affirmative Defense .................................................................................. 13

        2.  Bruker Has Not Provided Any Evidence to Support Its Fifth
            Affirmative Defense .................................................................................. 15

        3.  Bruker Has Not Provided Any Evidence to Support Its Sixth
            Affirmative Defense .................................................................................. 16

        4.  Bruker Has Not Provided Any Evidence to Support Its Seventh
            Affirmative Defense .................................................................................. 16

V.  CONCLUSION ......................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agfa Corp. v. Creo Prods. Inc.*,
    451 F.3d 1366 (Fed. Cir. 2006)...........................................................................................12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................................2

*ATD Corp. v. Lydall, Inc.*,
    159 F.3d 534 (Fed. Cir. 1998)..........................................................................................8, 9

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
    No. CV 03-0597-PHX-MHM, 2007 WL 3208540 (D. Ariz. Oct. 30, 2007)....................12

*Bravo Sports, Inc. v. N. Pole (US) LLC*,
    No. SA CV 05-418 DOC, 2008 WL 11343313 (C.D. Cal. Feb. 6, 2008) ..........................12

*Cancer Rsch. Tech. Ltd. v. Barr Lab'ys, Inc.*,
    625 F.3d 724 (Fed. Cir. 2010).............................................................................................14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................................................2

*Centricut, LLC v. The Esab Grp., Inc.*,
    390 F.3d 1361 (Fed. Cir. 2004)...........................................................................................11

*Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.*,
    No. 19-CV-00802-LHK, 2021 WL 1405477 (N.D. Cal. Apr. 14, 2021)...............................8

*Control Laser Corp. v. Smith*,
    705 F. Supp. 3d 1006 (N.D. Cal. 2023) (Tigar, J.) .............................................11, 13, 15, 16

*Dayco Prods., Inc. v. Total Containment, Inc.*,
    329 F.3d 1358 (Fed. Cir. 2003).......................................................................................9, 10

*Eisai Co. v. Dr. Reddy's Lab'ys, Ltd.*,
    533 F.3d 1353 (Fed. Cir. 2008).......................................................................................9, 10

*Eli Lilly & Co. v. Hospira, Inc.*,
    933 F.3d 1320 (Fed. Cir. 2019)...........................................................................................14

*Fate Therapeutics, Inc. v. Shoreline Biosciences*, Inc.,
    664 F. Supp. 3d 1125 (S.D. Cal. 2023) ...............................................................................16

*Giuliano v. SanDisk Corp.*,
    224 F. Supp. 3d 851 (N.D. Cal. 2016), *aff'd sub nom. Giuliano v. SanDisk
    LLC*, 705 F. App'x 957 (Fed. Cir. 2017) ......................................................................10, 11

*Intervet Inc. v. Merial Ltd.*,
    617 F.3d 1282 (Fed. Cir. 2010)...........................................................................................15

*In re Katz Interactive Call Processing Pat. Litig.*,
    882 F. Supp. 2d 1123 (C.D. Cal. 2010) ............................................................ 14

*Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*,
    No. 22-CV-04947-PCP, 2025 WL 1407350 (N.D. Cal. May 12, 2025) ........................ *passim*

*Kologik Cap., LLC v. In Force Tech., LLC*,
    No. 18-11168-GAO, 2023 WL 6160433 (D. Mass. Sept. 21, 2023) .................................... 11

*Larson Mfg. Co. of S. Dakota v. Aluminart Prods. Ltd.*,
    559 F.3d 1317 (Fed. Cir. 2009) .......................................................................... 9

*Martinez v. County of Sonoma*,
    No. 15-CV-01953-JST, 2016 WL 1275402 (N.D. Cal. Apr. 1, 2016) ............................... 13

*Molins PLC v. Textron, Inc.*,
    48 F.3d 1172 (Fed. Cir. 1995) .......................................................................... 5

*Personalized Media Commc'ns, LLC v. Apple Inc.*,
    57 F.4th 1346 (Fed. Cir. 2023) ........................................................................ 14

*Proveris Scientific Corp. v. Innovasystems, Inc.*,
    536 F.3d 1256 (Fed. Cir. 2008) ........................................................................ 11

*Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*,
    517 F.3d 1364 (Fed. Cir. 2008) ........................................................................ 15

*Rothman v. Target Corp.*,
    556 F.3d 1310 (Fed. Cir. 2009) ..................................................................... 9, 10

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) .................................................................. 5, 9, 11

*Unicorn Energy AG v. Tesla Inc.*,
    740 F. Supp. 3d 930 (N.D. Cal. 2024) ................................................................. 15

**Statutes**

28 U.S.C. § 1498 ................................................................................. 1, 2, 16

35 U.S.C. § 271(e) ............................................................................... 1, 2, 16

35 U.S.C. § 286 .............................................................................. 1, 2, 13, 15

35 U.S.C. § 287 .............................................................................. 1, 2, 13, 15

35 U.S.C. § 288 .............................................................................. 1, 2, 13, 15

**Other Authorities**

37 C.F.R. § 1.53(b) ..................................................................................... 8

37 C.F.R. § 1.56(b) ..................................................................................... 9

Fed. R. Civ. P. 56(a) ................................................................................... 2

1

MPEP § 609.02 ................................................................................................................ 8

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

2

The facts of this case establish as a matter of law that summary judgment should be

3

granted in favor of Plaintiffs as to:

4

(1) Bruker's Eighth Affirmative Defense of Inequitable Conduct and Counterclaims of

5

Declaratory Judgment of Unenforceability of U.S. Patent Nos. 10,753,933 ("the '933 patent"),

6

10,775,376 ("the '376 patent"), and 10,775,378 ("the '378 patent") (collectively, "the '933

7

Family")[1];

8

(2) Bruker's Fourth Affirmative Defense of Estoppel;

9

(3) Bruker's Fifth Affirmative Defense under 35 U.S.C. §§ 286, 287, and/or 288;

10

(4) Bruker's Sixth Affirmative Defense under 35 U.S.C. § 271(e); and

11

(5) Bruker's Seventh Affirmative Defense under 28 U.S.C. § 1498.

12

*First*, no reasonable jury could find that Bruker has met its burden to demonstrate that the

13

'933 Family is unenforceable on the alleged grounds that Dr. Carl Hansen and Mr. Michael Rubin

14

withheld U.S. Patent Publication No. 2004/0229349 ("Daridon"), or that Mr. Rubin withheld U.S.

15

Patent Publication No. 2004/0067482 ("Yasuda") and U.S. Patent Publication No. 2007/0074972

16

("Nassef") from the Patent and Trademark Office ("PTO") during prosecution.  Indeed, Bruker's

17

claims border on being frivolous.  An international version of the Daridon reference *was in fact*

18

*submitted* to the PTO by UBC and considered by the examiner during prosecution of the '933

19

Family, and Bruker does not provide any evidence whatsoever supporting the alleged materiality

20

of the Yasuda and Nassef references, or any alleged intent to withhold those references.  There

21

can thus be no genuine issue of material fact as to materiality or intent.

22

*Second*, Bruker has not provided evidence to support its Fourth, Fifth, Sixth, or Seventh

23

Affirmative Defenses.  For each, Bruker's Answer merely recites a single, boilerplate sentence

24

asserting the defense, and Bruker did nothing to develop supporting evidence during discovery.

25

26

27

28

---

[1] Bruker's Answer asserts "[a]ll of the asserted patents in the '812 patent family . . . are unenforceable" due to inequitable conduct, including U.S. Patent Nos. 10,107,812; 10,274,494; 10,466,241; 10,578,618; and 10,697,962 that are not currently at issue pursuant to the Court's case narrowing order and schedule (Dkt. Nos. 70, 99, 313).  *See, e.g.*, Dkt. 106 ¶¶ 67, 163, 180; Case No. 4:20-cv-08626-JST, Dkt. 73 ¶¶ 139, 227, 244; Case No. 4:20-cv-08627-JST, Dkt. 75 ¶¶ 147, 235, 252.

1   Recognizing this, Bruker itself indicated that it would agree to withdraw its Fourth Affirmative

2   Defense of Estoppel except as to prosecution laches and prosecution history estoppel and Fifth

3   Affirmative Defense Barring or Limiting Damages Under 35 U.S.C. §§ 286, 287 and/or 288 (Ex.

4   1 (Aug. 5 K. Boyd email) at 1), but has yet to do so.  It also did not provide a substantive

5   response for any of the other affirmative defenses.  Absent evidentiary support, these defenses fail

6   as a matter of law.

7            In view of the foregoing, Plaintiffs request that the Court grant their motion.

8   **I.    STATEMENT OF ISSUES**

9            Whether the Court should grant summary judgment pursuant to Federal Rule of Civil

10  Procedure 56 as to the following affirmative defenses and counterclaims: (1) Bruker's Eighth

11  Affirmative Defense of Inequitable Conduct and Counterclaims of Declaratory Judgment of

12  Unenforceability of the '933 Family; (2) Bruker's Fourth Affirmative Defense of Estoppel due to

13  Prosecution Laches and Prosecution History Estoppel; (3) Bruker's Fifth Affirmative Defense

14  under §§ 286, 287, and/or 288; (4) Bruker's Sixth Affirmative Defense under 35 U.S.C. § 271(e);

15  and (5) Bruker's Seventh Affirmative Defense under 28 U.S.C. § 1498.

16  **II.   LEGAL STANDARD**

17           The Court "shall grant summary judgment if the movant shows that there is no genuine

18  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

19  Civ. P. 56(a).  "[T]he mere existence of some alleged factual dispute between the parties will not

20  defeat an otherwise properly supported motion for summary judgment; the requirement is that

21  there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–

22  48 (1986).  "Where the nonmoving party will bear the burden of proof at trial on a dispositive

23  issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

24  depositions, answers to interrogatories, and admissions on file.'" *Celotex Corp. v. Catrett*, 477

25  U.S. 317, 324 (1986).  In such cases, "the burden on the moving party may be discharged by

26  'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at

27  325.

28

### III. THE COURT SHOULD GRANT SUMMARY JUDGMENT AGAINST BRUKER'S INEQUITABLE CONDUCT COUNTERCLAIM AND AFFIRMATIVE DEFENSE

#### A. Statement of Relevant Facts

##### 1. Bruker's Inequitable Conduct Affirmative Defense and Counterclaim of Unenforceability

Bruker previously attempted to bring a multitude of baseless inequitable conduct counterclaims against Plaintiffs. The Court dismissed all of Bruker's counterclaims with prejudice except for: (1) Bruker's counterclaims relating to the '933 Family based on an alleged withholding of the Daridon reference by Dr. Carl Hansen and Mr. Michael Rubin;[2] and (2) Bruker's counterclaims relating to the '933 Family based on an alleged withholding of the Yasuda and Nassef references by Mr. Rubin. Dkt. 191.

The Court also denied Bruker's subsequent attempt to add even more inequitable conduct counterclaims to this case on July 18, 2025. Dkt. 379.

The time has come to put an end to Bruker's repeated attempts to assert implausible and unsupported allegations of inequitable conduct. Notably, Bruker's technical expert Dr. Wereley did not even provide any opinions on the alleged materiality of Yasuda or Nassef.[3] And an international counterpart to Daridon—containing precisely the same disclosures that Dr. Wereley relies on to allege materiality for Daridon—was repeatedly disclosed to and considered by the PTO, as discussed below.

After the close of discovery, Plaintiffs conferred with Bruker on July 30, 2025, and, as discussed during that meeting and further in Plaintiffs' July 31, 2025 email, explained why Bruker cannot maintain its inequitable conduct counterclaim and affirmative defense. Ex. 1 at 4-5. Plaintiffs asked Bruker if it would withdraw its inequitable conduct affirmative defense and

---

[2] Mr. Rubin was one of the attorneys involved in the prosecution of the asserted patents. He passed away several years ago.

[3] While Dr. Wereley provided opinions on the materiality of the two draft presentations by Véronique Lecault that were the subject of its May 15, 2025 motion to modify the scheduling order and seeking leave to amend its pleadings (Dkt. 379), inequitable conduct based on these presentations are not part of the case. *See* Dkt. 379 (denying Bruker's Motion to Modify Scheduling Order and Leave to File Amended Pleading).

1  counterclaim of unenforceability (*id.*), but Bruker refused without providing a substantive

2  response (*id.* at 1).

3  **2.      Prosecution History of '933 Family**

4  Two of the three patents in the '933 Family (the '933 and '378 patents) are continuations

5  of the third patent in the '933 Family (the '376 patent).  Ex. 2 ('933 patent); Ex. 3 ('378 patent).

6  These three asserted patents stem from earlier patents in the same family: U.S. Patent Nos.

7  10,578,618 ("the '618 patent"), ("the '241 patent"), 10,274,494 ("the '494 patent"), 10,107,812

8  ("the '812 patent"), and 9,188,593 ("the '593 patent").  Ex. 2; Ex. 3; Ex. 4 ('376 patent).

9  According to Bruker, Daridon is a material reference not disclosed to the PTO.  But an

10  international counterpart to Daridon, PCT Pub. No. WO 2003/085379 ("Daridon PCT"), which

11  claims priority to the same applications as Daridon, was repeatedly disclosed to the PTO by UBC

12  in Information Disclosure Statements ("IDSs") and considered by the examiner during

13  prosecution of the '933 Family.  Ex. 5 (Daridon) at cover page (listing Provisional Application

14  Nos. 60/369,538, 60/378,464, and U.S. Patent Appl. No. 10/405,092 filed March 31, 2003) and

15  Ex. 6 (Daridon PCT) at cover page, ¶ 1 (listing same provisional applications).  Specifically,

16  during prosecution of the '593 patent, UBC filed an IDS on July 26, 2013 disclosing the Daridon

17  PCT.  Ex. 7 (FH Excerpt '593 patent) at 2.  UBC even submitted a copy of the Daridon PCT with

18  the IDS.  Ex. 6.  On October 10, 2013, the examiner issued a List of References Cited by

19  Applicant and Considered by Examiner confirming the Daridon PCT was considered during

20  prosecution.  Ex. 7 at 5 (copy of July 26, 2013 IDS including Daridon PCT signed by the

21  examiner and stamped "ALL REFERENCES CONSIDERED EXCEPT WHERE LINED

22  THROUGH. /R.M./").  The Daridon PCT is cited on the cover of the '593 patent.  Ex. 8 ('593

23  Patent) at cover page.  UBC disclosed the Daridon PCT again during prosecution of the '812

24  patent.  Ex. 9 (FH Excerpt '812 patent) at 1, 5; Ex. 10 ('812 patent) at cover page.  And disclosed

25  it again during prosecution of the '494 patent.  Ex. 11 (FH Excerpt '494 patent) at 1, 5; Ex. 12

26  ('494 patent) at cover page.  And disclosed it again during prosecution of the '241 patent.  Ex. 13

27  (FH Excerpt '241 patent) at 1, 5; Ex. 14 ('241 patent) at cover page.  And disclosed it a fourth

28  time in connection with the '618 patent prosecution.  Ex. 15 (FH Excerpt '618 patent) at 1, 5; Ex.

16 ('618 patent) at cover page.  The Daridon PCT contains each disclosure of Daridon on which

Bruker's technical expert relies to support his opinions on the materiality of Daridon.  *See*

Appendix A (table identifying each portion of Daridon cited by Dr. Wereley in arguing its alleged

materiality and the corresponding disclosure in the Daridon PCT); *see also infra* Section III.B.1.

Even more, to ensure that the examiner had the full context surrounding the Daridon PCT,

UBC also submitted a search report associated with the Daridon PCT, published as PCT Pub. No.

WO 2003/085379 A3 ("Daridon PCT Search Report"), during prosecution of the '933 patent (Ex.

17 (FH Excerpt '933 patent) at 2, 9; Ex. 2 at cover page), during prosecution of the '376 patent

(Ex. 18 (FH Excerpt '376 patent) at 2, 9; Ex. 4 at cover page), and during prosecution of the '378

patent (Ex. 19 (FH Excerpt '378 patent) at 3, 10; Ex. 3 at cover page).

### B.    Bruker's Inequitable Conduct Affirmative Defense and Counterclaim for Unenforceability Fail as a Matter of Law

"To prevail on a claim of inequitable conduct, the accused infringer must prove that the

patentee acted with the specific intent to deceive the PTO."  *Therasense, Inc. v. Becton,*

*Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (citation omitted).  "In a case involving

nondisclosure of information, clear and convincing evidence must show that the applicant *made a*

*deliberate decision* to withhold a *known* material reference."  *Id.* (quoting *Molins PLC v. Textron,*

*Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995)).  As discussed further below, Bruker's inequitable

conduct counterclaim and affirmative defense cannot survive summary judgment because no

reasonable jury could find any of the underlying references are material or that there was any

specific intent to deceive the PTO.

### 1.    As a Matter of Law, Bruker Cannot Show that the '933 Family Is Unenforceable Due to Inequitable Conduct Based on an Alleged Failure to Disclose Daridon by Dr. Hansen or Mr. Rubin

Summary judgment is warranted as to Bruker's counterclaims and affirmative defense that

the '933 Family is unenforceable because Bruker cannot raise a genuine dispute of material fact

that Daridon is material or that there was a deliberate decision to withhold it.  For the materiality

prong, a reference is material "if the PTO would not have allowed a claim had it been aware of

the undisclosed prior art."  *Therasense*, 649 F.3d at 1291.  Here, a counterpart to Daridon, the

Daridon PCT, was disclosed by UBC and considered by the Examiner during prosecution of the '933 Family.

There is no genuine dispute that Daridon PCT is materially identical to Daridon. Each portion of Daridon that Dr. Wereley relies on to argue its purported materiality is contained in the Daridon PCT. For example, Dr. Wereley contends that "Daridon teaches 'retaining the cell secreting the protein within a chamber having an inlet, an outlet, and a solid wall defining the chamber, wherein the volume of the chamber is from 100 pL to 100 nL'" citing Figures 6 and 7 and quoting Paragraph 349 of Daridon. *See* Ex. 20 (Wereley Corrected Opening Rpt.) ¶¶ 1767-68. However, as demonstrated in the table below, these portions of Daridon are also in the Daridon PCT:

| Daridon (cited by Wereley) | Daridon PCT |
|---|---|
| Figure 6:<br><br>FIG. 6 | Figure 6:<br><br>FIG. 6 |
| Figure 7:<br><br>FIG. 7 | Figure 7:<br><br>FIG. 7 |

| Daridon (cited by Wereley) | Daridon PCT |
|---|---|
| ¶ 349:<br><br>"FIGS. 6 and 7 show, respectively, corresponding actual and schematic views of the retention mechanism or trap **266** of FIG. 5. The retention mechanism includes a partially closed retention or capture chamber **270**. Chamber **270** may have a size of about 60-100 μm long, 50-100 μm wide, and 20 μm high. Chamber **270** is formed by opposing channel wall **288**, front wall **290**, side walls **292**, **294**, and top and bottom walls (not shown). Front wall includes an aperture **296** through which cells enter the chamber from a reduced-velocity stream **298**, extending from combined stream **286**. The reduced-velocity stream may be less damaging to cells that enter the chamber, increasing viability and the probability of a fruitful analysis. Aperture **296** is about 5-20 μm wide and may have a height corresponding to some or all of the channel height. Fluid entering aperture **296** as part of stream **298** may pass through side-wall channels **300**. In this example, each side wall includes three side-wall channels **300**, which have a rectangular profile about 10 μm wide and 5 μm high. In general, the side-wall channels are dimensioned to selectively retain cells or particles of interest, while allowing fluid or smaller cells or particles to pass through. Thus, chamber **270** functions as a filter. However, in contrast to standard filters, only a fraction of input cells enter chamber **270**. The fraction may be less than about 1 in 10, 1 in 100 or 1 in 1,000, among others, depending on the design of the retention chamber, the speed of the input fluid stream, and the size and density of particles, among others." | ¶ 385:<br><br>"Figures 6 and 7 show, respectively, corresponding actual and schematic views of the retention mechanism or trap 266 of Figure 5. The retention mechanism includes a partially closed retention or capture chamber 270. Chamber 270 may have a size of about 60-100 μm long, 50-100 μm wide, and 20 μm high. Chamber 270 is formed by opposing channel wall 288, front wall 290, side walls 292, 294, and top and bottom walls (not shown). Front wall includes an aperture 296 through which cells enter the chamber from a reduced- velocity stream 298, extending from combined stream 286. The reduced-velocity stream may be less damaging to cells that enter the chamber, increasing viability and the probability of a fruitful analysis. Aperture 296 is about 5-20 μm wide and may have a height corresponding to some or all of the channel height. Fluid entering aperture 296 as part of stream 298 may pass through side- wall channels 300. In this example, each side wall includes three side-wall channels 300, which have a rectangular profile about 10 μm wide and 5 μm high. In general, the side- wall channels are dimensioned to selectively retain cells or particles of interest, while allowing fluid or smaller cells or particles to pass through. Thus, chamber 270 functions as a filter. However, in contrast to standard filters, only a fraction of input cells enter chamber 270. The fraction maybe less than about 1 in 10, 1 in 100 or 1 in 1,000, among others, depending on the design of the retention chamber, the speed of the input fluid stream, and the size and density of particles, among others." |

Appendix A is a table identifying each portion of Daridon cited by Dr. Wereley in arguing

its alleged materiality and the corresponding disclosure in the Daridon PCT.  As demonstrated,

the Daridon PCT contains literally all the disclosures in Daridon that Bruker and Dr. Wereley rely on to argue that Daridon is material.

As explained above, the Daridon PCT was disclosed in IDSs filed in connection with the parent patent applications to the '933 Family.  *Supra* Section II.A.2.  Under the U.S. Patent & Trademark Office's policies laid out in the Manual of Patent Examining Procedure ("MPEP") § 609.02, references that have been considered by the PTO in a parent application are considered by the PTO when examining a continuing application even if the references are not resubmitted. MPEP § 609.02(II)(2) ("The examiner will consider information which has been considered by the Office in a parent application . . . when examining: (A) a continuation application filed under 37 CFR 1.53(b), (B) a divisional application filed under 37 CFR 1.53(b), or (C) a continuation-in-part application filed under 37 CFR 1.53(b).  A listing of the information need not be resubmitted in the continuing application unless the applicant desires the information to be printed on the patent.").  Indeed, the Federal Circuit has made clear that, "[i]n view of § 609 it can not be inequitable conduct for an applicant not to resubmit . . . the information that was cited or submitted in the parent application."  *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998); *see also Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.*, No. 19-CV-00802-LHK, 2021 WL 1405477, at *7 (N.D. Cal. Apr. 14, 2021) ("[A]s Defendants rightly argue, the Hirata prior art reference was disclosed during the prosecution of the '568 patent (the parent patent to '492 and '076), and thus the Hirata prior art reference was not withheld from the PTO. Plaintiff has therefore failed to adequately allege how failure to disclose the Hirata prior art reference was material and non-cumulative of information already before the examiner.").[4]  Since all alleged material information in Daridon was in fact disclosed and considered by the examiner during prosecution of the '933 Family, and the examiner allowed the '933 Family over those disclosures, Daridon cannot as a matter of law be deemed material prior art for purposes of

---

[4] In fact, UBC went above and beyond by subsequently citing the search report associated with the Daridon PCT during prosecution of each of the '933, '376, and'378 patents.  *Supra* Section II.A.2.

inequitable conduct.[5]  *See ATD Corp.*, 159 F.3d at 547 (granting summary judgment of no inequitable conduct where reference was disclosed in parent application); *Eisai Co. v. Dr. Reddy's Lab'ys, Ltd.*, 533 F.3d 1353, 1361 (Fed. Cir. 2008) (affirming district court's grant of summary judgment of no inequitable conduct in part because reference "offered nothing new to the record already before the Patent Office" and was cumulative; *Rothman v. Target Corp.*, 556 F.3d 1310, 1326 (Fed. Cir. 2009) ("A piece of prior art is not material to patent prosecution when it is cumulative of information already before the examiner. . . .  An applicant has no duty to disclose a reference to the PTO if it is cumulative of or less material than references already before the examiner." (citations omitted)); 37 C.F.R. § 1.56(b) ("Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application"); *see also Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1367 (Fed. Cir. 2003) (vacating summary judgment finding there was no inequitable conduct in not disclosing a reference cited in the technologically related copending patent application where there was no evidence of an intent to deceive and there was evidence that the reference was withheld because it was not material).

Summary judgment is warranted for a second, independent reason:  Bruker has no evidence of any "deliberate decision to withhold" Daridon.  *Therasense*, 649 F.3d at 1290.  "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'"  *Id.*; *see also id.* ("Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive.").  Here, Bruker has not and cannot show that "intent to deceive" is "the single most reasonable inference" based on the mere fact that a particular version of Daridon was not disclosed when another nearly identical version of Daridon was disclosed in the prosecution of earlier related patents.  *Larson Mfg. Co. of S. Dakota v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1340 (Fed. Cir. 2009) ("Relatedly, just as merely

---

[5] Plaintiffs' expert Dr. Gale opined that Daridon is not material, as it fails to disclose each limitation of the asserted claims of the '933 Family and is cumulative of other references considered by the Examiner during prosecution of the '933 Family.

withholding a reference cannot support an inference of deceptive intent . . . ." (citation omitted));
*Dayco*, 329 F.3d at 1367 ("However, inequitable conduct requires not intent to withhold, but
rather intent to deceive.  Intent to deceive cannot be inferred simply from the decision to withhold
the reference where the reasons given for the withholding are plausible.").  There is no genuine
dispute that other reasonable inferences can be drawn from as to why Daridon was not disclosed
including, for example, that Daridon was simply not submitted because it was cumulative to the
Daridon PCT, as well as other references disclosed and considered during prosecution.  *See, e.g.*,
*Eisai*, 533 F.3d at 1361 (affirming district court's grant of summary judgment of no inequitable
conduct in part because reference "offered nothing new to the record already before the Patent
Office" and was cumulative); *Rothman*, 556 F.3d at 1326 ("An applicant has no duty to disclose a
reference to the PTO if it is cumulative of or less material than references already before the
examiner." (citations omitted)); *see also Dayco*, 329 F.3d at 1367 (vacating summary judgment
finding there was no inequitable conduct in not disclosing a reference cited in the technologically
related copending patent application where there was no evidence of an intent to deceive and
there was evidence that the reference was withheld because it was not material).  Indeed, Daridon
is the very definition of cumulative as the allegedly relevant disclosures identified by Bruker's
expert are literally identical to those of the Daridon PCT.

In view of the foregoing, Plaintiffs are entitled to summary judgment as a matter of law.

**2.**   **As a Matter of Law, Bruker Cannot Show that the '933 Family Is Unenforceable Due to Inequitable Conduct Based on an Alleged Failure to Disclose Nassef and Yasuda by Mr. Rubin**

Bruker has not identified any evidence that Nassef and Yasuda are material or that
Mr. Rubin had any intent to deceive.  Bruker did not provide or obtain any testimony or other
evidence that show these references are material and not cumulative to references disclosed
during prosecution of the '933 Family, and Bruker's technical experts did not provide any
opinions on the materiality of either reference.  *See Giuliano v. SanDisk Corp.*, 224 F. Supp. 3d
851, 865-69 (N.D. Cal. 2016), *aff'd sub nom. Giuliano v. SanDisk LLC*, 705 F. App'x 957 (Fed.
Cir. 2017) (granting summary judgment because "Plaintiffs have failed to raise a genuine issue of
material fact as to the issue of materiality," and further noting "[w]here, as here, complex

technology is involved, a validity analysis must be supported by expert testimony" and "[t]he lack of any supporting expert testimony also forecloses Plaintiffs' ability to establish that the PTO's awareness of the aforementioned prior art references would have led to the rejection of the Disputed Patents" and "[t]he Court therefore finds, as an alternative matter, that the absence of expert testimony to support Plaintiffs' arguments is fatal to their claims"). That Bruker's technical expert did not provide any opinions whatsoever on the validity of the '933 Family in view of either reference demonstrates that these references are not material. *See id.*; *see also Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008) (holding that expert testimony was required to establish invalidity on grounds of anticipation and obviousness where the subject matter is sufficiently complex to fall beyond the grasp of an ordinary layperson); *Centricut, LLC v. The Esab Grp., Inc.*, 390 F.3d 1361, 1369-70 (Fed. Cir. 2004) (expert testimony is "typically" needed in patent infringement case "[w]here the field or art is complex": patentee fails to meet its burden of proof without expert testimony); *Kologik Cap., LLC v. In Force Tech., LLC*, No. 18-11168-GAO, 2023 WL 6160433, at *25 (D. Mass. Sept. 21, 2023) (striking counterclaims for invalidity where defendant failed to obtain an expert: "[t]his is not one of those rare cases in which the subject matter of a patent is so simple or familiar to a lay person as to require no expert testimony in assessing the state of the prior art, obviousness, or enablement."). Bruker also does not have any testimony or other evidence to satisfy the intent requirement. *See Therasense*, 649 F.3d at 1290 ("To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO. . . . A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." (citation omitted)). Consequently, this defense fails as a matter of law. *Control Laser Corp. v. Smith*, 705 F. Supp. 3d 1006, 1016–17 (N.D. Cal. 2023) (Tigar, J.) (granting summary judgment on affirmative defenses where defendant failed to provide evidence in support of defense).

\*             \*             \*

In sum, Bruker's inequitable conduct allegations are baseless. The content of the Daridon reference was considered by the examiner through consideration of the Daridon PCT, rendering

any allegations of materiality or intent to deceive frivolous, and Bruker does not even attempt to support materiality or intent for Nassef and Yasuda.  Thus, summary judgment should be granted. To be sure, however, even if summary judgment is denied, Plaintiffs do not believe that Bruker's inequitable conduct claims should be tried to a jury as Bruker seeks to accuse Plaintiffs of baseless fraud allegations to mislead the jury on questions of infringement.  *Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1373 (Fed. Cir. 2006) ("Because the materiality of prior art is distinct from validity issues (without even considering the additional intent requirement for inequitable conduct), . . . these are [not] 'common issues' that must be tried to a jury."); *Bravo Sports, Inc. v. N. Pole (US) LLC*, No. SA CV 05-418 DOC (MLGx), 2008 WL 11343313, at *2 (C.D. Cal. Feb. 6, 2008) ("In this action, the nature of the inequitable conduct allegations would inevitably risk prejudice to Plaintiffs. If the jury were to hear these allegations, the allegations could affect the jury's ability to make a fair determination on infringement and validity."); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, No. CV 03-0597-PHX-MHM, 2007 WL 3208540, at *2 (D. Ariz. Oct. 30, 2007) ("Regarding prejudice to the parties, if the instant trial is not bifurcated and Gore's evidence relevant solely to inequitable conduct is presented in the jury's presence there would be extreme prejudice to Bard . . . . If this evidence is presented to the jury, it may be so prejudicial that a jury would have a difficult time finding in Bard's favor on infringement, despite the fact that such evidence is not for the jury's consideration.").

## IV.  THE COURT SHOULD GRANT SUMMARY JUDGMENT AGAINST BRUKER ON ITS FOURTH, FIFTH, SIXTH, AND SEVENTH AFFIRMATIVE DEFENSES

### A.  Statement of Relevant Facts

Bruker maintains several affirmative defenses without any factual or evidentiary support, including its Fourth, Fifth, Sixth, and Seventh Affirmative Defenses.  For each of these defenses, Bruker's Answer includes only a single sentence without any factual support or explanation.  Dkt. 265 at 49.  Moreover, Bruker did not develop any facts or evidence that would support maintaining these affirmative defenses.  After the close of discovery, Plaintiffs conferred with Bruker on July 30, 2025, and, as discussed during that meeting and further in Plaintiffs' July 31, 2025 email, explained why Bruker cannot maintain its Fourth, Fifth, Sixth, or Seventh

1    Affirmative Defenses.  Ex. 1 at 4-5.  Although Bruker agreed to withdraw its Fourth Affirmative

2    Defense of Estoppel except as to prosecution laches and prosecution history estoppel and Fifth

3    Affirmative Defense Barring or Limiting Damages Under 35 U.S.C. §§ 286, 287 and/or 288, it

4    has not done so; nor has Bruker provided a substantive response on the remaining defenses.  *Id.* at

5    1.

6         In connection with its Seventh Affirmative Defense, Bruker indicated it would "also

7    withdraw [its] 7th affirmative defense if Plaintiffs stipulate they will not pursue damages related to

8    sales to the U.S. Government and withdraw the portions of the Vigil report related to such sales."

9    Ex. 1 at 1.

10        **B.    Bruker Failed to Provide Any Factual Basis or Evidentiary Support for Its**
              **Fourth, Sixth, and Seventh Affirmative Defenses**

11

12        Bruker's Fourth, Sixth, and Seventh Affirmative Defenses are inadequate as a matter of

13    law.  Bruker bears the burden on each of these defenses, but as discussed further below, it has

14    failed to provide any factual allegations or evidence to maintain the defense let alone a finding in

15    its favor.  For each defense, Bruker merely recites a single, boilerplate sentence asserting the

16    defense without any factual support.  Given the lack of any factual allegations and evidentiary

17    support, the Court should grant summary judgment.  *See Control Laser*, 705 F. Supp. 3d at 1016-

18    18 (granting summary judgment on certain affirmative defenses); *Kawasaki Jukogyo Kabushiki*

19    *Kaisha v. Rorze Corp.*, No. 22-CV-04947-PCP, 2025 WL 1407350, at *19 (N.D. Cal. May 12,

20    2025) (granting summary judgment on affirmative defenses because defendant "failed to adduce

21    any evidence that could give rise to" it); *Martinez v. County of Sonoma*, No. 15-CV-01953-JST,

22    2016 WL 1275402, at *3 (N.D. Cal. Apr. 1, 2016) (granting summary judgment on affirmative

23    defenses stating that "[i]t is hard to imagine a more conclusory, boilerplate set of affirmative

24    defenses than those pleaded here").

25        **1.    Bruker Has Not Provided Any Evidence to Support Its Fourth**
                 **Affirmative Defense**

26

27        For its Fourth Affirmative Defense, Bruker merely contends in its Answer that "Plaintiffs,

28    by their conduct, are equitably and legally estopped, including under the doctrine of unclean

hands, laches, waiver, and/or estoppel, from raising each and every cause of action and claim stated in the Second Amended and Consolidated Complaint." Dkt. 265 at 49. Although Bruker has narrowed its defense to estoppel due to prosecution laches and prosecution history estoppel, it has not provided any evidence supporting its contention that Plaintiffs "are equitably and legally estopped" nor has it developed such evidence during discovery. *Id.* "To prevail on a defense of prosecution laches, a party must show both that the 'delay in prosecution [was] unreasonable and inexcusable' and that 'the accused infringer . . . suffered prejudice attributable to the delay.'" *Kawasaki*, 2025 WL 1407350, at *18-19 (citing *Personalized Media Commc'ns, LLC v. Apple Inc*., 57 F.4th 1346, 1354 (Fed. Cir. 2023) (granting Kawasaki's motion and entering judgment in its favor on Rorze's prosecution laches affirmative defense because "Rorze has not pointed to any evidence that could give rise to an inference that any delay relating to Kawasaki's prosecution of the reissue patents amounted to such egregious misuse."). Bruker has not even attempted to do that. Additionally, "to establish prejudice[,] an accused infringer must show evidence of intervening rights, i.e., that either the accused infringer or others invested in, worked on, or used the claimed technology during the period of delay." *Cancer Rsch. Tech. Ltd. v. Barr Lab'ys, Inc*., 625 F.3d 724 (Fed. Cir. 2010) (reversing district court decision holding patent unenforceable for prosecution laches in the absence of any evidence of intervening rights); *see also In re Katz Interactive Call Processing Pat. Litig*., 882 F. Supp. 2d 1123, 1150 (C.D. Cal. 2010) (granting Plaintiff Katz's summary judgment motion to dismiss Defendant Fifth Third's affirmative defense of prosecution laches because "Fifth Third did not present any evidence on intervening rights . . . [and s]ince this Court has found that such evidence is necessary for a defense of prosecution laches, this Court GRANTS Katz's motion for summary judgment as it relates to Fifth Third's affirmative defense of prosecution laches.").

Moreover, "[p]rosecution history estoppel arises when a patent applicant narrows the scope of his claims during prosecution for a reason 'substantial[ly] relating to patentability.'" *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1330 (Fed. Cir. 2019) (citation omitted). Although the "decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim," this presumption

1  "may be rebutted if the patentee can demonstrate that: (1) the alleged equivalent would have been

2  unforeseeable at the time . . . the narrowing amendment was made; (2) the rationale underlying

3  the narrowing amendment bore no more than a tangential relation to the equivalent at issue; or (3)

4  there was some other reason suggesting that the patentee could not reasonably have been

5  expected to have described the alleged equivalent." *Regents of Univ. of Cal. v. Dakocytomation*

6  *Cal., Inc.*, 517 F.3d 1364, 1376 (Fed. Cir. 2008) (citation omitted); *see also Intervet Inc. v. Merial*

7  *Ltd.*, 617 F.3d 1282, 1291 (Fed. Cir. 2010) ("The applicability of prosecution history estoppel

8  does not completely bar the benefit of the doctrine of equivalents from all litigation related to the

9  amended claim. . . .  The scope of the estoppel must fit the nature of the narrowing amendment."

10  (citation omitted)); *Unicorn Energy AG v. Tesla Inc.*, 740 F. Supp. 3d 930, 957 (N.D. Cal. 2024)

11  (granting summary judgment in favor of patent owner on defendant's prosecution history estoppel

12  affirmative defense where the defendant only puts forth "little more than a broad summary of

13  background facts" without "any opinion, analysis, or argument").

14      Bruker's unsupported, conclusory allegations are insufficient to establish any defense.

15  *Control Laser*, 705 F. Supp. 3d at 1016-18 (granting summary judgment on certain affirmative

16  defenses where party failed to provide sufficient factual evidence); *Kawasaki*, 2025 WL 1407350,

17  at *19 (granting summary judgment on affirmative defenses because defendant "failed to adduce

18  any evidence that could give rise to" it).  Consequently, this defense fails as a matter of law.

19          **2.      Bruker Has Not Provided Any Evidence to Support Its Fifth
                     Affirmative Defense**

20

21      For its Fifth Affirmative Defense, Bruker's Answer asserts "Plaintiffs' remedies are

22  limited by 35 U.S.C. §§ 286, 287 and/or 288."  Dkt. 265 at 49.  Bruker has not alleged any facts

23  or developed any evidence during discovery that would be legally sufficient to maintain this

24  defense.  *Control Laser*, 705 F. Supp. 3d at 1016-18 (granting summary judgment on certain

25  affirmative defenses where party failed to provide sufficient factual evidence); *Kawasaki*, 2025

26  WL 1407350, at *19 (granting summary judgment on affirmative defenses because defendant

27  "failed to adduce any evidence that could give rise to" it).  Indeed, Bruker itself has indicated it

28

1  intends to withdraw this defense, but has not done so yet. Ex. 1 at 1.  Consequently, this defense

2  fails as a matter of law.

### 3.     Bruker Has Not Provided Any Evidence to Support Its Sixth Affirmative Defense

5         For its Sixth Affirmative Defense, Bruker's Answer only asserts that "Plaintiffs' remedies

6  are limited by 35 U.S.C. § 271(e)."  Dkt. 265 at 49.  Bruker does not even identify which of the

7  several subsections of § 271(e) could even apply here.  Bruker has not alleged any facts

8  supporting this defense, nor has it developed any evidence during discovery that would be legally

9  sufficient to maintain this defense. *Control Laser*, 705 F. Supp. 3d at 1016-18 (granting summary

10  judgment on certain affirmative defenses where party failed to provide sufficient factual

11  evidence); *Kawasaki*, 2025 WL 1407350, at *19 (granting summary judgment on affirmative

12  defenses because defendant "failed to adduce any evidence that could give rise to" it).

13  Consequently, this defense fails as a matter of law.

### 4.     Bruker Has Not Provided Any Evidence to Support Its Seventh Affirmative Defense

16         For its Seventh Affirmative Defense, Bruker merely asserts that "Plaintiffs' remedies are

17  limited by 28 U.S.C. § 1498, to the extent that the products and services Plaintiffs accuse of

18  infringement are being made for and/or sold to the United States Government."  Dkt. 265 at 49.

19  For a party to successfully assert an affirmative defense under § 1498(a), it must show that its use

20  of the products at issue is "for the benefit of the government," and "is conducted with the

21  authorization and consent of the government."  *Fate Therapeutics, Inc. v. Shoreline Biosciences*,

22  *Inc.*, 664 F. Supp. 3d 1125, 1141 (S.D. Cal. 2023) ("Because Shoreline has failed to present the

23  Court with any evidence or argument demonstrating that its use of the iPSCs at issue is for the

24  benefit of the government or is conducted with the authorization and consent of the government,

25  Shoreline has failed to demonstrate that it is entitled to an affirmative defense under

26  § 1498(a) . . . .")  Again, Bruker has not alleged any facts supporting this defense, nor has it

27  developed any during discovery that would be legally sufficient to maintain it.  *Control Laser*,

28  705 F. Supp. 3d at 1016-18 (granting summary judgment on certain affirmative defenses where

party failed to provide sufficient factual evidence); *Kawasaki*, 2025 WL 1407350, at *19 (granting summary judgment on affirmative defenses because defendant "failed to adduce any evidence that could give rise to" it).  Further Plaintiffs should not be required to provide the admission Bruker requested (Ex. 1 at 1), especially given the lack of evidence.  Thus, this defense fails as a matter of law.

**V.     CONCLUSION**

For the foregoing reasons, Plaintiffs request the Court grant their motion for summary judgment.

1   DATED:  August 21, 2025                    Respectfully submitted,

2                                              By: */s/ Rudy Y. Kim*
                                                   RUDY Y. KIM
3
                                                   RUDY Y. KIM (SB# 199426)
4                                                  rudykim@paulhastings.com
                                                   ERIC LANCASTER (SB# 244449)
5                                                  ericlancaster@paulhastings.com
                                                   PAUL HASTINGS LLP
6                                                  1117 South California Avenue
                                                   Palo Alto, CA 94304
7                                                  Telephone: (650) 320-1830
                                                   Facsimile: (650) 320-1930
8
                                                   ERIC W. DITTMANN (*pro hac vice*)
9                                                  ericdittmann@paulhastings.com
                                                   MAX H. YUSEM (*pro hac vice*)
10                                                 maxyusem@paulhastings.com
                                                   PAUL HASTINGS LLP
11                                                 200 Park Avenue
                                                   New York, NY 10166
12                                                 Telephone: (212) 318-6689
                                                   Facsimile: (212) 230-7829
13
                                                   NAVEEN MODI (*pro hac vice*)
14                                                 naveenmodi@paulhastings.com
                                                   DANIEL ZEILBERGER (*pro hac vice*)
15                                                 danielzeilberger@paulhastings.com
                                                   PAUL HASTINGS LLP
16                                                 2050 M Street NW
                                                   Washington, DC 20036
17                                                 Telephone: (202) 551-1990
                                                   Facsimile: (202) 551-0490
18
                                                   MARK T. SMITH (SB# 260845)
19                                                 marksmith@paulhastings.com
                                                   PAUL HASTINGS LLP
20                                                 71 S. Wacker Drive, Forty-Fifth Floor
                                                   Chicago, IL 60606
21                                                 Telephone: (312) 499-6000
                                                   Facsimile: (312) 499-6168
22
                                                   KAMILAH ALEXANDER (SB#306586)
23                                                 kamilahalexander@paulhastings.com
                                                   PAUL HASTINGS LLP
24                                                 4655 Executive Dr., Suite 350
                                                   San Diego, CA 92121
25                                                 Telephone: (858) 458-3007
                                                   Facsimile: (858) 458-3107
26
                                                   *Attorneys for Plaintiffs*
27                                                 *AbCellera Biologics Inc. and*
                                                   *The University of British Columbia*
28